UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADAM FERRARI, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:23-CV-455 |
| WILLIAM FRANCIS, | § § § | |
| Defendant. | § | |

**PLAINTIFF'S MOTION TO SEAL AND BRIEF IN SUPPORT**

**CHAMPION LLP**

Austin Champion
Texas Bar No. 24065030
Austin.Champion@championllp.com
----
Andrew D. Gray
Texas Bar No. 24110756
Andrew.Gray@championllp.com

2200 Ross Avenue, Suite 4500W
Dallas, Texas. 75201
214-225-8880 | Direct
214-225-8881 | Fax

**COUNSEL FOR PLAINTIFF
ADAM FERRARI**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii
TABLE OF AUTHORITIES......................................................................................................... iii
INTRODUCTION ...........................................................................................................................1
BACKGROUND .............................................................................................................................2
ARGUMENTS AND AUTHORITIES ...........................................................................................5
A.     Plaintiff Has A Specific, Serious, and Substantial Interest in Protecting His Reputation and Privacy Rights Which Outweighs the Public's Common-Law Right of Access.................................................................................................................6
B.     This Court Should Honor the Colorado Sealing Order Because the Colorado District Court Determined That the Harm to Mr. Ferrari Outweighed the Public's Right of Access to Judicial Records. ................................................................................10
CONCLUSION ..............................................................................................................................12
PRAYER .......................................................................................................................................13
CERTIFICATE OF CONFERENCE ............................................................................................13
CERTIFICATE OF SERVICE......................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*BP Expl. & Prod., Inc. v. Claimant ID 100246928,* 920 F.3d 209 (5th Cir. 2019) ........................ 12

*Bradley on behalf of AJW v. Ackal*, 954 F.3d 216 (5th Cir. 2020) .............................................. 5, 6

*Carafas v. LaVallee*, 391 U.S. 234, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968) ................................ 8

*D.W.M. v. Dist. Court In & For Pitkin Cnty.*, 751 P.2d 74 (Colo. App. 1988) ............................ 11

*June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512 (5th Cir. 2022) .......................................... 5, 12

*Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019), as revised (Aug. 29, 2019) ................................ 4

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) ........................................... 5, 10, 12

*Parker v. Ellis*, 362 U.S. 574, 80 S. Ct. 909, 4 L. Ed. 2d 963 (1960) (Warren, C.J., Dissenting) ......................................................................................... 8

*Paul v. Davis*, 424 U.S. 693 (1976) (Brennan, J., Dissenting) ....................................................... 9

*Phoenix Capital Group Holdings, LLC v. William Francis and Incline Energy Partners, L.P.*, No. DC-22-06350 (116th Dist. Crt., Dallas County, Tex. June 15, 2022) ........................................................................................................................ 3

*Robertson v. People*, 2017 COA 143M, ¶ 34, as modified on denial of reh'g (Dec. 28, 2017) ................................................................................................................. 11

*S.E.C. v. Van Waeyenberghe*, 990 F.2d 845 (5th Cir. 1993) ..................................................... 5, 11

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989) ............................................................. 6, 7, 8, 9

*Union Pac. R.R. Co. v. Botsford*, 141 U.S. 250 (1891) .................................................................. 6

*Whalen v. Roe*, 429 U.S. 589, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977) ............................................ 6

**Statutes**

§ 24-72-705, C.R.S. ...................................................................................................................... 11

§ 24-72-706, C.R.S. ...................................................................................................................... 11

Tex. Civ. Prac. & Rem. Code §§27.001, *et seq.* ........................................................................... 4

**Other Authorities**

Annie O'Leary, *A Proposed Solution to Limit the Collateral Consequences of Arrests Without Conviction in the United States*, 46 Nova L. Rev. 85, 121 (2021) ........................................................................................................................ 10

Brian M. Murray, *Unstitching the Scarlet Letters?: Prosecutorial Discretion and Expungement*, 86 FDMLR 2821, 2831 (2018) ..................................................... 7

Eldar Haber, *Digital Expungement*, 77 Md. L. Rev. 337, 377 (2018) ......................................... 12

Gabriel J. Chin & Margaret Love, *Status as Punishment: A Critical Guide to Padilla v. Kentucky*, CRIM. JUST., Fall 2010 ..................................................... 8

Gabriel J. Chin, *The New Civil Death: Rethinking Punishment in the Era of Mass Conviction*, 160 U. Pa. L. Rev. 1789, 1791 (2012) ..............................................................8

Plaintiff Adam Ferrari ("Mr. Ferrari") files this Motion to Seal ("Motion") Exhibits B-2 through B-9 filed in support of Defendant William Francis' ("Mr. Francis") Motion to Dismiss Amended Complaint, and would respectfully show the Court as follows:

## **INTRODUCTION**

This Motion is in response to Mr. Francis' repeated attempts to use the judicial system to defame and malign Mr. Ferrari. In his Motion to Dismiss Mr. Ferrari's First Amended Complaint, Mr. Francis urges this Court to consider extrinsic documents, including Mr. Ferrari's Colorado criminal record which is currently under seal by order of the Denver County District Court ("Colorado Sealing Order"). Mr. Ferrari's criminal record was sealed because he completed a term of deferred adjudication and was never convicted of a crime. The State of Colorado weighed the public's interest in accessing these records against Mr. Ferrari's privacy rights and determined that the records should be sealed. Nevertheless, Mr. Francis has tainted this Court's record by filing documents that another jurisdiction has deemed necessary to seal from public access. Mr. Francis has performed this stunt before in order to bypass the Colorado Sealing Order and enter Mr. Ferrari's sealed records back into the public arena. He did so by filing Mr. Ferrari's sealed records in a separate state court proceeding, again without heed to the Colorado Sealing Order.

Mr. Francis' goal undoubtedly is to introduce Mr. Ferrari's sealed criminal documents into the record of this Court, as well as the state court, so that he can continue to publish defamatory information about Mr. Ferrari. If this Court does not honor the Colorado Sealing Order and seal Mr. Ferrari's records, Mr. Francis will be able to use the records of this Court to bolster his false narrative that Mr. Ferrari is a convicted felon. Mr. Francis has *already* done this by imploring this Court to take judicial notice of Mr. Ferrari's sealed records so that he can bolster his defense against Mr. Ferrari's defamation claim. Mr. Francis' nefarious and intentional actions cannot stand.

## BACKGROUND

Mr. Ferrari is an entrepreneur and business owner with decades of experience valuing, buying, selling, managing, and investing in mineral interest and royalty interests throughout the United States. In 2014, Mr. Ferrari founded Ferrari Energy, which focused on the acquisition of non-operating mineral leasehold interests. Mr. Ferrari is now, as of April 2023, the Vice President of Engineering for Phoenix Capital Group Holdings, LLC ("Phoenix").

Mr. Francis is the Chief Executive Officer of Incline Energy Partners, L.P. ("Incline"). Mr. Francis is a chief competitor of Mr. Ferrari and Phoenix who, in order to compete with Mr. Ferrari, has waged a malicious campaign of harassing and defamatory statements about Mr. Ferrari to third-party individuals within the energy sector. In order to gain a competitive edge, Mr. Francis has maligned Mr. Ferrari's personal and professional reputation, including but not limited to spreading misinformation about Mr. Ferrari's prior history with law enforcement.

On January 29, 2019, an arrest warrant in case number 19CR00782 was filed in Denver County, Colorado, seeking the arrest of Mr. Ferrari for various alleged criminal acts. On February 7, 2019, Mr. Ferrari was booked by the Denver Police.

On July 26, 2019, Mr. Ferrari pled guilty to one count of theft in exchange for the dismissal of several remaining charges. Mr. Ferrari was placed on deferred adjudication for a period of three years. The order for deferred adjudication states that "[i]f Mr. Ferrari is in compliance for the full period of deferral, the plea of guilty previously entered shall be withdrawn and the charge for this Deferred Judgment and Sentence shall be dismissed by the Court with prejudice."[1]

---

[1] APP0003, Exhibit A, Order: Motion and Stipulation for Unsupervised Deferred Judgment and Sentence ("Ex. A").

On May 9, 2022, Mr. Ferrari was granted early termination of his deferred sentence, his guilty plea was withdrawn, and the charge of theft was thus dismissed with prejudice.[2] On May 12, 2022, pursuant to § 24-72-705 of the Colorado Revised Statutes, Mr. Ferrari filed a Motion to Seal Criminal Justice Records, and on May 16, 2022, District Court Judge Kandace C. Gerdes in Denver County, Colorado signed an Order to Seal Criminal Justice Records, requiring that records relating to County Court Case Number 2019CR00782, District Court Case Number 2019CR782, Law Enforcement Agency Case Number 2017ECU00087, and Arrest Number 19-347576 be "sealed immediately."[3] As of June 6, 2022, the Colorado Bureau of Investigation's Biometric Identification and Records Unit reflected that no Colorado record of arrest was located regarding Mr. Ferrari.[4]

On June 15, 2022, a lawsuit was filed in the 116th District Court in Dallas County, Texas by Phoenix against Mr. Francis and Incline. *See Phoenix Capital Group Holdings, LLC v. William Francis and Incline Energy Partners, L.P.*, No. DC-22-06350 (116th Dist. Crt., Dallas County, Tex. June 15, 2022) ("State Lawsuit"). Phoenix, for which Plaintiff worked as an independent contractor and consultant at the time, asserted claims of defamation, business disparagement, tortious interference with contract, tortious interference with prospective contract/relations, unfair competition, and civil conspiracy.[5] In support of its claims, Phoenix alleged that its competitors Mr. Francis and Incline had engaged in a campaign to disparage Phoenix, including Mr. Francis, by repeatedly publishing to third parties that Mr. Ferrari was the CEO of Phoenix and that he was a convicted felon.[6]

---

[2] APP0003, Ex. A, Defer. Adj. Order (dismissal with prejudice as a term of Mr. Ferrari's successful completion of deferred adjudication); APP005, Exhibit B, Order: Unopposed Motion for Early Termination of Deferred Sentence ("Ex. B").
[3] APP0006-0007, Exhibit C, Order to Seal Criminal Justice Records ("Ex. C").
[4] APP0008, Exhibit D, Letter from the Colorado Bureau of Investigation ("Ex. D").
[5] Plaintiff's Original Petition, filed 6/15/2022 in the 116th District Court, Dallas County, Texas, at 7 - 9.
[6] *Id*. at 4 - 6.

On August 16, 2022, Mr. Francis and Incline filed a Motion to Dismiss Phoenix's lawsuit under the Texas Citizens Participation Act ("TCPA"), a statute allowing for the dismissal of certain claims that are based on or in response to the defendant exercising their right to free speech, petition, and/or assembly.[7] TEX. CIV. PRAC. & REM. CODE §§27.001, *et seq*. In support of their TCPA Motion, Mr. Francis and Incline introduced Mr. Ferrari's Colorado criminal records, three months after the Denver County District Court ordered that the records be sealed.[8]

As a result, Mr. Ferrari filed his Plea in Intervention and Motion to Seal Court Records in the State Lawsuit ("State Lawsuit Motion to Seal").[9] Mr. Francis was served a copy of the State Lawsuit Motion to Seal on October 27, 2022. The motion is currently pending due to a litigation stay caused by Mr. Francis and Incline's appeal of the 116th District Court's Order Partially Granting and Partially Denying their TCPA Motion to Dismiss.[10]

On February 28, 2023, Mr. Ferrari filed his Original Complaint against Mr. Francis in this Court asserting a cause of action for defamation, libel, and slander for several statements published by Mr. Francis about Mr. Ferrari that were untrue, including, among others, that Mr. Ferrari is a convicted felon and convicted criminal.[11]

On April 13, 2023, Mr. Ferrari filed his First Amended Complaint against Mr. Francis, asserting the same cause of action but including additional instances where Mr. Francis published false statements about Mr. Ferrari.[12] Among Mr. Francis' tortious acts were his intentional publications to Mr. Ferrari's potential investors and business contacts asserting that Mr. Ferrari

---

[7] Notably the TCPA cannot be applied in federal court. *See Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019), as revised (Aug. 29, 2019)
[8] APP0006-0007, Ex. C, CO Sealing Order.
[9] APP0011-00027, Exhibit E, Plea in Intervention and Motion to Seal Court Records ("Ex. E").
[10] Order Partially Granting and Partially Denying Defendant's TCPA Motion to Dismiss, filed 11/09/2022, in the 116th District Court, Dallas County, Texas.
[11] Dkt #1, Plaintiff's Original Complaint, 5 - 7.
[12] Dkt. #7, Plaintiff's First Amended Complaint, 10 - 12.

was a convicted criminal and convicted felon.[13] Additionally, Mr. Francis disseminated information about Mr. Ferrari's sealed criminal record to Mr. Ferrari's business associates.[14]

Now, despite the knowledge that Mr. Ferrari's prior criminal records are subject to the Colorado Sealing Order, Mr. Francis has entered them into this Court's record to support his Motion to Dismiss Mr. Ferrari's First Amended Complaint.[15] Mr. Francis was undoubtedly aware at this point in time that Mr. Ferrari's records had been sealed and were also subject to an additional motion to seal in the State Lawsuit as a result of his previous violation of the Colorado Sealing Order.[16] Nevertheless, Mr. Francis completely disregarded the Colorado Sealing Order and tainted this Court's record with sealed documents.

## ARGUMENTS AND AUTHORITIES

The trial court may exercise its discretion when determining whether to seal its records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978) ("[T]he decision as to access [of a trial court's records] is best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of a particular case."). "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (quoting *Nixon*, 435 U.S. at 598). When determining whether to seal judicial records, the court "must balance the public's common law right of access against the interests favoring nondisclosure." *Id*. While the Fifth Circuit operates on a "working presumption that judicial records should not be sealed," *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022), the common law right of public access is not absolute. *Bradley on behalf of AJW v.*

---

[13] *Id*. at 7, 9 - 10.
[14] *Id*.
[15] Dkt. #9, Defendant William Francis's Motion to Dismiss Amended Complaint and Brief in Support; Dkt. #10, Appendix in Support of Defendant William Francis's Motion to Dismiss Amended Complaint, Exhibits B-2 through B-9.
[16] APP0006-0007, Ex. C, CO Sealing Order.

*Ackal*, 954 F.3d 216, 225 (5th Cir. 2020). In fact, it "merely establishes a presumption of public access to judicial records." *Waeyenberghe*, 990 F.2d at 848. The Fifth Circuit has not assigned a particular weight to the presumption, and the presumption can be overcome by interests that favor nondisclosure. *Bradley*, 954 F.3d at 225.

Mr. Ferrari respectfully requests that the Court seal exhibits B-2 through B-9 filed along with Mr. Francis's Motion to Dismiss Mr. Ferrari's First Amended Complaint because they contain Mr. Ferrari's prior Colorado criminal history which has already been sealed by the court of competent jurisdiction in the State of Colorado.[17] Mr. Ferrari's substantial interest in being able to protect his reputation and privacy rights without disclosure of materials and information that would be harmful to his reputation outweighs the public's common right of access.

**A.     Plaintiff Has A Specific, Serious, and Substantial Interest in Protecting His Reputation and Privacy Rights Which Outweighs the Public's Common-Law Right of Access.**

The United States Constitution affords an individual a privacy interest in avoiding the disclosure of certain personal matters. *Whalen v. Roe*, 429 U.S. 589, 599, 97 S. Ct. 869, 876, 51 L. Ed. 2d 64 (1977). The recognized right to privacy must be considered a strong interest favoring nondisclosure. *Union Pac. R.R. Co. v. Botsford*, 141 U.S. 250 (1891). The Supreme Court has recognized two kinds of privacy interests in cases where the controversy surrounds disclosure of private information. *Whalen*, 429 U.S. at 598. One is an individual's interest in avoiding "disclosure of personal matters," and the other is the right to make "certain kinds of important decisions." *Id*. Here, Mr. Ferrari's interest in avoiding the disclosure of personal matters is invoked.

The disclosure of Mr. Ferrari's sealed, prior criminal history is highly improper, prejudicial, and undoubtedly violates his privacy rights. In fact, the Supreme Court has previously determined that the disclosure of similar records – "rap sheets" – could reasonably be expected to invade a

---

[17] APP0006-0007, Ex. C, CO Sealing Order.

citizen's privacy. *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 780, 109 S. Ct. 1468, 1485, 103 L. Ed. 2d 774 (1989) ("…we hold as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy…"). While *Freedom of Press* was in regard to a FOIA request, the understanding that a person's law enforcement records are sensitive and private to the extent that disclosing them would be an invasion of that person's privacy remains the same. The Court acknowledged that rap sheets include "descriptive information, such as date of birth and physical characteristics, as well as a history of arrests, charges, convictions, and incarcerations of the subject." *Id*. at 752. The Court then balanced the privacy interest at stake against the public interest in disclosure, and rejected the "cramped" argument that there was no privacy interest in rap sheets because the information was already available to the public. *Id*. at 762-763. Additionally, the Supreme Court referred to state laws to conclude that individuals have "a significant privacy interest in their criminal histories." *Id*. at 767 (noting that in 47 states non-conviction data from criminal histories are not available at all).

Further, the disclosure of Mr. Ferrari's *sealed* criminal history would cause him unquestionable harm. "The overwhelming negative effect of a criminal record is undeniable." Brian M. Murray, *Unstitching the Scarlet Letters?: Prosecutorial Discretion and Expungement*, 86 FDMLR 2821, 2831 (2018). Mr. Ferrari's criminal record alone does not provide the context needed to understand the full picture. That picture includes Mr. Ferrari's plea withdrawal, early termination, and charge dismissal. Additionally, the public may not understand the difference between a person convicted of a crime and a person charged of a crime, or the public may be influenced by misleading and untrue information just as Mr. Ferrari's associates have been. Even without undue influence, society's reaction to both arrests and convictions "can cause nearly irreversible damage to the reputation of a defendant." *Id*. at 2826. ("[c]riminal record history

information operates to incapacitate individuals…"). It is for this reason that most state jurisdictions allow for either expungement or sealing of nonconviction information such as acquittals or dropped charges. Gabriel J. Chin & Margaret Love, *Status as Punishment: A Critical Guide to Padilla v. Kentucky*, CRIM. JUST., Fall 2010, at 21, 22 (noting that Arkansas, California, Colorado, Delaware, Washington, D.C., Florida, Hawaii, Illinois, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Minnesota, Montana, Mississippi, Nevada, New Jersey, North Carolina, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Utah, Washington, and Virginia employ expungement and/or sealing regimes). The collateral consequences that come with being labeled as a felon or a convict are heavy, including "loss of civil rights, parental rights, public benefits, and employment opportunities." Gabriel J. Chin, *The New Civil Death: Rethinking Punishment in the Era of Mass Conviction*, 160 U. Pa. L. Rev. 1789, 1791 (2012). Chief Justice Warren once described the collateral consequences of being convicted of a felony as an imposition of "a status upon a person which not only makes him vulnerable to future sanctions through new civil disability statutes, but which also seriously affects his reputation and economic opportunities." *Id.* (quoting *Parker v. Ellis*, 362 U.S. 574, 594, 80 S. Ct. 909, 920, 4 L. Ed. 2d 963 (1960) (Warren, C.J., Dissenting), overruled by *Carafas v. LaVallee*, 391 U.S. 234, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968)). Considering the many ways being marked as a felon or convict will inevitably hurt an individual, it is no surprise that the Supreme Court determined that the disclosure of an FBI rap sheet could be expected to constitute an invasion of personal privacy. *Freedom of Press*, 489 U.S. at 780. It is even more sobering that the apparent harm that the label of felon or convict causes someone that was convicted of a crime would likely apply to Mr. Ferrari even though he was <u>*never*</u> convicted of any crime.[18]

---

[18] APP0001-0004, Ex. A, Defer. Adj. Order; APP0005, Ex. B, Early Term. Order; APP0006-0007, Ex. C, CO Sealing Order.

Mr. Ferrari maintains a substantial privacy interest in having these records *remain* sealed as they were intended to be. The sealed records that Mr. Francis filed in this Court's record include uncontroverted criminal allegations and charges, all but one of which were dropped,[19] an arrest warrant that includes Mr. Ferrari's personal information, such as his date of birth and charges that were dropped,[20] a mugshot profile that depicts Mr. Ferrari in an incredibly prejudicial fashion as well as displays his full name, date of birth, height, and weight,[21] a personal recognizance bond document reflecting charges that were dropped and Mr. Ferrari's date of birth,[22] two case information sheets that include charges that were dropped, Mr. Ferrari's date of birth, and the minutes of the bond hearing,[23] Mr. Ferrari's guilty plea which, of course, lacks the documentation showing that the plea was in exchange for deferred adjudication and later withdrawn,[24] and a case history report listing all charges, including those that were dropped.[25] These documents are tantamount to the "rap sheet" that the Supreme Court held the disclosure of which was a violation of a person's privacy rights. *Freedom of Press*, 489 U.S. at 780. Further, the disclosure of Mr. Ferrari's mugshot will be "debilitating" to him as it will work to "brand [him] with one of the most stigmatizing and debilitating labels in our society." *Paul v. Davis*, 424 U.S. 693, 714 (1976) (Brennan, J., Dissenting). The Supreme Court goes on in the *Davis* case to suggest that the publication of an individual's mugshot without conviction would support a claim for defamation. *Id*. at 697.

Further, the public would have little legitimate interest in the prior criminal history of a non-convicted person whose charges had been dropped. While the public has a legitimate concern

---

[19] Dkt. #10 at Ex. B-2, Ex. B-3.
[20] *Id*. at Ex. B-3.
[21] *Id*. at Ex. B-4.
[22] *Id*. at Ex. B-5.
[23] *Id*. at Ex. B-6, Ex. B-7.
[24] *Id*. at Ex. B-8.
[25] *Id*. at Ex. B-9.

**PLAINTIFF'S MOTION TO SEAL AND BRIEF IN SUPPORT**                                    Page 9 of 14

regarding criminal activity, adjudicated convictions, and public safety, access to arrest information that later resulted in a dismissal and nonconviction does not serve the same function. Annie O'Leary, *A Proposed Solution to Limit the Collateral Consequences of Arrests Without Conviction in the United States*, 46 Nova L. Rev. 85, 121 (2021). The more likely result of this Court allowing Mr. Ferrari's criminal records into its record without sealing them is that they would be used for "improper purposes." *Nixon*, 435 U.S. at 598. Courts have used their power to seal to "insure that [their] records are not 'used to gratify private spite or promote public scandal," to not allow their records "to serve as reservoirs of libelous statements for press consumption," or "as a source of business information that might harm a litigant's competitive standing." *Id*. (collecting cases). This Court should do the same.

Therefore, for all the reasons above, disclosure of Mr. Ferrari's *already sealed* criminal records would undoubtedly be considered a violation of his right to privacy and do significant harm to him personally. As such, because Mr. Ferrari has a substantial privacy interest favoring nondisclosure, as well as an interest in protecting his privacy, reputational, and financial interests, and because these interests outweigh the public's common law right of access, this Court should honor the Colorado Sealing Order.

**B.    This Court Should Honor the Colorado Sealing Order Because the Colorado District Court Determined That the Harm to Mr. Ferrari Outweighed the Public's Right of Access to Judicial Records**.

As discussed above, Mr. Ferrari's criminal records are sealed in the State of Colorado as a result of his completion of deferred adjudication.[26] The Colorado District Court weighed the public's interests against Mr. Ferrari's interests and came to the conclusion that Mr. Ferrari's interests prevailed. This Court should honor the Colorado Sealing Order and order that the same records be sealed here. To do otherwise would be to undermine the Court of competent jurisdiction

---

[26] APP0006-0007, Ex. C, CO Sealing Order.

over Mr. Ferrari's prior criminal proceedings, and would render the Colorado Sealing Order ineffective.

Title 24, Article 72, Part 7 of the Colorado Revised Statutes Annotated governs the sealing of criminal justice records other than convictions. § 24-72-705, C.R.S. A defendant may make a motion to seal in a criminal case at any time subsequent to the dismissal by filing a written motion. § 24-72-705 (2), C.R.S. Courts are required to determine if "the harm to the privacy of the defendant or the dangers of unwarranted, adverse consequences to the defendant outweigh the public interest in retaining public access to the conviction records." § 24-72-706, C.R.S. This "privacy balancing test" is laid out in *DWM v. District Court In and For Pitkin County*, holding that the relevant issue to a record being sealed is whether the harm to the privacy of petitioners is outweighed by public interest. *D.W.M. v. Dist. Court In & For Pitkin Cnty.*, 751 P.2d 74, 75 (Colo. App. 1988). Regarding the sealing of a deferred adjudication, the court in *Robertson v. People* held that a trial court's findings regarding the privacy test established in *D.W.M.* must "reflect adequate consideration of the pertinent factors," including consideration of "the petitioner's age and employment history, and the specific adverse consequences the petitioner might suffer if the records were not sealed." *Robertson v. People*, 2017 COA 143M, ¶ 34, as modified on denial of reh'g (Dec. 28, 2017).

Colorado's "balancing test" is substantially similar if not identical to the test employed by federal trial courts to determine whether to seal judicial records. *Waeyenberghe*, 990 F.2d at 848 (the court "must balance the public's common law right of access against the interests favoring nondisclosure."). While the state of Colorado recognizes the public's interest in accessing conviction records, it provides a balancing test to protect an individual's privacy rights. While the public maintains its common law right to access judicial records, that common law right's purpose is "to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the

public with a more complete understanding of the judicial system, including a better perception of fairness." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022) (citing *BP Expl. & Prod., Inc. v. Claimant ID 100246928,* 920 F.3d 209, 210 (5th Cir. 2019)).

Plaintiff's prior criminal records, which are unavailable to the public and have previously been sealed, do not serve the purpose of the public's common law right; especially prior records that <u>do not</u> reflect a conviction, such as Mr. Ferrari's. The argument that the public has in interest in these records for public safety purposes is hollow. Eldar Haber, *Digital Expungement*, 77 Md. L. Rev. 337, 377 (2018) ("[t]he public safety argument is generally unpersuasive, particularly regarding non-conviction and expunged records."). Instead, Mr. Ferrari's sealed criminal records, if disclosed in this Court's record, are "more likely to become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598. More specifically, as evinced from his past conduct, Mr. Francis is more likely than not to "gratify private spite," by using this Court's record as a "reservoir for libelous statements" that he can then publish to third parties, or as a source of information that will "harm [Mr. Ferrari's] competitive standing." *Id*. (collecting cases). This would be antithetical to both federal sealing procedure and Colorado law.

## CONCLUSION

This Court should seal Exhibits B-2 through B-9 of Defendant Francis's Motion to Dismiss Plaintiff's Amended Complaint because the public's interest in disclosure is heavily outweighed by the likely harm to Mr. Ferrari. There are substantial privacy interests in Mr. Ferrari's prior criminal records. Further, the Colorado Sealing Order is based on a balancing test that is substantially the same as the one used by federal district courts. Therefore, because there is no legitimate public interest in this Court disregarding the Colorado Sealing Order and because if there were a public interest it would be outweighed by the harm caused to Mr. Ferrari, this Court should honor the Colorado Sealing Order and seal Exhibits B-2 through B-9.

## PRAYER

For the foregoing reasons, Mr. Ferrari respectfully requests that this Court (1) seal Exhibits B-2 through B-9 filed with Defendant Francis's Motion to Dismiss Plaintiff's Amended Petition; and (2) order the Parties to file redacted copies of their respective briefings regarding Defendant's Motion to Dismiss which redact references to Mr. Ferrari's sealed criminal records.

May 18, 2023                                              Respectfully submitted,

**CHAMPION LLP**

*/s/ Austin Champion*
Austin Champion
Texas Bar No. 24065030
Austin.Champion@championllp.com
----
Andrew D. Gray
Texas Bar No. 24110756
Andrew.Gray@championllp.com

2200 Ross Avenue, Suite 4500W
Dallas, Texas. 75201
214-225-8880 | Direct
214-225-8881 | Fax

**COUNSEL FOR PLAINTIFF**
**ADAM FERRARI**

## CERTIFICATE OF CONFERENCE

The undersigned certifies that the foregoing Motion was discussed between counsel for Plaintiff and counsel for Defendant in person on May 16, 2023. Defendant is opposed to the relief requested.

*/s/ Austin Champion*
Austin Champion

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was served via the CM/ECF Court Filing System in accordance with the Federal Rules of Civil Procedure and the Local Rules on May 18, 2023.

                                                        */s/ Austin Champion*
                                                        Austin Champion