**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ADAM FERRARI,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO. 3:23-cv-455-S** |
| | § | |
| **WILLIAM FRANCIS,** | § | |
| | § | |
| **Defendant.** | § | |

**FRANCIS'S MOTION TO STAY, OR ALTERNATIVELY, EXPEDITED**
**<u>MOTION FOR ENTRY OF PROTECTIVE ORDER AND BRIEF IN SUPPORT</u>**

Cortney C. Thomas
 Texas Bar No. 24075153
 cort@brownfoxlaw.com
Charlene C. Koonce
 Texas Bar No. 11672850
 charlene@brownfoxlaw.com
 BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Defendant William Francis*

## TABLE OF CONTENTS

SUMMARY ................................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

ARGUMENT ............................................................................................................... 12

I.      The Court Should Stay this Case Pending Resolution of the State Court Case ............... 12

        A.      Res Judicata Will Bar Ferrari's Claims ................................................. 13

        B.      The Court Should Not Reward Ferrari's or Phoenix's Contempt ......................... 14

II.     Motion for Protective Order ........................................................................ 15

        A.      Legal Standard for Protective Orders ................................................... 15

        B.      Francis Requests a Protective Order Narrowing the Scope of the Third-Party
                Subpoenas ........................................................................................ 16

        C.      Francis Requests a Protective Order Narrowing the Scope of the Ferrari's
                Overbroad Discovery Requests .............................................................. 17

CONCLUSION ............................................................................................................ 20

## **TABLE OF AUTHORITIES**

**Cases**

*Amstadt v. U.S. Brass Corp.*,
   919 S.W.2d 644 (Tex.1996 ...................................................................... 13

*Areizaga v. ADW Corp.*,
   314 F.R.D. 428 (N.D. Tex. 2016) ...................................................... 15, 17

*Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*,
   500 S.W.3d 26 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ........................ 13

*Brazos Valley Coal. for Life, Inc. v. City of Bryan, Tex.*,
   421 F.3d 314 (5th Cir. 2005) .................................................................... 14

*Citizens Ins. Co. of Am. v. Daccach*,
   217 S.W.3d 430 (Tex. 2007) ..................................................................... 13

*Corwin v. Marney, Orton Inves.*,
   843 F.2d 194 (5th Cir. 1988) .................................................................... 13

*Crescent City Remodeling, LLC v. CMR Constr. & Roofing, LLC*,
   No. CV 22-859, 2022 WL 17403556 (E.D. La. Dec. 2, 2022) ................................. 15

*Crosswhite v. Lexington Ins. Co.*,
   321 F. App'x 365 (5th Cir. 2009) ............................................................... 15

*Degen v. United States*,
   517 U.S. 820 (1996) ............................................................................. 15

*Duling v. Gristede's Operating Corp.*,
   266 F.R.D. 66 (S.D.N.Y. 2010) ................................................................. 15

*Hirsch v. USHealth Advisors, LLC*,
   No. 4:18-CV-245-P, 2020 WL 1271588 (N.D. Tex. Feb. 14, 2020) .......................... 16

*Humphries v. Progressive Corp.*,
   No. 3:20-CV-548-X, 2022 WL 1018404 (N.D. Tex. Apr. 5, 2022) .......................... 16

*June Med. Services, L.L.C. v. Phillips*,
   22 F.4th 512 (5th Cir. 2022) .................................................................... 15

*Kandl v. Hurt*,
   No. 6:11CV516, 2012 WL 12878359 (E.D. Tex. Nov. 3, 2012) .............................. 18

*Landry v. Air Line Pilots Ass'n Int'l, AFL-CIO*,
   901 F.2d 404 (5th Cir. 1990) .................................................................... 13

*Lopez v. Warren Transp., Inc.*,
No. 3:16-CV-2755-G-BN, 2017 WL 551680 (N.D. Tex. Feb. 10, 2017) ......................... 15, 19

*Marinechance Shipping, Ltd. v. Sebastian*,
143 F.3d 216 (5th Cir. 1998) ..................................................................................... 12

*Martin v. Allstate Ins. Co.*,
292 F.R.D. 361 (N.D. Tex. 2013) .............................................................................. 15, 19

*Oreck Direct, L.L.C. v. Dyson, Inc.*,
560 F.3d 398 (5th Cir. 2009) ..................................................................................... 14

*Petrus v. Brown*,
833 F.2d 581 (5th Cir. 1987) ..................................................................................... 12

*Sapp v. Mem'l Hermann Healthcare Sys.*,
406 F. App'x 866 (5th Cir. 2010) .............................................................................. 12, 14

*Tumbling v. Merced Irr. Dist.*,
262 F.R.D. 509 (E.D. Cal. 2009) ............................................................................... 19

**Statutes**

735 ILL. COMP. STAT. 5/2-402 ..................................................................................... 9

**Other Authorities**

17 C.F.R. § 230.506 (d) .............................................................................................. 3

**Rules**

FED R. CIV. P. 26(c) ..................................................................................................... 16

FED. R. CIV. P. 26(b)(1) ............................................................................................... 16

FED. R. CIV. P. 26(c)(1) ............................................................................................... 15

**Treatises**

TEX. CIV. PRAC. & REM. CODE § 16.002 ...................................................................... 16, 18

TEX. CIV. PRAC. & REM. CODE § 16.002(a) .................................................................. 11

TEX. CIV. PRAC. & REM. CODE § 27.003 ...................................................................... 4

Defendant William Francis ("Francis") requests that the Court stay this case pending the final disposition of a related state court case[1] or, alternatively, moves for entry of a Protective Order that (1) limits the scope of discovery and (2) limits the use of discovery, and in support respectfully shows the Court as follows.

## SUMMARY

This Court should halt Ferrari's (and his principal's) forum shopping spree.  The claim asserted here has been litigated in the State Case, nearly to completion.  In the State Case, Phoenix Capital Holdings Group, LLC ("Phoenix") Ferrari's employer and an entity which Phoenix now admits Ferrari owns, asserted several claims against Incline and one of its principals, William Francis, based on the same statements at issue here: that Ferrari controls Phoenix and is a felon.  Based on a recent judgment issued by the Dallas Court of Appeals, all but one claim has been dismissed, and the appellate court remanded that remaining claim—defamation per se—with instructions for the trial court to consider dismissing based on an affirmative defense.[2]  Thus, a final judgment in the State Case will preclude the claim asserted here.  On the same day Phoenix filed its appellee's brief in the State Case, to avoid res judicata as well as the continuing discovery stay that existed based on the statute underlying Incline's motion to dismiss as well as the appeal, Ferrari filed this case alleging a substantially identical factual basis for his sole claim.

---

[1] *Phoenix Capital Group Holdings, LLC v. William Francis and Incline Energy Partners, LP*, Cause No. DC 06360, pending in the 116th District Court for Dallas County, Texas (the "State Case"), and Appeal No. 05-22-01260-CV, in the Fifth District Court of Appeals.

[2] *See* Appellate Opinion, attached as Exhibit A-1 to the Declaration of Charlene Koonce, ("Koonce Dec.") ("Accordingly, we conclude that Francis and Incline have provided evidence raising the affirmative defense of privilege, and we remand the case to the trial court for further consideration of this issue [with respect to the only remaining claim].")

The Court should not condone Phoenix and Ferrari's race to res judicata, nor expend further judicial resources on what amounts to a second—or third—bite at the apple.[3]  Because res judicata from a final judgment in the State Court Case will bar this action, the Court should stay this case pending resolution of the State Court Case.

Alternatively, this Motion requests a protective order on two grounds.  First, Francis requests a protective order limiting the scope of a third-party subpoena as well as Ferrari's discovery requests to Francis, all of which improperly utilize an overbroad time period and seek documents that have no relevance to this lawsuit.  Second, because the subpoenas demonstrate Ferrari's intention to use discovery in this lawsuit to circumvent the stay in place in the State Case, Francis seeks a protective order precluding use of discovery obtained in this case in any related case.

Finally, Francis seeks expedited consideration of this motion because production pursuant to a third-party subpoena is required on **November 29, 2023**, and Francis's first responses to Ferrari's discovery requests are due on December 8, 2023.

## FACTUAL BACKGROUND

### A.    The Related State Court Litigation

1.     Francis and Ferrari are both involved in the State Case.  Francis is a Defendant.[4]  Ferrari, who was initially identified as Phoenix's most valued "consultant" but is now its Vice President of Engineering, also owns and controls Phoenix.[5]

---

[3] As discussed below, Phoenix's forum shopping spree has become even more blatant, based on a *third* lawsuit filed last month in the United States District Court for the District of North Dakota, *based on the same facts at issue here and in the State Case.  See Phoenix Capital Group Holdings, LLC v. Incline Energy Partners, LP.*, Cause No. 23-CV-00209 (the "North Dakota Case").

[4] *See* Phoenix's Original Petition ("Original Petition") attached to the Declaration of Charlene Koonce ("Koonce Dec.") as Exhibit A-2.

[5] *See* Phoenix's publicly filed Offering Circular, in which it belatedly revealed that Ferrari "is the economic interest owner of Lion of Judah, LLC" the sole capital contributing shareholder of Phoenix.

2.      As in this lawsuit, Ferrari's control over Phoenix and his felony status underlie the State Case.  In the State Case, Phoenix asserted claims for (a) defamation, slander, libel, and slander/libel per se; (b) business disparagement; (c) tortious interference with contract; (d) tortious interference with prospective contract; (d) unfair competition; and (e) civil conspiracy,  premised on allegations that Francis and Incline Energy Partners, LP ("Incline") defamed Phoenix by stating that Ferrari is a felon and serves as Phoenix's CEO.[6]   Those allegations include the following:

> "Mr. Francis began emailing and sending anonymous packets to mineral rights sellers and industry executives, claiming that Mr. Ferrari was Phoenix's Chief Executive Officer and a convicted felon."

> "In early May of 2022, Phoenix was moving to close on a $50,000,000 loan with its primary bank, First International Bank and Trust ("FIBT"). . . . On May 11, 2022, Phoenix received a call from FIBT, informing Phoenix that FIBT was backing out of the transaction.  Phoenix later learned that someone had sent FIBT an anonymous packet regarding Mr. Ferrari, which caused FIBT to back out of the transaction.[7] Upon information and belief, Mr. Francis intentionally interfered with the transaction by defaming Phoenix."[8]

> In February and March of 2022, Mr. Francis contacted Dalmore Capital, Phoenix's broker-dealer, to disparage Phoenix, to disparage Mr. Ferrari, and try to derail Phoenix's latest capital raise.[9]

3.      Not only are the allegations in this lawsuit based on the same subject matter as the State Court Case, whole paragraphs of Ferrari's pleadings are copied *word for word* from the State Court Original Petition.[10]

---

https://www.sec.gov/Archives/edgar/data/1979999/000165495423007644/pcgh_1a.htm.   Ferrari's involvement in this capacity, while Phoenix raises money through public offerings, particularly offerings that did not disclose Ferrari's role, apparently violates SEC regulations.   *See* 17 C.F.R. § 230.506 (d).   *See also* https://phxcapitalgroup.com/our-team/.

[6] Original Petition, pp. 7–10.  Although Phoenix's Petition includes other purportedly defamatory but time-barred statements, during arguments, Phoenix conceded its claims rested only on these two statements.  *Koonce Dec.*

[7] Hereafter, the "FIBT Communication."

[8] Original Petition ¶¶ 21, 26,  35–38.

[9] Original Petition ¶ 35.

4.      In August of 2022, Incline moved to dismiss Phoenix's claims pursuant to the Texas Citizen's Participation Act ("TCPA"), which authorizes motions to dismiss challenging "legal actions" that are "based on" or "in response to" a party's exercise of its "right of free speech, right to petition, or right of association . . ." TEX. CIV. PRAC. & REM. CODE § 27.003.

5.      Incline initially sought agreement from Phoenix to proceed with discovery before the stay imposed by Incline's TCPA motion was triggered. Phoenix, however, opposed discovery.[11] When Incline filed its motion to dismiss, discovery was automatically stayed by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(c).

6.      Following extensive briefing and two lengthy hearings, the trial court granted Incline's motion to dismiss in part and dismissed Phoenix's (a) tortious interference with existing contract claim, and (b) business disparagement and defamation claims, to the extent those claims relied on any statement *other than* the Taylor email[12] (i.e., communications with First International Bank & Trust,[13] ("FIBIT") and other time-barred communications alleged in the Petition). The trial court denied the motion with respect to Phoenix's claims for tortious

---

[10] *Compare*, Original Petition, ¶ 60 ("Defendants' conduct complained of herein was intentional, with malice, with conscious indifference to Plaintiff's rights, and with a specific intent to cause serious harm and substantial injury to Plaintiff, and Defendants were consciously indifferent to the harm. Based on the foregoing, Plaintiff is entitled to and seeks to recover exemplary damages against Defendants in an amount to be determined by the trier of fact."), *with* Amended Complaint, Dkt. 7, ¶ 44 ("Mr. Francis' conduct complained of herein was intentional, with malice, with conscious indifference to Mr. Ferrari's rights, and with a specific intent to cause serious harm and substantial injury to Mr. Ferrari.  Mr. Francis was consciously indifferent to the harm he caused Mr. Ferrari.  Based on the foregoing, Plaintiff is entitled to and seeks to recover exemplary damages against Defendant in an amount to be determined by the trier of fact.").  A chart summarizing the similarity between this lawsuit, the State Case, and the North Dakota Case is attached to the Koonce Dec. as Exhibit A-15.

[11] Koonce Dec. ¶ 4.

[12] The email attached to Ferrari's Amended Petition as Exhibit G. Dkt. 7-7. It was also attached to the Original Petition as an Exhibit and was defined in the State Case as the "Taylor email."

[13] *See* Amended Complaint ¶ 25.

---

interference with prospective contract, disparagement, and defamation relying on the Taylor email, and conspiracy and unfair competition.[14]

7.      Immediately after the trial court ruled on the motion to dismiss, Phoenix served subpoenas on several third parties, including GoDaddy, Google, Joe Moylan, and Greeley Publishing.  Before responses were due, however, discovery was again stayed by Incline's appeal of the partial denial of its motion to dismiss.[15] At Incline's request, Phoenix confirmed it had withdrawn its subpoenas.[16]

8.      Following extensive briefing and oral arguments, on August 29, 2023, the Court of Appeals entered a judgment reversing denial of Incline's motion to dismiss, finding the trial court erred in failing to dismiss all claims, except for defamation per se, which was remanded for the trials court's consideration of an applicable affirmative defense.[17]

9.      Phoenix filed a petition for rehearing, which the appellate court denied on October 11, 2023.  Because remand requires the Texas trial court to reconsider the final claim pursuant to the TCPA, discovery in the State Court Case will remain stayed while the trial court considers the remanded claim.

10.     On October 20, 2023, a mere nine days after the denial of the petition for rehearing, Phoenix filed suit in North Dakota, premised on the exact same FIBT communication pleaded in this case [Dkt. 7, ¶ 25] and the State Court Case, as well as Incline's alleged

---

[14] *See* Koonce Dec. ¶ 7, Exhibit A-2.

[15] *Incline et al. v. Phoenix Group Holdings, LLC*, Appeal No. 05-22-01260-CV.

[16] Koonce Dec. ¶ 8, Exhibit A-3.

[17] *See* Koonce Dec. ¶ 9, Exhibit A-4.  The appellate court also remanded for the trial court's consideration of attorney's fees incurred in connection with the appeal, as well as reconsideration of the fees awarded in connection with the motion to dismiss.  *Id.*

communications with mineral owners regarding Ferrari's felony status and his role with Phoenix.[18]

11.    Phoenix's counsel in the North Dakota case is now lead counsel in this matter as well.[19]  Additionally, as discussed below, *see infra* Part D, Ferrari's and Phoenix's lead counsel filed a separate "discovery" only lawsuit in an Illinois state court.

12.    As a result of Incline's TCPA motion to dismiss and subsequent appeal, all that remains of Phoenix's claims in the State Court Case is a defamation per se claim, premised solely on the Taylor email (an email in which Incline informed a mineral owner with whom it had already contracted that Ferrari was a felon and the CEO of Phoenix), which the Court of Appeals remanded for consideration of Incline's privilege affirmative defense.[20]  All claims, including defamation per se based on any other communication regarding Ferrari's status as a felon and his control over Phoenix have been dismissed.

**B.    Ferrari Filed this Lawsuit to Circumvent the Discovery Stay and Race to a Better Outcome than the State Court Case.**

13.    Because the appellate briefing made clear that Phoenix would lose the appeal, Ferrari filed this lawsuit on February 28, 2023—the same date Phoenix filed its Appellee's brief in the State Court Case. Dkt. 1. As evidenced by the similarity of the underlying allegations, a judgment in the State Case will bar this case.

14.    Indeed, numerous allegations in this lawsuit rest on claims of injury *to Phoenix*. For instance, Ferrari claims Francis defamed him by interfering with a business relationship *between Dalmore Capital and Phoenix* [Dkt. 7 ¶¶ 26, 37].

---

[18] A true and correct copy of the Complaint in the North Dakota Case is attached to the Koonce Dec as Exhibit A-6.

[19] Dkt. 33.

[20] The Court of Appeals also made a specific finding that Incline had adduced evidence in support of that privilege defense.

15.     Moreover, the Amended Complaint rests on many of the same facts at issue in the State Court Case, including the allegation that Francis's communications with First International Bank and Trust, ("FIBT") regarding the same loan transaction at issue in this lawsuit, harmed Ferrari, individually:

> "In approximately 2021 or 2022, upon information and belief, Mr. Francis sent one of his a slanderous packets to First International Bank and Trust ("FIBT") in order to further disparage Mr. Ferrari and damage relations between Mr. Ferrari and potential investors. Based on information and belief, as well as Mr. Francis' pattern and practice of publishing false statements against Mr. Ferrari, Mr. Francis published false statements to FIBT, including that Mr. Ferrari was a felon, was acting as the CEO of Phoenix, and was defrauding mineral owners and investors."[21]

16.     In addition to other time-barred allegations, as in the State Court Case, Ferrari alleges Francis slandered him by:[22]

- calling out Ferrari's fraud to mineral owners and investors, including "4 GRLZ";[23]

- allegedly making false statements (also about Ferrari's felony status and his control over Phoenix) to Dalmore Capital, a brokerage firm engaged by Phoenix;[24]

- communicating with the Greely Tribune about Ferrari's felony status;[25]

- creating and referencing websites that discuss Ferrari's felony status;[26] and

- communicating with "industry players" like Exxon and Hess about Ferrari's felony status and his control over Phoenix.[27]

17.     In this case, Ferrari also alleges Francis made the same statements at issue in both cases to  FINRA.[28]  Nonetheless, to avoid the statute limitations issues apparent in his Original

---

[21] Dkt. 7 ¶ 25;  *compare* Original Petition ¶¶ 36–38.

[22] As reflected in his Answer, Mr. Francis denies making many of these statements and denies creating the website described in the Amended Complaint.  *See* Dkt. 34 ¶¶ 11, 14, 28.

[23] Dkt. 7 ¶¶ 28–29; *compare* Original Petition ¶¶ 1, 31, 49.

[24] Dkt. 7 ¶¶ 26–27; *compare* Original Petition ¶ 35.

[25] Dkt. 7 ¶ 14; *compare* Original Petition ¶ 27.

[26] Dkt. 7 ¶ 11; *compare* Original Petition ¶¶ 26, 30.

[27] Dkt. 7 ¶ 19; *compare* Original Petition ¶ 28.

Complaint, Ferrari expressly stated that his claims rested only four specific communications: the FIBT Statement, the Dalmore Statement, the 4 GRLZ Statement, and the FINRA Statement, each of which were purportedly made less than a year before Ferrari filed this lawsuit.[29]

18.   Shortly after Ferrari filed this lawsuit, Francis moved to dismiss based on Rule 8 and 9 deficiencies, and the one-year statute of limitations.  Dkt. 6.  In response, Ferrari filed the operative First Amended Complaint. Dkt. 7.

19.   Francis again moved to dismiss, arguing, among other things, that Ferrari's criminal records adduced in the State Court Case were judicially noticeable and established the truth of the alleged defamatory statements at issue.  Dkt. 9.

20.   On May 31, 2023, Ferrari issued four subpoenas to various third parties: First International Bank & Trust, ANB Bank, Dalmore Group, and GoDaddy (the "Subpoenas").

21.   Before Francis moved for a protective order regarding those subpoenas, but after it had conferred about that motion, on June 2, 2023, this Court conducted a Scheduling Conference.  During the Conference the Court discussed the relatedness between this case and the State Court Case and stated the Court's intention to delay ruling on the motion to dismiss at least until the Court of Appeals ruled on the then-pending appeal.  The Court also stated that discovery was stayed while the motion to dismiss was pending, and that accordingly, Ferrari should withdraw his pending subpoenas so that Incline did not need to move for its protective order.[30]

---

[28] Dkt. 7 ¶¶ 26–35.  Notably, while Ferrari pleads that FINRA regulates broker-dealers, Dkt. 7 ¶ 32, he is neither.

[29] Dkt. 8, p. 13 ("Ferrari's claim for defamation is clearly based on four false statements made by Francis."); Dkt. 16, p. 18 ("Ferrari bases his claim on four false statements published by Francis.").

[30] Koonce Dec. ¶ 12.

22.     Immediately after the Scheduling Conference, Ferrari's counsel confirmed it had or would withdraw the Subpoenas.[31]

23.     On June 15, 2024, the Court issued its Scheduling Order which included the stay of discovery until seven days after the Court ruled on Francis's Motion to Dismiss Ferrari's Amended Complaint. Dkt. 29.

## C.     Ferrari's Obvious Violation of the Discovery Stay

24.     Unbeknownst to Incline, and in direct violation of the discovery stay in this case as well as the State Case, on June 20, 2023, Phoenix—through the same lawyers that are now Ferrari's lead counsel here—filed a fourth, discovery-only lawsuit in an Illinois State Court, from which it commenced to issue documents subpoenas (the "Illinois Discovery Proceeding") with no notice to Francis or Incline.[32]  In June and July of 2023, Phoenix and thus Ferrari began receiving responses to subpoenas issued in that proceeding, the same respondents in the subpoenas Ferrari had served in May, as well as others, (ANB Bank, Dalmore Group, Go Daddy, Google, and Reddit, Inc.).[33]  In other words, **five days after the Court issued the Scheduling Order memorializing its ruling that discovery was stayed as stated during the Scheduling Conference, Phoenix, through the same lawyers representing Ferrari here, filed a discovery only lawsuit to obtain the discovery that this Court had instructed Ferrari to withdraw**.[34]

---

[31] Koonce Dec. ¶ 13, Exhibit A-5.

[32] Koonce Dec. ¶ 18, Exhibit A-7.  Pursuant to Section 2-402 of the Illinois Code of Civil Procedure, a plaintiff may name parties as "respondents in discovery" for a temporary six-month period to seek discovery from them without yet naming them as a defendant. 735 ILL. COMP. STAT. 5/2-402.  Respondents in discovery must respond to discovery in the same way as defendants and may be added as defendants if the evidence warrants it. *Id.*  That is exactly what Phoenix did here. Phoenix filed suit on June 20, 2023, naming ANB Bank, Dalmore Group, LLC, Domains by Proxy, LLC, GoDaddy.com, LLC, Google, LLC, and Reddit Inc. as "respondents in discovery," and seeking discovery from them for several months before dismissing the action on November 14, 2023, approximately one month before the six-month period would have expired.  Koonce Dec. ¶ 19, Exhibit A-8.

[33] Koonce Dec. ¶ 19, Exhibit A-8.

[34] Koonce Dec. ¶ 18, Exhibit A-7.

---

25.     Notably, Phoenix voluntarily dismissed the Illinois Discovery Proceeding on November 14, 2023—six days after the discovery stay lifted in this case.[35]

26.     Francis's counsel learned about the Illinois Discovery Proceeding yesterday, on November 20, 2023, when it requested copies of documents produced in response to subpoenas from Ferrari's counsel.  It was given no notice of the proceeding when it was filed and had no opportunity to object to the discovery requested in that Proceeding.[36]

**D.      The North Dakota Case—Same Song, Third Verse**

27.     Likewise, nine days after the Texas state appellate court denied Phoenix's motion for rehearing but before this Court had ruled on Francis's motion to dismiss (and thus lifted the discovery stay), Phoenix filed the North Dakota Case.  That case regurgitates many of the allegations both in the State Court Case and this case, including that FIBT "terminated the agreement to provide $50,000,000 in financing to Phoenix in bad faith based on the statements made by Francis on behalf of Incline.[37]

28.     In the North Dakota case, Incline will (or has by the time this Motion is filed) file a motion to dismiss premised on *Colorado River* abstention, or in the alternative, motion to transfer venue to this Court for consolidation with this case.

**E.      Blatant Efforts to Delay a Final Judgment in the State Court Case**

29.     One day after Incline conferred with Phoenix regarding its motion to dismiss the North Dakota case based on *Colorado River* abstention and discussed res judicata that will arise when the State Court Case judgment becomes final, Phoenix's counsel in the State Court Case conferred regarding a request for a ***two-month*** extension in which to file its petition for review to

---

[35] *Id.*

[36] Koonce Dec. ¶ 20.

[37] A copy of Phoenix's Original Complaint from the North Dakota Case is attached to the Koonce Dec as Exhibit A-6; *see* ¶ 54; *see also* Original Petition ¶¶ 36–39; Dkt. 1, in this matter, First Amended Complaint ¶ 25.

the Texas Supreme Court.[38]  Phoenix's requested extension, as well as its petition for review, are intended to delay the preclusive effect that will result from a final judgment upon remand.

**F.  The Pending Discovery Requests**

30.  On October 31, 2023, this Court denied Francis's second motion to dismiss on [Dkt. 32], and thus discovery became permissible in this case on November 8, 2023.

31.  That same day, on November 8, 2023, Ferrari issued a new third party subpoena to FindIt, Inc. (the "Findit Subpoena").[39]  Although the applicable statute of limitations for a defamation claim is one year,[40] the subpoena seeks documents and communications related to two specific websites for a defined time period of "January 1, 2017 to Present."  Ferrari had no need to re-serve the subpoenas that had been served in May, since he and Phoenix had obtained the same information through the Illinois Discovery Proceeding.

32.  Also on November 8, 2023, Ferrari served discovery requests including requests for production, requests for admissions, and interrogatories.[41]  Like the Findit Subpoena, Ferrari's First and Second Requests for Production seek documents for a more than seven-year period, spanning from "January 1, 2016 to Present."[42]  Ferrari also requests documents between Francis and over fifty different individuals or entities regarding topics that extend well beyond Ferrari's defamation claim.  Specifically, Ferrari seeks "any and all" documents "relating to (1) Adam Ferrari, (2) Phoenix Capital Group, (3) Ferrari Energy, (4) Wolfhawk Energy, (5) Daniel Ferrari, and/or (6) Charlene Ferrari."[43]

---

[38] Koonce Dec. ¶ 17. Phoenix's motion for extension, filed on November 20, 2023, sought a 46-day extension. *Id.*

[39] Koonce Dec. ¶ 21, Exhibit A-9.

[40] TEX. CIV. PRAC. & REM. CODE § 16.002(a).

[41] Koonce Dec. ¶ 22, Exhibits A-10, A-11 and A-12.  Ferrari has since served two additional sets of Requests for Production of Documents. Koonce Dec. ¶ 23, Exhibits A-13 and A-14.

[42] Koonce Dec. ¶¶ 22–23, Exhibits A-10, A-14.

[43] Koonce Dec., Exhibit A-10.

33.     Likewise, Ferrari's Interrogatories and First and Second sets of Requests for Admission also request information under the identical seven-year period, from "January 1, 2016 to Present."[44]

34.     Because a final judgment in the State Court Case will preclude the claims at issue here, and because Ferrari has indirectly but intentionally violated the discovery stay imposed by this Court and the appellate stay in the State Court, this Court should stay this case until the State Court Case is resolved.

35.     Alternatively, Francis requests a protective order limiting the scope of the discovery to exclude documents and requests that have no relevance here, and, limiting discovery obtained in this case, to use only in this case (while the State Court Case remains stayed).

**ARGUMENT**

**I.      The Court Should Stay this Case Pending Resolution of the State Court Case.**

The Court has "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Brown*, 833 F.2d 581, 583 (5th Cir. 1987); *see also Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 218 (5th Cir. 1998) ("The district court possesses the inherent power to control its docket. This power includes the authority to decide the order in which to hear and decide pending issues. The district court used its discretionary authority to handle this case in the most efficient way; the court ruled upon the potentially dispositive issues first."). Such preliminary issues include determining whether claims are barred by res judicata. *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 870 (5th Cir. 2010) (holding that the district court properly stayed discovery while a motion for

---

[44] Koonce Dec. ¶¶ 22–23, Exhibits A-11, A-12, and A-13.

summary judgment based on res judicata was pending). As the Fifth Circuit has noted, "it would be wasteful to allow discovery on all issues raised in a broad complaint when, for example, the case will not reach a determination on those merits." *Id.* (internal quotations omitted) (quoting *Corwin v. Marney, Orton Inves.*, 843 F.2d 194, 200 (5th Cir. 1988)); *see also Landry v. Air Line Pilots Ass'n Int'l, AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990) ("Discovery is not justified when cost and inconvenience will be its sole result.").

### A.    Res Judicata Will Bar Ferrari's Claims

Here, Ferrari seeks discovery to support allegations that will be barred by res judicata and collateral estoppel when a final judgment is entered in the State Court Case.  Under Texas law, Incline will be entitled to a res judicata bar when it demonstrates (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action grounded on the same claims as those raised or that could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996).

Each element is easily satisfied by the State Court Case. First, resolution based on the TCPA will qualify as a final judgment on the merits.  *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 500 S.W.3d 26, 40 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("A dismissal with prejudice under the TCPA constitutes a final determination on the merits for res judicata purposes.").  There is no dispute that Ferrari and Francis are privies of Phoenix and Incline respectively.  And finally, this case is grounded on the same facts and claims raised in Texas, all of which could have been raised in the State Court Case.  *See Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007) ("a subsequent suit is barred if it arises out of the same subject matter as the prior suit, and that subject matter could have been litigated in the prior suit.").

No factual discovery is needed to assist the Court in determining whether Ferrari's claim is barred by res judicata and collateral estoppel, which are questions of law. *See Sapp*, 406 F. App'x at 870 ("We have previously held that where discovery would not be useful to the resolution of a pending summary judgment motion presenting a question of law, it is not an abuse of discretion to grant such a motion. The res judicata effect of a previous judgment is, in fact, a question of law.") (citing *Oreck Direct, L.L.C. v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009)); *Brazos Valley Coal. for Life, Inc. v. City of Bryan, Tex.*, 421 F.3d 314, 327 (5th Cir. 2005)).

**B.     The Court Should Not Reward Ferrari's or Phoenix's Contempt**

Allowing this duplicative case to proceed will serve only to increase the costs and burden on Francis and Incline and waste the Court's own resources when the parties bring their disputes about the scope of discovery, and other motion practice, to the Court. Moreover, allowing discovery to proceed in light of Ferrari's obvious use of the Illinois Discovery Proceeding to evade and ignore this Court's stay of discovery, rewards such contumacious conduct.

Given the overbroad requests already served by Ferrari, Francis anticipates that Ferrari will seek costly depositions and a mountain of documents, many of which have little if any relevance to his claim. Further, Ferrari obviously intends to use discovery obtained in this case, in furtherance of Phoenix's stayed State Court claims, despite the fact that the State Case is nearly concluded.  In short, Ferrari and Phoenix should not be permitted to use this Court in a race to obtain a judgment in advance of the State Court Case, where that case was filed eight months before this one, following a comprehensive appeal judgment has already been rendered in that case on all but one claim, and a final judgment will wholly bar the claim asserted here. The Court should stay this case pending resolution of the State Court Case.

## II.     Motion for Protective Order

In the alternative to a stay, this Court should limit discovery to the relevant period, the one year before Ferrari filed this lawsuit.

### A.     Legal Standard for Protective Orders

Federal Rule of Civil Procedure 26(c) allows the Court to "limit[] discovery as the interests of justice require." *Degen v. United States*, 517 U.S. 820, 826 (1996). Relatedly, upon a showing of good cause, a court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1); *see also June Med. Services, L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022). Generally, "good cause" means "demonstrating a particular need for protection." *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010); *see also Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) ("The grounds for a protective order can "include the improper sharing of confidential information between litigants in separate cases.").

Protective orders are also appropriate in instances when documents that have no relevance are sought through third-party subpoenas. *Crescent City Remodeling, LLC v. CMR Constr. & Roofing, LLC*, No. CV 22-859, 2022 WL 17403556, at *3 (E.D. La. Dec. 2, 2022). Likewise, protective orders are appropriate for limiting the scope of requests for production, requests for admissions, and interrogatories, including limiting their requested time period. *See Areizaga v. ADW Corp.*, 314 F.R.D. 428, 441 (N.D. Tex. 2016) (granting request for protective order against production of documents in response to requests for production and interrogatories); *see also Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 367 (N.D. Tex. 2013) (granting request for protective order limiting the relevant time period); *Lopez v. Warren Transp., Inc.*, No. 3:16-CV-2755-G-BN, 2017 WL 551680, at *6 (N.D. Tex. Feb. 10, 2017) (same).

**B.      Francis Requests a Protective Order Narrowing the Scope of the Third-Party Subpoenas**

Discovery requests must be relevant and proportional to the needs of a case.  FED. R. CIV. P. 26(b)(1). If a third-party subpoena lacks relevance or proportionality the court can issue a protective order limiting the scope of discovery. FED R. CIV. P. 26(c); *see also Humphries v. Progressive Corp.*, No. 3:20-CV-548-X, 2022 WL 1018404, at *2 (N.D. Tex. Apr. 5, 2022). A party has standing under Federal Rule of Civil Procedure 26(c) to move for a protective order limiting the scope of a third-party subpoena. *Hirsch v. USHealth Advisors, LLC*, No. 4:18-CV-245-P, 2020 WL 1271588 (N.D. Tex. Feb. 14, 2020).

Here, Ferrari has subpoenaed a third-party, Findit, Inc., seeking documents and communications related to two websites (a) lawsuitsoilandgas.com and (b) adamferrarioilandgaslawsuits.com, as well as any documents related to payments that relate to those websites.[45]

Those requests are not relevant to Ferrari's claim because the allegations related to those websites do not fall within the statute of limitations. This case is based solely on defamation, and Texas law has a one-year statute of limitations on defamation claims beginning the day after the cause of action accrues. *See* TEX. CIV. PRAC. & REM. CODE § 16.002.  This case was filed on February 28, 2023,[46] such that any claims that accrued prior to February 28, 2022 are time-barred. The allegations related to lawsuitsoilandgas.com concern a post allegedly published on July 19, 2021.[47] The allegations related to adamferrarioilandgaslawsuits.com concern its alleged creation in 2021.[48]  Ferrari has in fact acknowledged that many of the factual allegations

---

[45] Koonce Dec. ¶ 21, Exhibit A-9.

[46] Dkt. No. 1.

[47] Amended Complaint, Dkt. No. 7 ¶ 11.

[48] Amended Complaint, Dkt. No. 7 ¶ 17.

in his pleadings fall outside the statute of limitations.[49] The requests are also overbroad because they are not tailored to Ferrari's claims against Francis. For example, the requests seek documents related to payments from anyone, not just Francis.

Relatedly, Ferrari's requests are not relevant or proportional to the needs of this case because the documents he requests are not constrained to a reasonable or relevant time period here. Specifically, the requests each seek materials for the time period of "January 1, 2017 to Present"—going back well over <u>six years</u>, despite the applicable one year statute of limitations. Even if the documents requested above were relevant to this case, which they are not, the scope of the requests should be limited to one year from the day after the cause of action accrued.

Accordingly, the Court should enter a protective order limiting the scope of the request to documents related to William Francis that originated after March 1, 2022. In the alternative, the Court should limit the scope of the discovery requests to documents created after March 1, 2022.

### C. Francis Requests a Protective Order Narrowing the Scope of the Ferrari's Overbroad Discovery Requests.

Similarly, Francis seeks a protective order as to Ferrari's overbroad discovery requests. Like the third-party subpoena to FindIt, Inc., Ferrari's discovery requests seek information, admissions and documents for an unreasonably long time period. For example, Ferrari's first and second requests for production each request documents for a more than seven-year period, spanning from "January 1, 2016 to Present."[50] *See Areizaga v. ADW Corp.*, 314 F.R.D. 428, 441 (N.D. Tex. 2016) (granting request for protective order against production of documents in response to requests for production and interrogatories). Likewise, Ferrari's interrogatories and

---

[49] Plaintiff's Response to Defendant's First Motion to Dismiss, Dkt. 8, p. 5 ("While Ferrari does allege facts regarding specific false statements made by Francis over a span of several years, he does so to illustrate Francis' pattern and practice of defaming Ferrari.").

[50] Koonce Dec. ¶¶ 22–23, Exhibits A-10, A-14.

first and second set of requests for admission also request information under the identical seven-year period, starting on January 1, 2016.[51]  *See Kandl v. Hurt*, No. 6:11CV516, 2012 WL 12878359, at *1 (E.D. Tex. Nov. 3, 2012) (granting protective order limiting requests for admission as well as requests for production and interrogatories). Thus, the scope of the requested documents extends well beyond the applicable one-year statute of limitations.  *See* TEX. CIV. PRAC. & REM. CODE § 16.002.

Although Ferrari pleads that allegations related to statements outside of the limitations period tend to show that Francis has a "pattern and practice" of defaming Francis, these stale allegations—and therefore, any related discovery—are *irrelevant* to the claim before the court. This is because unlike, for example, employment claims that aggregate multiple incidents together under an examination of the "totality of the circumstances" to determine liability, defamation claims arise out of discrete publications or statements. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) (holding that a "plaintiff can bring a claim for defamation when *discrete facts*, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression") (emphasis added).  Thus, any discovery of years-old statements would not tend to make any aspect of Ferrari's claim or Francis's defenses more or less probable.  *See* Fed. R. Civ. P. 26(b)(1) (defining the allowable scope of discovery as: "any nonprivileged matter that is relevant to any party's claim or defense"); *see also Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.*, No. CV 11-2405, 2017 WL 2271982, at *4 (E.D. La. May 24, 2017) (stating that "discovery must be relevant to the claim or defense of [a] party" and, to implement that rule, courts should "examine[] the relationship of the requested discovery and the facts it is intended to uncover to the specific

---

[51] Koonce Dec. ¶¶ 21–22, Exhibits A-14, A-15, A-16.  Francis reserves any additional objections—including but not limited to proportionality—that will be asserted in response to these discovery requests in the event the Court does not stay the case.

claims and defenses raised by the parties"). Ferrari does not seek discovery from over seven years ago to prove his claim, but, instead, to cause Francis burden and gin up facts for use in other litigation.

Allowing discovery for such a broad time period would amount to an unreasonable and unjustified fishing expedition. *See Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 367 (N.D. Tex. 2013) (granting request for protective order narrowing the time period for discovery requests based on relevance); *Lopez v. Warren Transp., Inc.*, No. 3:16-CV-2755-G-BN, 2017 WL 551680, at *6 (N.D. Tex. Feb. 10, 2017) (same); *Willis v. Geico Gen. Ins. Co.*, No. CV 13-280 KG/KK, 2016 WL 1749665, at *6 (D.N.M. Mar. 29, 2016) (granting motion for protective order regarding overly broad interrogatories and limiting relevant time period to within one year of the relevant incident). Accordingly, the Court should limit Ferrari's requested discovery to a relevant time period of March 1, 2022 to present.

Moreover, Ferrari's requests for production are overbroad (beyond their requested time period) because Ferrari seeks "any and all" documents "mentioning, discussing, disparaging, defaming, opining as to the character, reputation, or conduct of, or in any other form regarding or relating to (1) Adam Ferrari, (2) Phoenix Capital Group, (3) Ferrari Energy, (4) Wolfhawk Energy, and/or (5) Daniel Ferrari and/or (6) Charlene Ferrari."[52] These documents are not relevant to the sole claim at issue in this case: whether Francis allegedly defamed Ferrari. *See Tumbling v. Merced Irr. Dist.*, 262 F.R.D. 509, 516 (E.D. Cal. 2009) (granting protective order barring discovery as to allegations that were "not relevant to a claim or defense"). Five of the groups listed above—Phoenix Capital Group, Ferrari Energy, Wolfhawk Energy, Daniel Ferrari and/or Charlene Ferrari—are not parties to this case. Whether Francis said anything about these

---

[52] Koonce Dec., Exhibit A-10. Again, Francis will address additional objections, including proportionality, in responses to these requests, if the Court does not stay the case.

entities or individuals is irrelevant to Ferrari's claims here.  Instead, these requests demonstrate that Ferrari is attempting to use discovery in this case to circumvent the litigation stay in the State Court Case.

Accordingly, the Court should enter a protective order limiting the scope of the request to documents related to Adam Ferrari that originated after March 1, 2022. Or in the alternative, the Court should limit the scope of the discovery requests to documents created on or after March 1, 2022.

## CONCLUSION

Francis requests that the Court stay this case pending resolution of the State Court Case. Alternatively, Francis requests entry of a protective order (1) limiting the scope of the documents requested in the subpoena to documents that (a) relate to William Francis and (b) were created after March 1, 2022 only, (2) limiting the scope of the documents and answers requested in Ferrari's Requests for Production, Requests for Admissions, and Interrogatories to a relevant time period of March 1, 2022 to present, (3) limiting Ferrari's Requests for Production to documents that relate to Adam Ferrari, and (4) prohibiting use of discovery obtained in this case for any purpose other than in this case, and likewise, prohibiting dissemination of any discovery obtained in this case to Phoenix Capital Group Holdings, LLC.  Francis also requests such other and further relief to which he may show himself entitled.

BROWN FOX PLLC

By: /s/ Charlene C. Koonce
    Cortney C. Thomas
     Texas Bar No. 24075153
     cort@brownfoxlaw.com
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Andrew C. Debter
     Texas Bar No. 24133954
     andrew@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX  75225
    Tel. 214.327.5000
    Fax. 214.327.5001

*Attorneys for Defendant William Francis*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on November 20, 2023, Counsel for Francis conferred with Counsel for Ferrari about the requested relief. Counsel for Ferrari indicated that they were opposed to the relief sought.

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

*/s/ Charlene C. Koonce*
Charlene C. Koonce