**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ADAM FERRARI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-455 |
| | § | |
| WILLIAM FRANCIS, | § | |
| | § | |
| Defendant. | § | |

**ADAM FERRARI'S RESPONSE IN OPPOSITION TO FRANCIS'S MOTION TO STAY, OR ALTERNATIVELY, EXPEDITED MOTION FOR ENTRY OF PROTECTIVE ORDER**

 _/s/Ross M. Good_____
Ross Good, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark Suite 1600
Chicago, Illinois 60601
p: (786) 539-3952
ross@loftusandesienberg.com

*One of Plaintiff's Attorneys*

1

## Table of Contents

**INTRODUCTION** .......................................................................................................... 4

**FACTUAL BACKGROUND** ......................................................................................... 7

    A.   The State Court Litigation ................................................................................. 7

    B.   The Lawsuit filed in Illinois was Filed as a Result of Representations Made by Defendants' Counsel to Locate Potential Defendants before Statute of Limitations Expired .... 8

    C.   Plaintiff did not violate any Order of this Court ............................................... 9

    D.   The Case Pending in North Dakota is a Different Cause of Action ................................. 10

    E.   Defendant in the State Court case has delayed merits discovery and a determination on the merits from that case's inception.......................................................................... 10

    F.   Plaintiff's Pending Discovery Requests are Reasonably Calculated to Lead to Discovery of Admissible Evidence in this Case ......................................................................... 11

**ARGUMENT** ................................................................................................................. 12

    A.   Defendant violated rule 7.1 and the Motion should be stricken. This is a discovery motion and there was ample room to compromise rather than troubling the court with a voluminous discovery motion. ........................................................................................... 12

    B.   The Motion to Stay is Premature at Least........................................................ 14

    C.   There is no Res Judicata Application to This Action. .................................... 15

    D.   The Protective Order Sought is Inappropriate based on Rule 26 of the Federal Rules of Civil Procedure........................................................................................................... 17

**CONCLUSION** ............................................................................................................. 17

## Table of Authorities

**Cases**

In re Lipsky, 460 S.W.3d 579 (2015)................................................................6

Fruehauf Corp. v. Carrillo, 848 S.W.2d 83 (Tex. 1993) ...............................................6

In re Baylor Med. Ctr. At Garland, 280 S.W.3d 227 (Tex. 2008) ...............................6

Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985).......................6

In re Burlington Coat Factory Warehouse of McAllen, Inc., 167 S.W.3d 827 (Tex. 2005)........6

Fabio v. Ertel, 226 S.W.3d 557 (Tex. App.—Houston [1st Dist.] 2007, no pet.)......................6

Lakota Res., Inc. v. Pathex Petroleum, Inc., 2008 Tex. App. LEXIS 6149, 2008 WL 3522253.6

Phoenix Capital Group Holdings, LLC v. Incline Energy Partners, LP., Case No. 23-CV-00209 ................................................................................................10

Platinum Jack Entm't, LLC v. ESPN, Inc., 2019 U.S. Dist. LEXIS 227295............................14

Petrus v. Bowen, 833 F.2d 581 (5th Cir. 1987) .......................................................14

Von Drake v. NBC, 2004 U.S. Dist. LEXIS 25090, 2004 WL 1144142 (N.D. Tex. 2004)......15

Landry v. Airline Pilots Ass'n Int'l AFL-CIO, 901 F.2d 404 (5th Cir. 1990)...........................15

DFW Dance Floors LLC v. Suchil, 2023 U.S. Dist. LEXIS 20133.........................................15

BVS Constr., Inc. v. Prosperity Bank, 18 F.4th 169 (5th Cir. 2021) ...............................15

Petro-Hunt, L.L.C. v. United States, 365 F.3d 385 (5th Cir. 2004) .........................................15

Philips v. McNease, 467 S.W.3d 688 (Tex. App.—Houston [14th Dist.] 2015, no pet.)..........15

Citizens Ins. Co. of Am. V. Daccach, 217 S.W.3d 430 (Tex. 2007) ........................................15

Schlumberger Ltd. v. Rutherford, 472 S.W.3d 881 (Tex. App.—Houston [1st Dist.] 2015, no pet.)..........................................................................................15

Lehmann v. Har-Con Corp., 39 S.W.3d 191 (2001) ........................................................16

Federated Department Stores, Inc. v. Moitie, 452 U.S. 394 (1981).........................................16

Taylor v. Sturgell, 553 U.S. 880 (2008).........................................................................16

Draughon v. Johnson, 64 Tex. Sup. Ct. J. 1352 (2021) ..........................................................17

**Statutes**

735 ILCS 5/2-402.................................................................................................9

TEX. CIV. PRAC. & REM. CODE § 16.002 .....................................................................17

**Other Authorities**

Black's Law Dictionary 1271 (10th ed. 2014)................................................................16

**Rules**

Fed. R. Civ. P. 26(f) .........................................................................................8

Ill. Sup. Ct. R. 224............................................................................................9

N.D. Tex. Civ. R. 7.1 ....................................................................................12-13

Plaintiff Adam Ferrari ("Ferrari" or "Plaintiff") hereby responds in opposition to Defendant William Francis's ("Francis" or "Defendant") Motion to Stay, or Alternatively, Expedited Motion for Entry of Protective Order. (Doc. 36, "Defendant Mtn to Stay"). Plaintiff requests this Court deny Defendant's Motion in its entirety.

## INTRODUCTION

This case is part of the nationwide response to a flurry of attacks on Adam Ferrari and the business his father owns, Phoenix Capital Group Holdings, LLC ("Phoenix"). The attacks were communicated at different times, to different parties, in different states, for different purposes. Businesses controlled by Francis continue to compete with Phoenix and tortious acts related to the instant claims continued in other jurisdictions. The nationwide assault on several individuals and a separate business over a period of years by Francis and related businesses cannot be readily remedied in one jurisdiction absent agreement or a multiplicity of amendments in response to each attack that is discovered.

Unfortunately, the response to the attacks started with multiple counsel but it has since recently been coordinated by one firm coordinating several actions.

The instant action is limited to personal attacks on Adam Ferrari personally. This action is focused on personal dignitary harms caused by statements made against Ferrari personally. This claim would need to be filed in a court with general personal jurisdiction over Francis. It does not include any claims for harm to businesses or competition claim against the businesses controlled by Francis. It is current limited to the following: The instant action is limited to: "Mr. Francis' publication to FIBT in approximately 2021 or 2022, his February 28, 2022, publication to Dalmore, his October 10, 2022, publication to 4 GRLZ Investments, and his publication to FINRA in mid-2022 (FAC. ¶ 35)"

4

Meanwhile, Phoenix sued Francis' business, Incline Energy Partners, LP ("Incline") in North Dakota for claims premised on unfair competition in that state. (North Dakota Operative Complaint attached hereto as Exhibit 1). The gist of that claim is that Incline disparaged Phoenix to customers and lenders in North Dakota. Remarkably, Incline convinced North Dakota landowners to sell their land rights to Incline for less than Phoenix offered them by disparaging Phoenix. Once Incline got the landowners to sell to them short, Incline turned around and offered to sell the same land rights to Phoenix for a profit! The conduct in North Dakota is ugly and the real victims are the people of North Dakota who are tricked into getting less. That action has nothing to do with Ferrari personally and does not allege any defamation.

During the instant litigation Francis argued that he was not responsible for all of the attacks on Phoenix and its owner, Lion of Judah Capital, LLC.[1] Based on Incline's argument, that someone else was levying these attacks, Phoenix initiated a claim in Daniel Ferrari's home jurisdiction, Will County, Illinois against a John Doe to determine who was making the statements. (Second Amended Verified Complaint attached hereto as Exhibit 2). That action yielded tremendous evidence from individuals who received the attacks issued by Incline but did not reveal any other individuals or entities responsible for the attacks with possibly one exception. The entity responsible for setting up the two websites referenced on multiple attacks was identified as FindIt, Inc. ("FindIt"). (Defendant Mtn to Stay at ¶ 31).[2]

Finally, an action is pending on appeal in the Texas Supreme Court of an interlocutory order of a partial The Texas Citizens Participation Act ("TCPA") dismissal. That case was

---

[1] Lion of Judah Capital, LLC. is owned by Daniel Ferrari. Daniel Ferrari is a resident of Will County Illinois, and his competency is frequently attacked due to his paralysis. Discovery in this litigation will determine whether additional Counts should be alleged against the party making such attacks.

[2] Though Plaintiff does not currently possess evidence, Plaintiff has reason to believe that FindIt was contracted by Defendant to set up the two websites prior to the beginning of the Statute of Limitations period and was used to defame Plaintiff during the Statute of Limitations period. Discovery is needed to conclusively prove this.

premised on alleged defamatory statements and interference by Incline and Francis in Colorado. (*See* August 29, 2023 App. Ct. Order Attached hereto as Exhibit 3) ("More specifically, we must determine whether the Taylor email, the communication upon which Phoenix's lawsuit rests, constitutes a matter of public concern. *Id.* § 27.001(7)."). The appellate court concluded:

> "Phoenix's Manager and COO Lindsey Wilson alleges in her affidavit that 'Phoenix was close to closing the transaction with Ms. Krystal and Ms. Taylor, but after the email from Francis, Ms. Taylor had doubts about Phoenix and Incline ultimately purchased the mineral rights.' However, not only is this statement contradicted by the clear timeline of events, her allegation that Phoenix was 'close to closing the transaction' is unsupported by any evidence in the record. Phoenix offers no other evidence to support its assertion that the Taylor email caused damages. Phoenix failed to establish a prima facie case for the essential element of damages; therefore, we sustain Francis's and Incline's first, second, and third issues as they apply to the defamation, business disparagement, tortious interference with prospective contract, and civil conspiracy claims. *See In re Lipsky*, 460 S.W.3d at 592."

That action is pending appeal in the Texas Supreme Court of the interlocutory partial dismissal. In general, a trial court retains plenary power over its interlocutory orders until a final judgment is entered. *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993). "A trial court's plenary jurisdiction gives it not only the authority but the responsibility to review any pre-trial order upon proper motion*." In re Baylor Med. Ctr. At Garland*, 280 S.W.3d 227, 231 (Tex. 2008); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). As such, a trial court has the inherent authority to change, modify, or set aside an interlocutory order at any time before the expiration of its plenary power. *See In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 831 (Tex. 2005); *Fabio v. Ertel*, 226 S.W.3d 557, 562 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Lakota Res., Inc. v. Pathex Petroleum, Inc.*, 2008 Tex. App. LEXIS 6149, 2008 WL 3522253, at *2 (Tex. App.—Houston [1st Dist.] Aug. 14, 2008, no pet.) (mem. op.). Accordingly, especially considering the reams of evidence uncovered, the end result of the Texas State Court action is uncertain and a long way off.

6

## FACTUAL BACKGROUND

Plaintiff filed this case on February 28, 2023. Defendant has steadfastly sought to avoid discovery of the full extent of his malicious attacks against his rival ever since. The factual predicate behind this latest gambit make clear that Defendant is out of excuses to avoid participating in discovery in this litigation.

### A.  The State Court Litigation

The Parties are in agreement that litigation is pending in State Court though it is not brought by Plaintiff. The Parties are also in agreement that Defendant is involved in that Defendant. However, in Footnote 5 to Defendant's Motion to Stay, Defendant falsely claims Plaintiff is the "sole contributing shareholder of Phoenix." (Defendant Mtn to Stay at Footnote 2). In support of this false claim, Defendant cites the following portion of Phoenix's filing from the Securities and Exchange Commission[3]:

**SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT**

*Security Ownership of Certain Beneficial Owners (more than 10%)*

We are a wholly-owned subsidiary of our Sponsor. The table below sets forth, as of the issuance date of this report, certain information regarding the beneficial ownership of our Sponsor's outstanding membership units for (1) each person who is expected to be the beneficial owner of 10% or more of our Sponsor's outstanding membership units and (2) each of our Sponsor's named executive officers, if together such group would be expected to be the beneficial owners of 10% or more of our Sponsor's outstanding membership units. Each person named in the table has sole voting and investment power with respect to all of the membership units shown as beneficially owned by such person. The SEC has defined "beneficial ownership" of a security to mean the possession, directly or indirectly, of voting power and/or investment power over such security.

| Title of Class | Name and Address of Beneficial Owner | Amount and Nature of Beneficial Ownership Acquirable | Percent of Class |
|---|---|---|---|
| LLC Interests | Daniel Ferrari* | N/A | 28.79% |
| LLC Interests | Charlene Ferrari* | N/A | 28.79% |
| LLC Interests | All Executives and Managers | N/A | 28.98% |

* Daniel Ferrari and Charlene Ferrari each own 50% of the voting membership interests in and are the managers of Lion of Judah, LLC, which owns 57.58% of our Sponsor. Their address is 1983 Water Chase Drive, New Lenox, IL 60451. Adam Ferrari is the economic interest owner of Lion of Judah, LLC, but has no voting or managerial interest in Lion of Judah, LLC and, therefore, is not a beneficial interest holder of our Sponsor.

** 18575 Jamboree Road, Suite 830, Irvine, CA 92612.

---

[3]  https://www.sec.gov/Archives/edgar/data/1979999/000165495423007644/pcgh_1a.htm (Accessed December 1, 2023).

This filing makes clear that Ferrari is (1) not the beneficial interest holder in Lion of Judah, LLC, (2) has no voting interest in Lion of Judah, LLC, and (3) has no managerial interest in Lion of Judah, LLC. *Id.* "Daniel Ferrari and Charlene Ferrari each own 50% of the voting membership interests in and are the managers of Lion of Judah, LLC." *Id.*

Defendant's Motion to Stay also falsely claims that "[i]mmediately after the trial court ruled on the motion to dismiss, Phoenix served subpoenas on several third parties, including GoDaddy, Google, Joe Moylan, and Greeley Publishing. Before responses were due, however, discovery was again stayed by Incline's appeal of the partial denial of its motion to dismiss. At incline's request, Phoenix confirmed it had withdrawn its subpoenas." (Defendant Mtn to Stay at ¶ 7). Defendant's own citation clearly disprove its claim as it cites an email from Phoenix's Counsel in the State Court matter which says "Plaintiff is withdrawing the 12/5/22 Notices of Intent to Subpoena.  I will also send letters to GoDaddy, Google, Greeley Publishing, and Joe Moylan notifying them that the 12/5/22 Notice of Intent to Subpoena is withdrawn" (Doc. 37 at Ex. A-3). Defendant yet again seeks to improperly prevent Plaintiff from obtaining discovery necessary to prevail in this litigation.

**B.  The Lawsuit filed in Illinois was Filed as a Result of Representations Made by Defendants' Counsel to Locate Potential Defendants before Statute of Limitations Expired**

As explained above, the Illinois Respondent in Discovery case ("Illinois RID Action") was filed where standing existed due to the owner of Phoenix, Daniel Ferrari, residing in Will County, Illinois where some defamatory statements were published and where the damages were incurred. The case was initiated after the Fed. R. Civ. P. 26(f) conference in this matter wherein Defendant's

Counsel told Plaintiff's Counsel that Defendant was not responsible for all of the allegedly defamatory statements at issue.[4]

Illinois Supreme Court Rules provide a tool by which a person or entity may, with leave of court, compel limited discovery before filing a lawsuit in an effort to determine the identity of one who may be liable in damages. Ill. Sup. Ct. R. 224.[5] Specifically, by way of petition, a party may seek "discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery." Ill. Sup. Ct. R. 224(a)(1)(i). Phoenix availed itself of this right after Defendant's Counsel made representations that additional defendants potentially existed for which the Statute of Limitations was running on and did not identify said potential defendants. That case was dismissed when no other potential defendants could be located except for FindIt, which was unresponsive.[6] Dismissal of the Illinois RID Action had nothing to do with this matter.[7]

### C.  Plaintiff did not violate any Order of this Court

The Parties to this litigation are Adam Ferrari and William Francis. On June 15, 2023, this Court entered a Scheduling Order stating that "Discovery in this case is stayed until seven days after the Court rules on Defendant William Francis's Motion to Dismiss Amended Complaint." (Doc. 29). This Stay did not impact any of the Parties in the Illinois RID Action. Moreover, this

---

[4] Defendant made a similar insinuation to the Court in its April 27, 2023, Motion to Dismiss where it said "Francis does not admit sending any anonymous package or statement, but for purposes of this Motion only, assumes the truth of the assertion."  (Doc. 9 at Footnote 3).
[5] Defendant correctly points to the Illinois statute 735 ILCS 5/2-402 but fails to provide the context by which the limitations are imposed for this mechanism.
[6] It is possible that FindIt was uncooperative because of the death of one of the owners.
[7] Illinois RID Actions generally are not expected to last very long. "Unless extended for good cause, the order [allowing discovery] automatically expires 60 days after issuance." Ill. Sup. Ct. R. 224(b). With the approval of the Illinois Court, the Illinois RID Action was open for less than five months.

Stay, did not toll the Statute of Limitations for any defendants that Francis knows and has not yet identified.[8]

### D. The Case Pending in North Dakota is a Different Cause of Action

*Phoenix Capital Group Holdings, LLC v. Incline Energy Partners, LP.*, Case No. 23-CV-00209 (the "North Dakota Case"), is pending in the District Court of North Dakota. That case has a different plaintiff and a different defendant, and that case does not have a claim of defamation. That case alleges Tortious Interference with Contract (Count One), Tortious Interference with Business Expectancy (Count Two), Unfair Competition (Count Three), and Unjust Enrichment (Count Four) involving alleged communications from that defendant to a bank, First International Bank and Trust, which is in North Dakota. Discovery has not commenced in that case and the merits of that case will relate to the Counts alleged. None of those issues can be resolved in this action. To the extent there is overlapping discovery counsel will to everything in its power to avoid duplication of efforts.

### E. Defendant in the State Court case has delayed merits discovery and a determination on the merits from that case's inception.

As discussed at length by Defendant, a stay was obtained in State Court and discovery has never been opened. (Defendant Mtn to Stay ¶ 5). The Stay obtained in that matter and this one were just as intentional as the one now sought by Defendant. Precluding Plaintiff from obtaining discovery in this matter is Defendant's best chance at avoiding liability. If Defendant believed it could win on the merits in either this case or the one in State Court, it could seek to brief a Motion for Summary Judgment. The fact that Defendant has repeatedly chosen delay tactics is telling.

---

[8] It is telling that Defendant seeks another Stay having already obtained one for five months. (Doc. 29 at ¶ 1).

**F.  Plaintiff's Pending Discovery Requests are Reasonably Calculated to Lead to Discovery of Admissible Evidence in this Case**

The time frame covered by Plaintiff's discovery requests is January 1, 2016 to the present (the "Relevant Time Period"), unless otherwise indicated by a particular topic or request. The Relevant Time Period was selected in part out of the recognition of the fact that a document could be created prior to the Statute of Limitations Period but was disseminated within the Statute of Limitations.

For example, two of the websites used on the allegedly defamatory material are (1) lawsuitsoilandgas.com[9] and (2) adamferrarioilandgaslawsuits.com[10]. The drafting and creation of these websites is relevant to this matter. The entities and individuals involved in the drafting and creation of these websites likely have materials relevant to this matter. As such, Plaintiff needs to reach back prior to the Statute of Limitations to obtain records that relate to allegedly defamatory statements made within the Statute of Limitations period.

Online research into the ownership records of the two websites suggests the websites are owned by the same person or entity. The Illinois RID Action allowed that plaintiff to subpoena the webhost, GoDaddy, for information which ultimately led that plaintiff to FindIt being responsible for setting up both websites, maintaining both websites, and paying for the proxy services to cover their tracks to make it appear that the websites were set up anonymously. As of this filing, it is unknown what persons and entities designed the websites.

---

[9]  Publicly available records indicate that this website was set up on or before 2018. https://web.archive.org/web/20180307191618/http://lawsuitsoilandgas.com/ (Accessed December 1, 2023).
[10]  Publicly available records indicate that this website was set up on or before 2021. https://web.archive.org/web/20211203141452/https://adamferrarioilandgaslawsuits.com/ (Accessed December 1, 2023).

Defendant is not identified as an owner or officer of FindIt by either its incorporation documentation or its most recent SEC filing.[11] (FindIt's Nevada Secretary of State Incorporation Filing attached hereto as Exhibit 4). Defendant cannot establish it would be prejudiced by precluding Plaintiff from obtaining a subpoena response in this matter. (Plaintiff's Subpoena to FindIt is attached hereto as Exhibit 5). To the contrary, Plaintiff may have already suffered prejudice because one of the owners of FindIt has become deceased since the creation of the websites at issue.[12] Plaintiff needs these records to determine what persons and entities drafted the allegedly defamatory materials which were subsequently disseminated.

## ARGUMENT

### A. Defendant violated rule 7.1 and the Motion should be stricken. This is a discovery motion and there was ample room to compromise rather than troubling the court with a voluminous discovery motion.

This is a discovery motion. Sophisticated counsel should work together to narrow or completely eliminate issues before troubling the Court with discovery matters. This is made clear in the local rule 7.1(a) which requires "Before filing a motion, an attorney for the moving party must confer with an attorney for each party affected by the requested relief to determine whether the motion is opposed" and 7.1(b) "If a motion is opposed, the certificate must state that a conference was held, indicate the date of conference and the identities of the attorneys conferring, **and explain why agreement could not be reached**." N.D. Tex. Civ. R. 7.1 (Emphasis Added). Plaintiff did not comply with Rule 7.1(b). In this case, compliance with rule 7.1(b) would have demonstrated an agreement could have been reached to both secure time sensitive discovery and resolve the legal

---

[11] SEC filing available at
https://www.sec.gov/ix?doc=/Archives/edgar/data/1593184/000168316823008360/findit_10q-093023.htm
(Accessed December 1, 2023).
[12] This prejudice might have been minimal if movant sent FindIt a preservation letter. Plaintiff's Counsel has discussed this matter with FindIt's Counsel and FindIt's Counsel was unaware of this litigation leading to the inference that FindIt was not sent a preservation letter by movant's counsel.

questions. Instead, what was hidden from the Court by the non-compliance, is that Plaintiff wanted

to use this voluminous motion to score points rather than resolve an actual dispute.

    The failure to comply with Rule 7.1(b) is a serious problem here because there were many more

efficient ways to address the complex issues presented in this premature motion. In the email

exchange that preceded Defendant's motion Plaintiff's counsel explained:

> "Why not just answer the discovery and make those objections?
> A stay is complete overkill and makes more work briefing hypothetical discovery
> issues that have not been fully worked through in the normal process. The objections
> discussed are pretty ordinary, we disagree, but it's ordinary stuff, and would be
> sorted out in the ordinary course without the extreme relief contemplated with a
> motion to stay.

(November 20, 2023 Email from Plaintiff's Counsel to Defendant's Counsel attached hereto as

Exhibit 6 at 2). Counsel for Plaintiff invited resolving the legal question directly via the correct

form of motion, but Defendant's counsel insisted on this malformed voluminous motion instead.

*Id.* Plaintiff's counsel communicated:

> I'm sorry but that's not a viable basis to stay discovery altogether.
>
> **You could move for summary judgment on that issue or judgment on the
> pleadings if you feel strongly about the legal question. Simply asking for a stay
> of discovery because something else may or may not happen later doesn't work.**
>
> What's more, you should have moved to dismiss on the basis of a related action
> pending if that was your position. Finality is not required to make that argument if
> it were viable. **It appears you're trying to play heads I win, tails you lose, by not
> making the argument based on the related action in a motion to dismiss and
> only raising it after the motion failed**. Ferrari has an excellent waiver argument on
> this point.
>
> The Texas state court action, regardless of its preclusive effect, would not be a final
> judgment disposing of all claims for months or more likely years from now
> regardless of the timing appeal. The pending appeal is interlocutory and even a
> mandate on it would not have res judicata effect until all the claims are disposed of.
>
> **Hopefully, we can avoid needless motion practice on this or at least expedite
> addressing the legal question of the effect of the pendency of another action**

**involving these parties rather than just blindly putting the brakes on discovery based on what may or may not occur elsewhere**.

*Id. at 1* (Emphasis Added). Rather than comply with the local rule and advise the Court of the Parties' positions, Defendant speciously tries to paint Plaintiff as belligerent in hopes of scoring points rather than thoughtfully and economically addressing the merits of the parties' procedurally complex dispute.

The Court can deny the motion based on the violation of Rule 7.1 alone. *See Platinum Jack Entm't, LLC v. ESPN, Inc*., 2019 U.S. Dist. LEXIS 227295, *3-4. This discovery dispute is best resolved with a scalpel used in a thoughtful conference process and not a sledge-hammer.

Unfortunately, rather than working on a solution to the complex issues we are spending many hours briefing a long motion over largely hypothetical and complicated issues. Accordingly, this motion should be stricken and the parties directed to meet and confer regarding the specific discovery issues in dispute.

**B.  The Motion to Stay is Premature at Least**

As noted in the brief correspondence proceeding this Motion, the only time motions such as this are granted is when a motion seeking the dispositive relief obviating the need for discovery is pending. *See* Cases Cited by Francis (Doc. 36 at 12). This is a unique motion in that it seeks a stay based on something that could possibly occur at some future date in another court based on a motion that could maybe be filed some time years from now. Defendant cites no case seeking such "unique" relief without a pending dispositive motion and no case can be found from this district allowing a stay based on a hypothetical.

Certainly, "A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d

14

581, 583 (5th Cir. 1987).  However, in determining whether to exercise that discretion, courts consider "(1) the breadth of discovery sought; (2) the burden of responding to that discovery; and (3) **the strength of the dispositive motion filed by the party seeking a stay**." *Id.* (emphasis added) . A stay of discovery may be appropriate where the disposition of a motion to dismiss 'might preclude the need for the discovery altogether thus saving time and expense.'" *Von Drake v. NBC*, 2004 U.S. Dist. LEXIS 25090, 2004 WL 1144142, at *2 (N.D. Tex. 2004) (*quoting Landry v. Airline Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990)); *DFW Dance Floors LLC v. Suchil*, 2023 U.S. Dist. LEXIS 20133, *2-3. In this case, Defendant put the cart way before the horse and the Motion should be denied on this basis alone. Plaintiff cannot be expected to respond fully to the hypothetical issue discussed in a stay motion.

### C.  There is no Res Judicata Application to This Action.

Claim preclusion applies when "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *BVS Constr., Inc. v. Prosperity Bank*, 18 F.4th 169, 173 (5th Cir. 2021) (*quoting Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). Res judicata requires, among other things, a "prior final judgment."  *See Philips v. McNease*, 467 S.W.3d 688, 697 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (*citing Citizens Ins. Co. of Am. V. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)).    Black's Law Dictionary defines "interlocutory order" as "[a]n order that relates to some intermediate matter in the case; any order other than a final order." *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 890 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing Black's Law Dictionary 1271 (10th ed. 2014) (emphasis added). In this case there is no final order in the Texas State Court Action. Whenever it returns on remand that case will

15

radically change, and focus based on the new evidence obtained. Right now, it is stalled over resolution of an interlocutory order resolving claims based on statements not at issue here.

"When there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of all claims and all parties or unless it clearly and unequivocally states that it finally disposes of all parties and all issues." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (2001). "Language [stating] that the plaintiff take nothing by his claims in the case, or that the case is dismissed, shows finality if there are no other claims by other parties". *Id*. "But if the record reveals the existence of parties or claims not mentioned in the order, the order is not final." *Id*. at 206. An order like that has not been entered in the Texas State Court case and may never be entered. Res judicata is the principle that "[a] final judgment on the merits of an action" bars re-litigation "in [a] second action" of the same claim or of issues actually litigated and necessary to the judgment in the first action. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *see also Taylor v. Sturgell*, 553 U.S. 880, 892, (2008). The issues actually litigated in Texas State Court did not include the statements at issue in this case. The instant action is limited to: "Mr. Francis' publication to FIBT in approximately 2021 or 2022, his February 28, 2022, publication to Dalmore, his October 10, 2022, publication to 4 GRLZ Investments, and his publication to FINRA in mid-2022 (FAC. ¶ 35)" Those statements were not litigated in the other action. *See* Exhibit 3.

Finally, the instant action is limited to personal and dignitary harms not addressed elsewhere. This case is about harm caused to Adam Ferrari personally. A statement about Phoenix is not actionable by Ferrari nor is a statement about Ferrari actionable by Phoenix. Most importantly, the damages that can be suffered by an individual are far different than damages that can be suffered by a business from Francis's coast to coast attacks.

**D. The Protective Order Sought is Inappropriate based on Rule 26 of the Federal Rules of Civil Procedure**

As Defendant has already pointed out, there is a short Statute of Limitations period. (Defendant Mtn to Stay at 16); *see also* TEX. CIV. PRAC. & REM. CODE § 16.002. Defendant fails to acknowledge that in cases where "the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified, the discovery rule changes the first day that counts toward the limitations period, deferring accrual until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Draughon v. Johnson*, 64 Tex. Sup. Ct. J. 1352 (2021) (internal quotation omitted). Plaintiff has diligently sought to identify any additional unnamed Defendants even during the Stay imposed by this Court.

This motion is premature, and the issue presented can be resolved in the ordinary course of discovery without a protective order. There was no need to trouble the Court with this preemptive motion when instead Francis could have articulated objections in the ordinary course and this minor issue likely could have been resolved by agreement. The motion should be denied, and parties directed to meet and confer on the scope of discovery then only after working through any objections and a preliminary production the parties could seek resolution of the narrowed discovery dispute through the ordinary channels.

<u>**CONCLUSION**</u>

WHEREFORE, Plaintiff, ADAM FERRARI, respectfully requests the Motion to Stay or Alternatively, Expedited Motion for Entry of Protective Order be denied or stricken and such further relief the Court deems proper.

Dated:  December 4, 2023                Respectfully submitted,

                                        _/s/Ross M. Good_____
                                        One of Plaintiff's Attorneys

Ross Good, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark Suite 1600
Chicago, Illinois 60601
p: (786) 539-3952
ross@loftusandesienberg.com

## CERTIFICATE OF SERVICE

    Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

                                        */s/ Ross M. Good*          
                                        Ross M. Good

18