IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADAM FERRARI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 3:23-cv-455-S |
| | § | |
| WILLIAM FRANCIS, | § | |
| | § | |
| Defendant. | § | |

**WILLIAM FRANCIS'S REPLY IN SUPPORT OF
MOTION TO STAY, OR ALTERNATIVELY, EXPEDITED
<u>MOTION FOR ENTRY OF PROTECTIVE ORDER</u>**

Cortney C. Thomas
 Texas Bar No. 24075153
 cort@brownfoxlaw.com
Charlene C. Koonce
 Texas Bar No. 11672850
 charlene@brownfoxlaw.com
 BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Defendant William Francis*

Francis files this Reply in support of his Motion to Stay or alternative Motion for Protective Order (the "Motion"), Dkt. 36, and in support respectfully shows the Court as follows.

## SUMMARY

While contending he did not violate this Court's discovery stay, Ferrari admits doing exactly that through an Illinois discovery-only lawsuit in which his employer, Phoenix Capital Group Holdings, LLC, ("Phoenix") sought discovery for Ferrari's use in this lawsuit (despite an appellate stay applicable to Phoenix). To avoid unnecessary and expensive discovery, and the resulting waste of judicial resources from continued litigation, the Court should stay this case. In the alternative, the Court should stay or limit discovery.

## REPLY REGARDING INTRODUCTION AND FACTUAL SUMMARY[1]

**A.   Phoenix Refused to Permit Discovery in the State Case**.

Francis and Incline requested agreement for discovery to commence early in the State Case, which was necessary because of the Discovery Control Plan requested by Phoenix. Phoenix opposed that request.[2] Rather than wasting money and judicial resources on discovery, Francis and Incline then sought dismissal in the State Case based on the TCPA.[3] They have consistently sought the same outcome in the *three* lawsuits filed by Ferrari and Phoenix.

**B.   All Three Lawsuits Rest on the Same Dispute**.

This lawsuit is *not* limited to "personal attacks on Adam Ferrari personally."[4] It rests on some of the same statements at issue in the State Case, including statements that allege harm only to Phoenix.[5] Indeed, in this lawsuit Ferrari provides no facts regarding any relationship he had,

---

[1] Response to Ferrari's contention that his pending discovery requests are reasonably calculated to lead to discoverable evidence, Response, p. 11, is addressed below in the "Argument" section.
[2] Dkt. 37, Koonce Dec., ¶¶ 4–5, App. p.3.
[3] The Texas Citizen's Participation Act, TEX. CIV. PRAC. & REM. CODE § 27.003.
[4] Response, p. 4.
[5] Dkt. 7, ¶¶ 26, 37; and *compare* allegations by Phoenix in the North Dakota case, that the exact same communication to FIBT caused Phoenix damages when FIBT exercised its discretion to terminate a lending relationship with Phoenix.

– 1 –

personally, with FIBT or with Dalmore, both of whom were purportedly contracted to *Phoenix*.[6]

Further, Phoenix's and Ferrari's pleadings blatantly contradict Ferrari's contention that the North Dakota lawsuit has "nothing to do with Ferrari personally."[7] The North Dakota Complaint reveals that it depends on the *exact same* FIBT communication alleged in paragraphs 25 and 36 of the Amended Complaint here, and along with similar alleged communications to mineral owners in North Dakota: that Adam Ferrari is a felon, who controls Phoenix.[8] An examination of the Original Petition in the State Case reveals the same factual allegations underpinning the two federal cases.[9] Phoenix and Ferrari's decisions regarding which claims to assert against Incline and/or Francis based on the same facts and who would serve as plaintiff have no bearing on the *res judicata* bar discussed below.

C. **Phoenix Knew Francis And Incline Denied Making Anonymous Statements In 2022 But Filed The Illinois Discovery Case While Discovery Was Stayed.**

Ferrari's assertion that the Illinois Discovery Case was filed based on statements made during the May 16, 2023 Rule 26(f) conference in this case: (a) lacks any supporting evidence; (b) demonstrates that Ferrari and Phoenix coordinated prosecution of this lawsuit;[10] and (c) reveals

---

*See* Complaint, Phoenix Capital Group Holdings, LLC v. Incline Energy Partners, LP., Cause No. 23-CV-00209 (the "North Dakota Case"), attached to Defendants' Response, Dkt. 39-1, ¶¶ 26–28, 35–55. *See also*, Motion, ¶¶ 2–3, 14–17, 27–28; and summary comparing allegations from all three cases, Supp. App., pp. 225-231. (Pages 175–77 in the original Appendix were inadvertently included as the chart which summarizes and compares allegations from all three lawsuits. The correct chart is now included in the Supplemental Appendix at pp. 225-231).

[6] Dkt. 7, ¶ 25 (alleging statements purportedly damaging Ferrari's relationship with Phoenix's investors).
[7] Response, p. 5.
[8] Motion, ¶ 10; Supp. App., pp. 225-231; *see also*, North Dakota Complaint, Dkt. 39-1, ¶¶ 20, 22, 24, 26–55.
[9] Supp. App. pp. 225-231.
[10] Indeed, much of what was requested by Phoenix in the Illinois Discovery Case related *solely* to Ferrari. *See* Subpoena issued to Domains by Proxy LLC, included in the Supplemental Appendix at pp. 178-180, which requested "Any and all documents referring or relating to web registration of adamferrarioilandgaslawsuits.com . . ., Any and all documents referring or relating to the payment received for web registration of adamferrarioilandgaslawsuits.com . . .; Any and all documents indicating who is the owner of adamferrarioilandgaslawsuits.com . . .; Any and all documents indicating what person or entity registered the domain adamferrarioilandgaslawsuits.com." The Subpoena issued to GoDaddy.com LLC, included in the Supplemental Appendix at pp. 181-183, is similar. The Court may judicially notice these documents, which were not available to Francis when he filed the Motion. For the Court's convenience, copies are also included in the Supplemental Appendix.

that Ferrari used Phoenix to obtain discovery while stayed from doing so in this case.[11]

Moreover, the timeline proffered by Ferrari does not support his argument. In the second hearing on Incline's and Francis's TCPA Motion to Dismiss, on October 28, 2022, in conformity with their general denial, Incline and Francis denied making anonymous statements.[12] Phoenix, however, was losing in the State Case where discovery was stayed, so Ferrari filed this one. *Five days* after this Court stayed discovery, but more than a month after the parties' Rule 26(f) conference and six months after the TCPA hearing, Phoenix filed the Illinois Discovery Case. And Phoenix dismissed the Illinois Discovery Case on November 14, 2023—six days after the discovery stay lifted in this case, but with a month left on the clock for that case—and immediately served the Findit Subpoena from this case.

Nor does Ferrari's explanation for having filed *anything* in Illinois make sense apart from the location of its counsel and the discovery procedure available there. Phoenix has no office or presence in Illinois, and the location of Daniel Ferrari, as member of Lion of Judah, LLC, the entity that has direct ownership and control over Phoenix,[13] has no bearing on where Phoenix purportedly suffered injury, where any statements were published, or indeed, *anything*.

**D.     Francis Made No False Claims in the Motion.**

Ferrari denies his indirect ownership and control over Phoenix, which (since his felony status is beyond dispute) is the crux of all three cases. While Ferrari contends the fine print of Phoenix's admission that Ferrari is the sole contributing "economic interest owner of Lion of Judah, LLC" is negated by the contention that he has no voting or managerial interest in that entity, the later contention hardly nullifies his indirect ownership, and therefore control.

---

[11] Response, p. 5. (stating that the Illinois Discovery Case "yielded tremendous evidence").
[12] *See* Volume 3, Reporter's Record, p. 30 from the State Case appeal. The Court may judicially notice these records, which, for the Court's convenience, are included in the Supplemental Appendix at pp. 184-190.
[13] Lion of Judah, LLC is a Delaware entity.

Similarly, although the basis for the contention is not clear, Ferrari also asserts that Francis made false claims in the Motion about the notices of subpoenas Phoenix served in the State Case, and then agreed to withdraw.[14] Ferrari fails to identify what he contends was incorrect, and Francis stands by the facts regarding those subpoenas as stated in the Motion.

## ARGUMENT

The Court has discretion to stay this case and should do so based on the likelihood that *res judicata* will bar the claim and the resulting waste of judicial (and Defendant's) resources. Alternatively, the Court should enter a protective order staying or limiting discovery.

**A.    Ferrari Opposed (and Still Opposes) the Motion.**

In opposing the Motion, Ferrari's leading argument is that Francis violated Local Rule 7.1 regarding a conference. The argument, like the opposition, should be rejected. In conferring about the Motion, Francis's counsel stated:

> Ross and Alex – tomorrow, we will be filing a motion to stay the Texas Federal Case, or in the alternative, motion for protective order seeking to limit the scope of the Findit subpoena, as well as the written discovery served by Ferrari. We think the relevant time period should be limited to within one year of when the lawsuit was filed, and further, that requests for communications or information about statements made by Mr. Francis about anyone other than Ferrari are not relevant.
>
> Please let us know if you agree to the proposed stay or the alternative proposed protective order.[15]

Ferrari responded, "Counsel, Plaintiff does not agree to a Stay. Plaintiff does not agree to a Protective Order regarding the scope of discovery."[16]

Rather than attempting to negotiate resolution, in a subsequent email Ferrari's counsel complained that a stay was "overkill" "that makes more work," and then *explained* why a "stay

---

[14] Response p. 8; *see also* Motion ¶ 7.
[15] Response, Dkt. 39-6.
[16] Response, Dkt. 39-6, p. 3 of 4.

doesn't work" and why Francis should instead seek summary judgment.[17]  Rejecting instructions from an opposing party about how to proceed with a defense, particularly where the instructions fail to account for the concerns at hand (expense, forum shopping, and disregard for a prior stay) does not negate the sufficiency of a prior conference.[18]

Nor were Ferrari's instructions compelling.  Francis pleaded *res judicata* as an affirmative defense when he filed his answer but did not raise it in his Rule 12(b)(6) motions to dismiss (and was not required to do so), because the Dallas Court of Appeals had not ruled in the appeal when those motions were filed.  Until the Court of Appeals dismissed all but one of Phoenix's claims, it was not clear whether *res judicata* would provide the comprehensive defense that exists now.  Thus, Francis and Incline were not playing "heads I win, tails you lose,"[19] they were waiting to see whether and to what extent *res judicata existed* as an affirmative defense.

### B.     A Stay Is Not Premature.

Ferrari argues that a stay premised on *res judicata* would be premature, given the interlocutory nature of the appellate decision, and perhaps wishful thinking that the State trial court can or will "change, modify or set aside" her interlocutory order.[20]  Francis did not contend the judgment was final—he disclosed Phoenix's request for a *sixty day* extension to file its petition for review in the Texas Supreme Court, and the one remaining claim the appellate court remanded *with instructions to consider dismissing based on an affirmative defense.*[21]  Although the judgment

---

[17] Response, pp. 13–14.  Francis responded by explaining that he was requesting a stay of the entire case; not just discovery.  Dkt. 39-6, p. 2 of 4.

[18] Ferrari's citation to *Platinum Jack Entm't, LLC*, provides no support for his argument that Francis failed to comply with LR 7.1, since in that case the movant "did not attach a certificate of conference or otherwise indicate Defendants' position on the request." *Platinum Jack Entm't, LLC v. ESPN, Inc.*, No. 3:18-CV-0880-S, 2019 WL 7902964, at *2 (N.D. Tex. Aug. 7, 2019).

[19] Response, p. 13.

[20] Response, pp. 5–6.

[21] Motion, ¶¶ 8–9, 29.  When the mandate issues, the trial court will be limited to considering only the issue that is remanded.  It will not have discretion to revise orders already considered by the appellate court. *Phillips v. Bramlett*, 407 S.W.3d 229, 234 (Tex. 2013) ("[T]rial court has no authority to take any action that is inconsistent with or beyond the scope of that which is necessary to give full effect to the appellate court's judgment and mandate."); *Hudson v.*

is thus interlocutory until the Texas Supreme Court rules on Phoenix's as-yet-unfiled petition for review and the trial court rules on Incline and Francis's defense to the remaining claim, neither Phoenix nor Ferrari provide even a hint as to why the Texas Supreme Court might reverse the well-reasoned and lengthy decision issued by the Dallas Court of Appeals (which also rejected Phoenix's motion for rehearing).[22]

Other than the unpersuasive prematurity argument, Ferrari provides no justification for denying a stay to prevent a race to *res judicata* where Phoenix and Ferrari: (1) filed the State Case months before this one; (2) used this case to avoid the discovery stay in the State Case;[23] (3) surreptitiously disobeyed this Court's discovery stay; (4) where all but one claim asserted in the State Case has been dismissed, with instruction to dismiss the final claim on remand; and (5) when, as discussed below, a final judgment in the State Case will foreclose the claims asserted here.

Nor does Ferrari's glancing attention to the authorities that support a stay justify denying the Motion. Ferrari provides no authority for restricting this Court's broad discretion to stay discovery pursuant to Rule 26, or to stay the case entirely, to instances where a dispositive motion is pending. On the contrary, a "district court has 'broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case [regardless of where those issues are pending] are determined.'" *Puradigm, LLC v. DBG Group Investments, LLC*, No. 3:23-CV-216-B, 2023 WL 6883656, at *4 (N.D. Tex. Oct. 18, 2023) (quoting *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987)).

---

*Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986) ("When this court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue.").

[22] According to Google, the Texas Supreme Court sets only 80-90 out of 1,000 petitions for review for argument. Of those, even fewer are reversed following argument.

[23] In a puzzling argument, Ferrari appears to contend that the Court should not stay discovery pursuant to Rule 26 because the short statute of limitations is running, while also relying on the discovery rule. Response, p. 17. Without conceding that the discovery rule applies to the claim at issue, if it does apply, Ferrari should have no statute of limitations concerns. Further, such concerns do not mitigate intentional disregard for this Court's discovery stay, the discovery stay in the State Case, or the forum shopping at work here.

A very similar circumstance was present in *Escamilla v. M2 Tech., Inc.*, No. 4:12CV634, 2015 WL 5837430, at *1 (E.D. Tex. Sept. 30, 2015), *aff'd*, 657 F. App'x 318 (5th Cir. 2016).  In that case, the Court stayed the case, "pending the final disposition of and exhaustion of all appellate remedies in a related case. . . not[ing] the potential of *res judicata* and collateral estoppel as well as the possibility of inconsistent rulings in the two cases."  *Id.*  After the mandate issued from the Fifth Circuit in the related case, two years later, the Court lifted the stay and "directed Defendant to file its motion for summary judgment on the issue of *res judicata.*"  *Id.*  The Court also restricted discovery to matters relevant only to *res judicata.  Id.*  Because, as discussed below, a final judgment in the State Case will foreclose any recovery here, this Court should apply the same pragmatic approach.

**C.**    **A Final Judgment in the State Case Will Be *Res judicata* Regarding Ferrari's Claims.**

In attacking *res judicata* premised on a final judgment in the State Case, Ferrari argues (1) the judgment is interlocutory; and (2) the claims asserted here are different than those asserted in the State Case.[24]  The first point will be resolved in due course, and the second is incorrect.

As argued in support of the Motion to Dismiss based on *Colorado River* abstention filed in the North Dakota case,[25] "[r]es judicata bars the relitigation of claims that have been finally adjudicated *or that could have been litigated in the prior action.*"  *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017) (internal quotation omitted) (emphasis added).[26]  The doctrine focuses on what could have been litigated, rather than just the actual claims asserted.  *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

---

[24] Response, p. 16.

[25] The Court may judicially notice the briefing in the North Dakota case.  For the Court's convenience, a copy of the Brief in support of the Motion to Dismiss, or Alternatively, Motion to Transfer Venue filed in the North Dakota case, which had not been filed as of the date the Motion was filed, is included in the Supplemental Appendix at pp. 191-224.

[26] As the substantive law that governs issuance of the judgment in the State Case, Texas law will govern the preclusive effect of the same judgment.  *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020).

Under Texas law, Incline will be entitled to a *res judicata* bar when it demonstrates (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action grounded on the same claims as those raised or that could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996).  Each element will be easily satisfied by a Judgment from the Texas State Case.

A final judgment premised on the TCPA motion to dismiss will satisfy the first element. *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 500 S.W.3d 26, 40 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("A dismissal with prejudice under the TCPA constitutes a final determination on the merits for *res judicata* purposes.").  With respect to the final factor,[27] Texas follows the transactional approach, which requires examining the factual basis, rather than the legal theories, presented.  *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007).  Regardless of the specific audience for the alleged statements that underlie the claims, the damages sought, or the claim asserted, this case is "grounded on" the same facts at issue in the State Case.[28]  A final judgment in the State Case will bar further proceedings here.

### D.      In the Alternative, the Court Should Grant the Protective Order.

If the Court decline to stay the case, or even to stay discovery, it should grant Francis's motion for a protective order that (a) narrows the scope of discovery; and (b) limits use of any discovery obtained in this case, to this case, so long as the appellate or TCPA stay[29] precludes

---

[27] Ferrari does not contest the second element.  Whether premised on his beneficial ownership of Phoenix, ("the sole capital contributing shareholder of Phoenix" as disclosed in Phoenix's offering circular), the fact that Phoenix coordinated with Ferrari about this lawsuit and sought discovery for the benefit of Ferrari, or because he is now an officer of Phoenix, Ferrari is in privity with Phoenix for *res judicata* purposes.  *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007) (recognizing that *res judicata* bars claims that were or could have been litigated by persons in privity with a party, which includes persons whose interests could have been represented by the party); *Russell v. SunAmerica Sec., Inc.*, 962 F.2d 1169, 1175 (5th Cir. 1992) (privity for *res judicata* purposes exists if employer-employee or principal-agent relationship exists).  Ferrari does not attempt to demonstrate otherwise.

[28] *See* Motion, ¶¶ 2–3, 15–17, 27–28, comparing allegations, as well as Supp. Appendix, pp. 225-231.

[29] *See* TCPA, § 27.003(c).

discovery in the State Case.

### 1.     The Discovery Requests Are Overly Broad in Subject Matter and Time.

Except for contending a seven-year window for a claim with a one-year limitations period is reasonable,[30] Ferrari wholly ignores Francis's requested protective order regarding the scope of the discovery requests served on Francis, which seek information about "any and all" documents "relating to (1) Adam Ferrari, (2) Phoenix Capital Group, (3) Ferrari Energy, (4) Wolfhawk Energy, (5) Daniel Ferrari, and/or (6) Charlene Ferrari."[31]  Facially, the requests represent a fishing expedition for non-parties.  Ferrari offers no justification for this breadth.

Likewise, although as attested in his answer, Francis has nothing to do with the creation or content of the websites that are the subject of the Findit Subpoena,[32] Ferrari contends the owner and creator of the websites "likely have materials relevant to this matter,"[33] but fails to explain how that could be true, given that Ferrari's claim relates only to Francis's alleged publication to (a) *FIBT* (in 2021 or 2022); (b) *Dalmore* (on February 28, 2022); (c) *4 GRLZ Investments* (on October 10, 2022); and (d) *FINRA* (in "mid-2022").[34]  Indeed, Ferrari admits he "needs [the records sought from FindIt] to determine what persons and entities drafted the allegedly defamatory materials which were subsequently disseminated,"[35] an admission that also concedes the absence of relevance given that (a) Ferrari disclaims reliance on materials disseminated on the websites, (b) the statute of limitations would bar any claim premised on the statements published on those websites, and, (c) Ferrari sought discovery directly from the entities that purportedly received the

---

[30] Response, p. 11.
[31] Koonce Dec., Exhibit A-10.
[32] Dkt 34, ¶ 11.  Ferrari also concedes that Francis is not identified in any records as having any connection with Findit. Response, p. 12.
[33] Response, p. 11.
[34] Response, p. 4; Dkt. 7 ¶ 35; *see also* Dkt. 16, pp. 14-16.
[35] Response, p. 12.

– 9 –

communications on which his claim relies.[36]

Ferrari also fails to justify the seven-year reach he contends is relevant, arguing only that he "needs to reach back prior to the Statute of Limitations to obtain records that relate to allegedly defamatory statements made within the Statute of Limitations period."[37] That makes no sense in the context of defamation, and Ferrari does not demonstrate how records related to statements made outside of the limitations period have a tendency to prove or disprove, or lead to admissible evidence regarding the four limited statements on which he chose to rest his singular defamation claim. *See Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009) ("The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves."); *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017) (Committee Comments to Rule 26 "'signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.'") (quoting *Whitney v. Krystal Co.*, No. 10-773, 2012 WL 777161, at *1 (M.D. Ala. Mar. 7, 2012)).

### 2. Discovery Should Not Be Available For Use for Other Lawsuits.

Ferrari also fails to address Francis's request that the Court limit discovery obtained in this case, to use in this case. Given the appellate stay in the State Case, and the demonstrated willingness to violate that stay as well as the prior stay in this case, the request is reasonable and justified.

Francis requests that the Court grant the Motion and stay the case, or, alternatively, limit discovery.

---

[36] Dkt. 7 ¶¶ 11, 17.
[37] Response, p. 11.

          Respectfully submitted,

          By: */s/ Charlene C. Koonce*
            Cortney C. Thomas
             Texas Bar No. 24075153
             cort@brownfoxlaw.com
            Charlene C. Koonce
             Texas Bar No. 11672850
             charlene@brownfoxlaw.com
            Andrew C. Debter
             Texas Bar No. 24133954
             andrew@brownfoxlaw.com
            BROWN FOX PLLC
            8111 Preston Road, Suite 300
            Dallas, TX  75225
            Tel. 214.327.5000
            Fax. 214.327.5001

          *Attorneys for Defendant William Francis*

## **CERTIFICATE OF SERVICE**

     Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system.

          */s/ Charlene C. Koonce*
          Charlene C. Koonce