# Joint Report

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ADAM FERRARI,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:23-CV-455-S** |
| | § | |
| **WILLIAM FRANCIS,** | § | |
| | § | |
| **Defendant.** | § | |

**JOINT REPORT REGARDING DEFENDANT AND NONPARTY
INCLINE ENERGY PARTNERS LP'S MOTION FOR PROTECTIVE
ORDER AND TO QUASH PLAINTIFF'S SUBPOENAS ON PETRUS CAPITAL
MANAGEMENT, LLC AND SILVER CREEK EXPLORATION, LLC**

The parties, Plaintiff Adam Ferrari ("Plaintiff" or "Ferrari") and Defendant William Francis ("Defendant" or "Francis"), and nonparty Incline Energy Partners, LP, jointly file this report regarding Defendant and Incline's Motion for Protective Order and to Quash Plaintiff's Subpoenas on Petrus Capital Management, LLC and Silver Creek Exploration, LLC, (the "Motion") and in support respectfully show the Court as follows:

    (a)    The names of the attorneys or unrepresented parties who participated in the pre-motion conference;

               Paulette Miniter participated on behalf of Defendant.

               Garrett Long and Josh Ji participated on behalf of Plaintiff.

    (b)    The date the conference was held and the amount of time during which the parties conferred;

               The conference was conducted on June 7, 2024, during which the parties conferred for a total amount of approximately thirty minutes.

    (c)    The matters that were resolved by agreement;

               No agreement was reached regarding the Motion during the parties' call.

(d)     The specific matters that need to be heard and determined by the Court; and

The Court should determine whether to grant (1) Defendant's request for a protective order, and (2) Defendant and Incline's request to quash the subpoenas that Plaintiff served on nonparties Petrus Capital Management, LLC and Silver Creek Exploration, LLC.

(e)     A detailed explanation of why agreement could not be reached as to those matters, including all arguments and authorities on which each party relies as to each matter that could not be resolved by agreement.

During the call, counsel for Defendant advised that the subpoenas served on Petrus Capital Management, LLC and Silver Creek Exploration, LLC seek irrelevant information, given that none of Plaintiff's claims are based on or even mention those nonparties. Further, counsel for Defendant advised that in addition to seeking irrelevant information, the subpoenas' requests are facially overbroad, lacking proportionality and seek highly confidential information pertaining to a business deal between Incline and Silver Creek. The arguments and authorities on which Defendant and Incline rely for the Motion are set out for fully below.

During the call, counsel for Plaintiff stated that it is common practice to subpoena entities that are not necessarily named in the complaint—particularly where, as is the case here: (1) Plaintiff has discovered documents that show Petrus Capital Management, LLC ("Perot") is in possession of relevant documents—*e.g.*, emails from Perot's Head of Investments concerning Defendant's defamatory statements about Plaintiff; and (2) Plaintiff understands that Silver Creek Exploration, LLC ("SCE") would also be in possession of relevant documents given Defendant's / Incline's recent sale of certain interests that implicate Plaintiff / Phoenix to SCE. Counsel for Plaintiff made clear, however, that any confidentiality concerns that Defendant or Incline may have could likely be resolved through meet and confer discussions, rather than motion practice.

## I.     <u>DEFENDANT'S BACKGROUND AND SUMMARY</u>

1.     Plaintiff filed this lawsuit against Defendant, alleging that they are competitors in the oil-and-gas interest business and that Defendant defamed him. To date, Plaintiff has served more than thirty third-party subpoenas, the majority of which, like the two discussed below, represent an improper fishing expedition. Plaintiff has now served subpoenas on Petrus Capital Management, LLC and Silver Creek Exploration, LLC—nonparties that have nothing to do with any of Plaintiff's claims. None of Plaintiff's allegations in his First Amended Complaint ("Complaint") relate to Petrus or Silver Creek. Nor has Plaintiff identified Petrus or Silver Creek

as likely to have discoverable information in his Rule 26 disclosures.

2.    Although Defendant did not object to the other twenty-nine, overly broad third-party subpoenas Plaintiff has served in this case, the subpoenas on Petrus and Silver Creek—business contacts of Defendant and his company, nonparty Incline Energy Partners, LP—subject Defendant to "annoyance, embarrassment, [and] oppression" and seek highly confidential business information regarding a deal between Incline and Silver Creek. Indeed, not only do the subpoenas seek irrelevant and highly confidential information, but they are also facially overbroad and duplicative of Plaintiff's document requests on Defendant and Incline.  To protect Defendant from "annoyance, embarrassment, [and] oppression," Fed. R. Civ. P. 26(c), and to prevent the unnecessary disclosure of sensitive commercial information, Defendant and Incline respectfully request that the Court issue a protective order and quash the subpoenas.

A.    **Legal Standard**

A party may seek a protective order in challenging a subpoena as lacking in relevance or proportionality. *See Quilling v. Erwin & Johnson, LLP*, No. 3:07-CV-1153-P, 2009 WL 10704320, at *3–4 (N.D. Tex. Dec. 15, 2009); Fed. R. Civ. P. 26(c)(1). Courts "must look at the request in conjunction with the parties' pleadings," and "even the broadest construction of Rule 26 does not permit a party to speculate that a discovery request might lead to relevant evidence relating to a claim that has not even been asserted yet." *Quilling*, 2009 WL 10704320, at *3–4.  Courts have also found subpoenas improper where they ask nonparties for "all documents" concerning the parties or for materials that are available from parties.  *See Turnbow v. Life Partners, Inc.*, No. 3:11-CV-1030-M, 2013 WL 1632795, at *1–2 (N.D. Tex. Apr. 16, 2013); *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2014 WL 772859, at *4 (N.D. Tex. Feb. 27, 2014) (Horan, J.).

Additionally, parties and nonparties may move to quash a subpoena seeking confidential commercial information.  Fed. R. Civ. P. 45(d)(3)(B)(i) (courts may quash "[t]o protect a person

–3–

. . . *affected by* a subpoena" (emphasis added)); *see also Chaput v. Griffin*, No. 3:14-MC-131-G-BN, 2014 WL 7150247, at \*2 (N.D. Tex. Dec. 16, 2014) (Horan, J.) (standing to quash is based on "a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it"); *Solow v. Conseco, Inc.*, No. 06 CIV. 5988 BSJTHK, 2008 WL 190340, at \*1, \*3 (S.D.N.Y. Jan. 18, 2008) (recognizing standing of nonparties to object to subpoena on another nonparty).

In deciding such motions, courts weigh the relevance or probative value of the information sought against the interests asserted. *See Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016); *MetroPCS v. Thomas*, 327 F.R.D. 600, 610–11 (N.D. Tex. 2018) (Horan, J.) (scope of discovery is the same under Rules 26 and 45).

**B.    Argument**

**1.    Defendant and Incline have standing to pursue these motions.**

Defendant, as a party to this litigation, has standing to move this Court for a protective order to limit the scope of discovery. *See Quilling*, 2009 WL 10704320, at \*3–4; Fed. R. Civ. P. 26(c)(1). Additionally, Defendant and Incline have standing to move to quash in this Court because the subpoenas seek communications between Defendant and Incline (whom Plaintiff contends are his competitors, Compl. ¶ 8) and their non-party business contacts.[1] The information sought would include confidential commercial information. Defendant and Incline, therefore, have "a sufficient interest in [the subpoenas]." *Orchestrate*, 2014 WL 772859, at \*3 (finding sufficient interest on similar facts); *see also Ferris Mfg. Corp. v. Thai Care Co.*, No. 4:17-CV-01024-O, 2019 WL 8223600, at \*2 (N.D. Tex. Jan. 25, 2019) (sufficient interest because defendants authored requested documents); *MC Trilogy Texas, LLC v. City of Heath, Texas,* No. 3:22-CV-2154-D, 2023 WL 7004442, at \*2 (N.D. Tex. Oct. 24, 2023) (sufficient interest because

---

[1] This court is the district where compliance with the subpoenas is required. *See* Fed. R. Civ. P. 45(d)(3)(B)(i); APP0001-0004, 0019, 0027 (subpoenas requiring compliance in Addison, Texas).

subpoenas sought party's proprietary business information and "communications pertaining to [party's] business relationship[s]").

    **2.**    **The subpoenas seek irrelevant information.**

Plaintiff's subpoenas on Petrus and Silver Creek seek irrelevant information. None of Plaintiff's allegations relate to these nonparties, who are simply business contacts of Defendant and Incline. Indeed, Plaintiff tellingly has not identified Petrus or Silver Creek as likely to have discoverable information in his Rule 26 disclosures. Yet Plaintiff asks these nonparties to search for, review and produce more than eight years' worth of documents relating to Plaintiff or his companies (Ferrari Energy and Phoenix Capital Group Holdings, LLC ("Phoenix")).[2] Moreover, Phoenix is only relevant to Plaintiff's claims based on the allegation that Defendant defamed Plaintiff by saying that Plaintiff was the CEO of Phoenix. *See* Compl. ¶¶ 34–42. Thus, *all* such communications regarding Phoenix are irrelevant for this reason as well.

    (a)    <u>Petrus Subpoena</u>

Plaintiff seeks all communications that Perot Investments had with Defendant or Incline regarding Plaintiff or his companies, or with "any" third parties regarding Plaintiff's "character, alleged criminal record or activities, or role at Phoenix," plus all related documents. Plaintiff also seeks all communications and documents regarding an alleged statement about the parties by an employee of Perot Investments to an employee at another nonparty. *See* APP0024-0025 (Requests 1–5). Yet Plaintiff *never* mentions Petrus or *any* of these nonparties in his Complaint or Rule 26 disclosures. *See generally* ECF 7; APP0048-0055 (Pls. R. 26 Disclosures).

Whether Plaintiff's purpose is to fish for other claims, or the "annoyance, embarrassment, [and] oppression" of Defendant and Incline, the subpoena is improper. *See* Fᴇᴅ. R. Cɪᴠ. P.

---

[2] *See* ECF 7, Compl. ¶ 6 (describing Ferrari Energy as company Plaintiff founded and Phoenix as company for which Plaintiff is "an independent contractor").

26(c)(1); *MetroPCS*, 327 F.R.D. at 609, 627 ("[A] party may no more use third-party discovery to develop new claims or defenses that are not already identified in the pleadings than it may use discovery served on a party to find the claims themselves rather than to find support for properly pleaded claims.") (quashing subpoena because there was no basis to find that nonparty had relevant information and noting that nonparty was not identified in Rule 26 disclosures).

Indeed, courts consistently rebuff such fishing-expedition attempts.  *See Quilling*, 2009 WL 10704320, at *3 (affirming issuance of protective order and quashing of Plaintiff's subpoena that sought information relating to a portfolio because Plaintiff had not based any claim on that portfolio); *Hirsch v. USHealth Advisors, LLC*, No. 4:18-CV-245-P, 2020 WL 1271588, at *3 (N.D. Tex. Feb. 14, 2020) (partially granting motion for protective order because none of plaintiff's allegations related to nonparties); *Chaput*, 2014 WL 7150247, at *4 (subpoena was facially overbroad in seeking documents unrelated to incident at issue).

For the same reasons, Plaintiff's remaining requests to Petrus are impermissible.  These requests seek all documents and communications relating to certain websites, email addresses and an unnamed person, as well as information about Petrus's document retention policies.  *See* APP0025 (Requests 6–9).  Although the websites, email addresses and unnamed person are alleged in Plaintiff's Complaint, there is no basis to think that Petrus has any information relevant to them.

(b)    <u>Silver Creek Subpoena</u>

Plaintiff seeks all communications that Silver Creek had with Defendant, Incline, certain Incline employees, or "any third-party" regarding Plaintiff or Phoenix.  Plaintiff also seeks all communications with "NonOpWells" regarding Plaintiff or Phoenix.  And he seeks all "related" documents.  APP0032-0034 (Requests 1–16, 19–20).

Yet Plaintiff *never* mentions in his Complaint or Rule 26 disclosures Silver Creek, the Incline employees named in the subpoena, or "NonOpWells."  APP0048-0055 (Pls. R. 26

– 6 –

Disclosures).  Thus, none of these requests are proper, and nor are the remaining requests, which seek all communications with certain email addresses and an unnamed person, as well as information about Silver Creek's document retention policies.  APP0033-0034 (Requests 17–18, 21); *see infra* pp. 6–7.

### 3.    The subpoenas lack proportionality and are facially overbroad.

Plaintiff's subpoenas on Petrus and Silver Creek also lack proportionality and are facially overbroad because they (1) seek *all* communications over more than eight years—plus related documents—regarding Plaintiff, Phoenix or Plaintiff's "character," etc., and (2) are duplicative of requests to Defendant and Incline.

Plaintiff's requests for "all" such communications and related documents are overbroad on their face.  *See Turnbow*, 2013 WL 1632795, at *1–2 (requests to Defendant's auditor were facially overbroad in seeking "all" documents relating to Defendant's accounting and financial policies); *MC Trilogy Texas, LLC v. City of Heath, Texas*, No. 3:22-CV-2154-D, 2023 WL 5918925, at *8 (N.D. Tex. Sept. 11, 2023) (requests were facially overbroad in seeking "all communications" between subpoenaed nonparty and any other person without specifying persons with whom communications occurred or document descriptions); *cf. Madison v. Courtney*, No. 4:18-CV-00671-O, 2018 WL 10579557, at *3 (N.D. Tex. Aug. 17, 2018) (granting protective order as to information about third parties); APP0024, 0032-0034 (Requests 1–4 to Petrus, and Requests 1–13, 19–20 to Silver Creek).

Additionally, Plaintiff has already asked Defendant and Incline to produce "all communications" with "any individual or entity" regarding Plaintiff or his companies during the same timeframe.  So "it should not be necessary for Plaintiff to obtain copies of the documents from the non-parties."  *See Orchestrate*, 2014 WL 772859, at *4; APP0072-0073, 0083 (Request

1 to Def. and Requests 4–6 to Incline); APP0024-0025, 0032-0034 (Requests 1–2, 4–5 to Petrus, and Requests 1–12, 20 to Silver Creek).

### 4. The subpoena to Silver Creek seeks irrelevant, sensitive commercial information.

Plaintiff's subpoena on Silver Creek also seeks highly confidential commercial information that is of no probative value in this case. Specifically, Plaintiff asks Silver Creek for "all Communications" with Defendant, Incline or two Incline employees relating to Plaintiff, Phoenix or any of Phoenix's wellbores. APP0032-0034 (Requests 1–12, 20).

There is no basis for these requests. Defendant has never had any communications with anyone at Silver Creek, so there is no basis for Plaintiff to ask Silver Creek for such communications. Francis Decl. ¶ 3 [APP0086]; *see also supra* p. 7. Nor is there any basis for Plaintiff to ask Silver Creek for communications with Incline or its employees. Incline is not a party to this litigation, so any statements made by someone else at Incline have no relevance.[3] Moreover, the only potentially responsive communications would be about a deal in which Incline sold Silver Creek an interest in a unit of land where Phoenix was the majority-interest owner. Hairston Decl. ¶ 6 [APP0088]. That deal has nothing to do with this case, as Silver Creek is never mentioned in the Complaint.

At the same time, Incline's and its employees' communications with Silver Creek about that deal contain highly confidential commercial information, including the sale price and other terms. Hairston Decl. ¶ 5 [APP0088]; *see also United States ex rel. Long v. GSD&M Idea City LLC*, No. 3:11-CV-1154-O, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[P]ricing and profit information[] has been found to constitute confidential commercial information," the

---

[3] Indeed, Phoenix sued Incline in a lawsuit that preceded this one, in a Texas State Court. *See Phoenix Capital Group Holdings, LLC v. William Francis and Incline Energy Partners, LP*, Cause No. DC 06360, pending in the 116th District Court for Dallas County, Texas.

disclosure of which "would cause substantial competitive harm.") (overruling objections to confidentiality designation).

Indeed, Phoenix is not only a competitor of Incline. *See* Compl. ¶ 8. Phoenix also bid on *the same* interest that Incline sold to Silver Creek and that Plaintiff seeks to discover highly confidential commercial information about. Hairston Decl. ¶ 4 [APP0088]. It is plainly improper for Plaintiff to use nonparty discovery to gain sensitive commercial information about a competitor. *See GSD&M*, 2014 WL 12648520 at *2; *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, No. 3-11-MC-036-L-BD, 2011 WL 1348401, at *2 (N.D. Tex. Apr. 8, 2011) ("Disclosure to a competitor is presumptively more harmful than disclosure to a non-competitor.") (denying motion to compel); *cf. Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[C]ourts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing.").

Accordingly, Incline's significant interest in protecting the confidentiality of its communications with Silver Creek outweighs Plaintiff's non-existent interest in discovery. *See GSD&M*, 2014 WL 12648520 at *2; *Educ. Logistics*, 2011 WL 1348401, at *2.

**5.    Plaintiff's arguments lack merit.**

Plaintiff raises several arguments. First, Plaintiff suggests that because Perot has purportedly agreed to produce responsive documents, Defendant and Incline's objections somehow carry no weight. Plaintiff cites no authority for that proposition and, moreover, Defendant as a party to this lawsuit is plainly "in a better position to seek a protective order based on the irrelevance of a subpoena." *Quilling*, 2009 WL 10704320, at *3.[4]

---

[4] It bears noting that Plaintiff moved for a protective order against Defendant's subpoena to First International Bank and Trust ("FIBT"), which unlike Petrus and Silver Creek feature prominently in Plaintiff's complaint, and at the time Plaintiff moved for a protective order FIBT also had agreed to produce responsive documents. *See* ECF 67 at APP0003.

Second, Plaintiff appears to argue that it may use third-party discovery to fish for new claims when that is clearly not the law. *See supra* page 5. Plaintiff cites an out-of-district case that is inapposite; that case didn't involve a defamation claim but a claim for the implied covenant of good faith and fair dealing relating to breach of an exclusivity agreement, and the requesting party argued that "what is discoverable to establish such a claim" was broader than what the objecting party's view encompassed. *See Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*, No. CV175956JVSPLAX, 2018 WL 6264980, at *3–5 (C.D. Cal. Sept. 4, 2018).

 Third, Plaintiff suggests that its subpoenas are justified because Defendant has issued subpoenas to nonparties not mentioned in the complaint. But discovery that *Defendant* has undertaken to defend against the claims asserted in this lawsuit doesn't have any bearing on the relevance or proportionality of *Plaintiff*'s subpoenas on Petrus and Silver Creek and, of course, Plaintiff could have objected to any such discovery.

Fourth, Plaintiff suggests that confidentiality concerns can be addressed without court invention, consistent with the protective order in this case; but, as explained here and in the meet-and-confer, Plaintiff cannot obtain sensitive commercial information about a competitor when such information lacks probative value. Accordingly, Defendant and Incline respectfully request the Court grant their motion for a protective order and to quash the subpoenas on Petrus and Silver Creek.

## II.      PLAINTIFF'S BACKGROUND AND SUMMARY

Defendant William Francis and third-party Incline Energy Partners, LP ("Incline") object to (1) the production of highly relevant documents in the possession and control of Petrus Capital Management, LLC ("Perot") that Perot has already agreed to produce in response to Plaintiff's document subpoena; and (2) the production of materials in response to Plaintiff's document subpoena served on Silver Creek Exploration, LLC ("SCE"), to which SCE has not yet responded.

The objections raised by Defendant (and Incline) therefore do not represent either Perot's or SCE's interests, and fail for the following reasons.

<u>First</u>, Defendant makes the legally unsupported assertion that none of the requests are relevant simply because Perot and SCE are "not named" in the operative complaint or Rule 26 disclosures.  Defendant is not aware of any case law in any jurisdiction supporting an argument that a precondition for a subpoena is that the third-party be referenced in a complaint or initial disclosures.  To be clear, Defendant himself has issued third-party subpoenas to individuals and entities not mentioned in any pleading or his own Rule 26 disclosures.  *See, e.g.*, Defendant's subpoenas to non-parties DocuSign, Royalty Asset Holdings, Marlene Gust, Chris Masone, and Brendan Bernal (among several others).[5]

<u>Second</u>, there is significant probative value to each of the subpoenas.  Perot's documents (obtained through a subpoena on a different entity) have taken center stage in recent filings—*see, e.g.*, Dkt. 83 at 7, 10 and Dkt. 97 at 13 (Perot's Head of Investments telling a premier mineral rights listing platform that Defendant has told "stories" that make Plaintiff sound like a "bad guy" and "a crook").  It should be beyond dispute that—given these communications—Plaintiff is within his rights to seek the requested materials from Perot.  Of note, in Plaintiff's meet and confer discussions with Perot to date regarding this subpoena, neither relevance nor burden have been raised as issues by Perot.  *See* APP0005–0008.  Perot agreed to produce documents responsive to the subpoena subject to additional discussions related to the appropriate timeframe.  *See id.*

---

[5] Defendant objects to  the number of subpoenas Plaintiff has served, alleging that Plaintiff is engaged in a "fishing expedition."  First, as detailed herein, one of these subpoenas led to the Plaintiff obtaining documents from an unrelated third-party, which reflect a Perot principal discussing Mr. Ferrari's character and alleged history <u>with the Defendant in this case</u>.  Second, Defendant himself has served over a dozen third-party subpoenas and 100+ discovery requests (including 60+ Requests for Production).  Setting aside the volume of the parties' requests—the *scope* of discovery sought by Defendant's subpoenas is far broader than Plaintiff's.  *Compare* Dkt. 80 at 12 (Defendant's request for "any" and "all" documents related to FIBT's banking relationship with Phoenix, Mr. Ferrari, and others) *with* Plaintiff's subpoenas to Perot, *infra* at 14–19, and SCE, *infra* at 19–20.

As to SCE, Plaintiff's subpoena is tailored to capture a different set of important information—*i.e.*, documents relating to one particular transaction in which Defendant (and Incline) offloaded five wellbores to SCE <u>after learning that Phoenix would be the operator on those properties</u>. The representations made by Defendant to SCE about Plaintiff or Phoenix in connection with that sale would be relevant, regardless of whether those statements were positive (which would be evidence of the falsity of Defendant's defamatory statements he made to others) or negative (which could provide additional iterations of Defendant's defamatory statements). SCE has not served any objections or approached Plaintiff to discuss the scope of the subpoena so Defendant again stands alone in seeking to avoid production.

<u>Third</u>, Defendant has raised some purported concerns regarding confidentiality issues that could potentially arise from production of these documents. While neither Perot nor SCE have raised such issues, during the Parties' meet and confer, Plaintiff expressed willingness to work with the Defendant to address any such concerns. This should come as no surprise: in recent filings made in this Court, it is Plaintiff that has wished to maintain certain confidentialities given the competitively sensitive nature of certain discovery materials and the fact that the Parties are direct competitors. While Defendant has pushed this Court to make public such information when it belongs to Mr. Ferrari (*e.g.*, information relating to his and Phoenix's relationship with First International Bank & Trust), Plaintiff has offered to continue discussions with the Defendant should narrowing certain requests and/or agreeing on confidentiality protections mitigate Defendant's concerns. That offer remains open—even as Defendant has chosen to bring this blanket motion before this Court, seeking to broadly preclude *any* discovery from Perot or SCE.

For these reasons, as explained in more detail below, the Court should deny Mr. Francis's and Incline's Motions.

A.     **Legal Standard**

To the extent that Defendant and/or Incline rely on Rule 45 of the Federal Rules of Civil Procedure as the basis for their motion, we note that Defendant has previously argued before this Court that "[o]nly the entity to whom a third-party subpoena is directed … has standing pursuant to Rule 45 to move to quash the subpoena based on purported overbreadth or burden." Dkt. 80 at 13 (citing *Keybank Nat'l Ass'n v. Perkins Rowe Assocs., L.L.C.*, No. 09–497–JJB–SR, 2011 WL 90108, at *2 (M.D. La. Jan. 11, 2011)). Defendant further maintained that a party generally "does not have standing to contest third-party subpoenas unless the party is 'in possession of the materials' or has 'alleged any personal right or privilege with respect to the materials subpoenaed.'" *Id.* (quoting *Architectural Granite & Marble, LLC v. Pental*, No. 3:20-CV-295-L-BK, 2022 WL 1090263, at *3 (N.D. Tex. Jan. 10, 2022)). Even if Defendant has standing—as he now contends as "[a] party" who purportedly "has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it"—the same is not true for Incline, and Defendant's objections are limited. *Chaput v. Griffin*, No. 3:14-MC-131-G-BN, 2014 WL 7150247, at *5 (N.D. Tex. Dec. 16, 2014) (Horan, J.) (finding "no basis to completely quash" the subpoena, and further noting that the plaintiff "does not have standing to complain that the production of medical records by [the third party] may be duplicative of what the [p]laintiff has already produced").[6]

Rule 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Under Rule 26, "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" is relevant. *Oppenheimer Fund,*

---

[6] To date, Defendant has produced only 370 pages of documents. Of these, more than 220 pages are public filings from this action, and the remaining pages are Defendant's litigation insurance policies and related communications, so there is no concern that documents responsive to the subpoenas issued to Perot or SCE would have been produced by Defendant. The same is true for Incline, which has not produced any documents in response to its subpoena.

*Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Defendant, as the objecting party, "must show specifically how each discovery request is not relevant or otherwise objectionable."  *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 224 (N.D. Tex. 2016).  As shown below, Defendant fails to carry this burden.

**B.    Argument**

Defendant's arguments in this Joint Report directly contradict the authorities and arguments asserted in Defendant's own brief that was filed with this Court just one month ago. Dkt. 80 at 12 (seeking to compel non-party FIBT to produce "any" and "all" documents related to FIBT's banking relationship with Phoenix, Mr. Ferrari, and others).  The documents are clearly relevant and during the meet and confer, Defendant made no specific argument to the contrary. The subpoenas issued to Perot and SCE are narrowly tailored to seek discrete pieces of highly probative information from these two entities, neither of which have objected on the grounds that Defendant and Incline press in this motion.  If Mr. Francis (or Incline) have legitimate concerns as to the production of potentially sensitive, confidential business information, those issues should be easily worked out between the Parties without involvement from the Court.

**1.    The Subpoena Issued to Perot Is Appropriately Tailored, As Is Evidenced by Perot's Agreement to Comply with the Subpoena**

Plaintiff has been working cooperatively with counsel for Perot since on or around May 30, 2024 to narrow any issues that Perot has with the document subpoena.  So far, the only objection that Perot has raised relates to the timeframe applicable to such searches.[7]  In other words, the objections raised in this motion by Defendant and Incline are theirs—and theirs alone.

---

[7] Perot has raised an objection with regard to the service of the subpoena.  Without waiving that objection, however, Perot has stated it would agree to search for, collect and produce materials responsive to the subpoena in its possession and control.

Neither has any basis under Rule 45 to object to this subpoena, and Defendant's objections further fail under Rule 26.

Defendant argues that Plaintiff's subpoena to Perot is inherently invalid because Perot is not mentioned in the complaint or Plaintiff's Rule 26 disclosures. That is not the law. *See Wheel Grp. Holdings, LLC v. Cub Elecparts, Inc.*, No. CV 17-5956-JVS (PLAx), 2018 WL 6264980, at *4 (C.D. Cal. Sept. 4, 2018) ("[T]he fact that one of the third parties is not specifically named in the Second Amended Complaint does *not* mean that evidence of how defendant dealt with plaintiff's competitors and with the third parties … is irrelevant to plaintiff's allegations."). Indeed, Plaintiff has uncovered (through other third-party discovery) various iterations of defamatory statements that Defendant has made to major players in their industry (and the impact of those statements). It cannot be the case that documents relating to any of those third parties lack relevance because they are not "named" in the complaint.

Defendant cites *Turnbow* for the proposition that courts find third subpoenas improper where "they ask nonparties for 'all documents' concerning the parties or for materials that are available from parties." *See supra* at 3, 7. But *Turnbow* is inapposite as there, the subpoena went beyond issues "at the heart of this litigation" and encompassed "virtually every facet of Defendants' accounting and financial policies and procedures . . . far outside those relevant to the claims at issue." *Turnbow v. Life Partners, Inc.*, 2013 WL 1632795, at *1 (N.D. Tex. April 16, 2013) (Horan, J.). Additionally, Defendant's reliance on *MetroPCS v. Thomas*, 327 F.R.D. 600, 610–11 (N.D. Tex. 2018) (Horan, J.) is misplaced, as Plaintiff has not used "third-party discovery to develop new claims or defendants that are not already identified in the pleadings." *Id.* at 600. Rather, as explained below, these subpoenas target additional evidence for Plaintiff's "properly pleaded claims." *Id.*

Indeed, one of the most prominent examples of Defendant's defamatory conduct—and the impact of Defendant's statements—involves Mr. Hays Lindsley, who is the Head of Private Investing at Perot, who wrote the following to EnergyNet, a premier mineral rights listing platform:

> "I am forwarding an email from Will Francis. He says there is a "bad actor" using EnergyNet to buy and sell properties. ***After hearing some of Will's stories, it does sound like Adam Ferrari is a bad guy***…. We have money with Will…. I'm not sure what his end-goal is, ***but I know he thinks Ferrari is a crook***…. ***My guess is he wants to make it difficult for Ferrari to continue doing business***."

APP0012–0013. The "stories" that Defendant has told to convince the head of Perot Investments that Plaintiff is a "bad guy" and "a crook" certainly bear on both liability and damages.

Plaintiff's subpoena to Perot is narrowly tailored to capture precisely such plainly relevant evidence. Request Nos. 1 and 2 seek communications between William Francis (or Incline) and Perot related to Adam Ferrari, Ferrari Energy, or Phoenix—and Request No. 3 seeks communications between Perot and third parties "regarding Adam Ferrari's character, alleged criminal record or activities, or role at Phoenix." APP0024. These requests are designed to capture only documents that are relevant to Plaintiff's defamation claim. For completeness, Request No. 4 seeks "[a]ll Documents and Communications related to any Communications encompassed by Categories 1–3"—and is intended to capture documents related to such core, responsive documents, *id.*—and Request No. 5 hones in on Mr. Lindsley's email to EnergyNet. APP0025 (seeking "[a]ll Communications and Documents regarding William Francis' desire to 'make it difficult for Ferrari to continue doing business,' as characterized by Hays Lindsley in his July 2, 2020 email to Patrick McGee at MPK Equity Partners").

Defendant argues in this motion that "Incline is not a party to this litigation, so any statements made by someone else at Incline have no relevance." But we know that Defendant used an @inclinelp.com email address to hire notorious convicted securities fraudster, Peter Tosto,

– 16 –

to carry out the "Online [Adam Ferrari] Campaign," which was paid for by Incline. *See* Dkt. 83, at 4–6. It is Plaintiff's understanding that Mr. Francis runs Incline, and Plaintiff has every reason to believe that Mr. Francis has utilized and/or directed Incline employees to engage in the misconduct at issue here  For example, Incline employees have  disseminated the websites generated by that "Online AF Campaign" using their Incline emails. *See* Dkt. 84 at APP0055 (Bryan Hymer, a VP at Incline, using his @inclineresources.com email address to send the lawsuitsoilandgas.com/law-suits/ website to a mineral rights owner when asking her to do "business with Incline").

We also know that Defendant's position at Incline (and his connections with Perot) played a significant role in causing harm to Plaintiff and any company he associated with, including Phoenix. *See* APP0015 (Defendant writing: "Little disappointed to see EnergyNet listing the assets of Adam Ferrari's new company…. [I] would urge EnergyNet to reconsider granting a convicted criminal a platform …. Of note, it appears form reading EnergyNet Seller's Agreement that management of Phoenix Capital Group Holdings LLC has disqualified itself from being able to utilize EnergyNet…."); *see also* APP0011 (MPK noting for EnergyNet: "Perot has an investment in Incline and the head of Incline (Will Francis) reached out to Hays given that Phoenix Capital (Adam Ferrari) is selling properties on EnergyNet.").

The remaining Request Nos. 6–9 also seek plainly relevant documents narrowly tailored to the known aliases, fake websites and burner emails used by Defendant, email addresses known to have been utilized in Defendant's alleged defamatory campaign, and the websites used as key vehicles in that campaign.

As noted above, any concerns as to the production of potentially sensitive, confidential business information can be worked out between the Parties without involvement from the Court.

Defendant's request for a blanket preclusion of discovery here stands in stark contrast to his prior argument that "the Agreed Protective Order rather than denial of discovery provides protection for such materials."   Dkt. 80, at 14; *see also id.* at 15 (reiterating Defendant's argument that "enforcement of the Protective Order, rather than denial of relevant discovery, provides the appropriate protection from improper disclosure").

Defendant's own authorities illustrate that courts routinely deny motions brought pursuant to Rule 45 in such situations.  *See MC Trilogy*, 2023 WL 7004442, at *3 (argument that the third party "subpoenas require production of confidential or proprietary information […] failed to meet [the party's] heavy burden to quash or modify the subpoenas *duces tecum* […] on the limited grounds for which it has standing under Rule 45"); *Orchestrate HR, Inc. v. Trombetta,* 2014 WL 772859, at *5 ( N.D. Tex. Feb. 27, 2014) (denying Rule 45 motion because "the Protective Order expressly covers documents designated as confidential by third parties from whom the parties to this lawsuit request documents."); *Chaput v. Griffin*, 2014 WL 7150247, at *4 (N.D. Tex. Dec. 16, 2014) (Horan, J.) (requiring third-party to "produc[e] medical records regarding the injuries caused by the incident at issue in the underlying lawsuit or similar injuries," despite limiting discovery that was "**in no way associated with the injuries [plaintiff] claims in the underlying suit**") (emphasis in original); *see also Steel Dust*, 20023 WL 4946533, at *4 (denying motion to quash subpoena under Rule 45 where "Defendants provide no explanation for how the Joint Stipulated Confidentiality Order's protections are insufficient to address their confidentiality concerns"). Notably, unlike Defendant—who has a demonstrated history of making improper use of information obtained via discovery to defame Plaintiff—there is no reason to believe that Plaintiff would use documents inappropriately.

**2.  The Subpoena to SCE Is Not Yet Ripe for Dispute—And In Any Event, Defendant's Objections Fail (and Contradict His Positions in This Action)**

SCE has yet to offer any response (or objection) to Plaintiff's subpoena.  Thus, Defendant's and Incline's objections—again—are theirs alone, as they do not represent SCE's interests.

The SCE subpoena is intended to capture documents and communications relating to one particular transaction in which Defendant offloaded five wellbores to SCE after learning that Phoenix would be the operator.  To the extent that Defendant represented to SCE that having Plaintiff as a partner for those wellbores would be good for SCE's business, such communications would be relevant to the falsity of Defendant's statements made to others in the industry regarding Plaintiff; conversely, if instead Defendant made negative statements about Plaintiff to SCE (*i.e.*, in accordance with his historical pattern of behavior), Plaintiff should be entitled to discover the various iterations of defamatory statements Defendant has made.  *See Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017) (holding that materials relating to a party's credibility fall within the scope of discovery).

Plaintiff's subpoena to SCE is narrowly tailored to capture such information:  Request Nos. 1–2, 4–5, 7–8, and 10–11 seek communications between William Francis (or Incline and its employees) and SCE related to Adam Ferrari or Phoenix—and Request Nos. 13–15, and 19 seek communications between SCE and third parties related to Adam Ferrari or Phoenix.  *See* APP0032–34.  "To the extent not covered by" the foregoing requests, Request Nos. 3, 6, 9, and 12, seek SCE's communications with William Francis (or Incline and its employees) relating to "any of Phoenix's wellbores, including but not limited to any of Phoenix's wellbores located in North Dakota (*e.g.*, townships 160N 99W and 159N 99W)."  APP0032–0033.  Request No. 16 requests the same communications between SCE and NonOpWells, which is the platform on which Incline listed its interests for sale.  *See* APP0033.

– 19 –

For completeness, Request No. 20 seeks "[a]ll Documents and Communications related to any Communications encompassed" by the foregoing Requests, and Request No. 21 seeks documents sufficient to identify SCE's document retention and destruction policies or practices. *See* APP0034.  Finally, Request Nos. 17–18 are narrowly tailored to seek communications between SCE and aliases and email addresses known to have been used in Defendant's defamatory campaign.  *See* APP0033–0034.

Although Defendant claims that he personally did not have communications with SCE, *see* Francis Decl. (APP0086), Brett Hairston has confirmed that communications regarding "Adam Ferrari, Phoenix or any of Phoenix's wellbores" exist within "Incline's possession, custody or control."  *See* Hairston Decl. (APP0088-89).  Mr. Hairston of Incline claims he has concerns regarding confidentiality issues associated with Incline's transaction with SCE.  Although this position is entirely inconsistent with what Defendant previously argued when seeking all of Plaintiff's and Phoenix's entire bank records, *see* Dkt. 80, Plaintiff remains willing to meet and confer with SCE (once SCE provides a response)—and Plaintiff also is willing to meet and confer with Defendant regarding any legitimate confidentiality concerns for documents associated with SCE's response to the subpoena.

## C.    <u>Conclusion</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion for Protective Order and Non-Party Incline's Motion to Quash the subpoenas to Perot and SCE.

**BROWN FOX PLLC**

By: */s/ Paulette C. Miniter*
    Cortney C. Thomas
     Texas Bar No. 24075153
     cort@brownfoxlaw.com
    Charlene C. Koonce
     Texas Bar No. 11672850
     charlene@brownfoxlaw.com
    Paulette C. Miniter
     Texas Bar No. 24102213
     paulette@brownfoxlaw.com
    Andrew C. Debter
     Texas Bar No. 24133954
     andrew@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, TX 75225
    Tel. 214.327.5000
    Fax. 214.327.5001

***Attorneys for Defendant William Francis***

**LATHAM & WATKINS LLP**

*/s/ John T. Ryan*
John T. Ryan *(pro hac vice)*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
jake.ryan@lw.com

Andrew R. Gray *(pro hac vice)*
LATHAM &WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
andrew.gray@lw.com

Garrett S.  Long (*pro hac vice*)
LATHAM &WATKINS LLP
330 North Wabash Avenue, Ste 2800
Chicago, IL 60611
Telephone: (312) 876-7700
garrett.long@lw.com

James O.  Crewse
Texas Bar No. 24045722
CREWSE LAW FIRM PLLC
5919 Vanderbilt Ave
Dallas, TX 75206
Telephone: (214) 394-2856
jcrewse@crewselawfirm.com

***Attorneys for Plaintiff Adam Ferrari***

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

*/s/ Paulette C. Miniter*
Paulette C. Miniter