**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ADAM FERRARI,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:23-cv-455-S** |
| | § | |
| **WILLIAM FRANCIS,** | § | |
| | § | |
| *Defendant*. | § | |

**JOINT REPORT REGARDING DEFENDANT'S MOTION
FOR PROTECTIVE ORDER REGARDING NOTICE OF
INTENT TO DEPOSE DEFENDANT, AND BRIEF IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure 26 and 30, the Court's Order Regarding Non-Dispositive Motions, [Dkt. 75] and ¶ 4 of the Court's Amended Scheduling Order, [Dkt. 71], the parties, Plaintiff Adam Ferrari ("Plaintiff" or "Ferrari") and Defendant William Francis ("Defendant" or "Francis"), jointly file this report regarding Defendant's motion for a protective order that would prohibit Plaintiff Adam Ferrari ("Plaintiff" or "Ferrari") from deposing Defendant pending (1) the adequate production of documents responsive to Defendant's discovery requests served on Plaintiff and on third parties associated with Plaintiff and represented by Plaintiff's counsel, and/or (2) disposition of Defendant's Motion to Dismiss or Abstain, etc. [Dkt. 106] requesting a stay or dismissal of this case until a final judgment is rendered in a related state court case ("State Case"), which will preclude Plaintiff's claim here, based on res judicata.[1]  In support, the parties respectfully show the Court as follows:

(a) The names of the attorneys or unrepresented parties who participated in the pre-motion conference;

---

[1] *See* Defendant's Motion to Dismiss or Abstain, Alternative Renewed Motion to Stay, and Brief in Support, ("Motion to Stay") Dkt. 106.

Charlene Koonce and Cort Thomas participated on behalf of Defendant.

Andrew Gray and Kevin Hamilton participated on behalf of Plaintiff.

(b) The date the conference was held and the amount of time during which the parties conferred;

The conference was conducted on July 15, 2024, during which the parties conferred for a total amount of approximately 15 minutes.

(c) The matters that were resolved by agreement;

No agreement was reached regarding the Motion during the parties' call.

(d) The specific matters that need to be heard and determined by the Court; and

The Court should determine whether to grant (1) Defendant's request for a protective order and stay Defendant's deposition.

(e) A detailed explanation of why agreement could not be reached as to those matters, including all arguments and authorities on which each party relies as to each matter that could not be resolved by agreement.

On June 14, 2024, without first conferring about availability despite a prior request for a conference in advance of any deposition, Plaintiff served a Notice of Deposition of Defendant William Francis, setting Defendant's deposition for July 12, 2024.  On June 17, 2024, counsel for Defendant informed Plaintiff that Defendant was unavailable on July 12 and asked for alternative dates.  Plaintiff agreed to reschedule Defendant's deposition, and on June 18, 2024 counsel for Defendant again invited Plaintiff to provide alternative dates. On June 21, 2024, Plaintiff's counsel indicated that they could be available any day during the week of July 22 and asked for Defendant's availability during that week. Counsel for Defendant did not respond, because, on June 21, 2024, at approximately 6:20 p.m. the Texas Supreme Court denied Phoenix's Petition for Review. Denial of that petition prompted Defendant to seek a stay on res judicata grounds.

On July 2, 2024, Plaintiff again asked counsel for Defendant to provide availability within the week of July 22, 2024, requesting that Defendant provide a date as soon as possible.  On July 3, 2024, Defendant filed a Motion to Dismiss or Abstain, Alternative Renewed Motion to Stay and simultaneously informed Plaintiff that it would be inappropriate for Defendant to sit for a deposition in light of their pending motion, as well as stating that the deposition was improper because the parties were continuing to confer regarding the "many, many documents that are improperly designated AEO."  On July 9, 2024, Plaintiff informed Defendant that, while willing to schedule the deposition on a date convenient for Defendant and his counsel, Plaintiff was not willing to postpone the deposition indefinitely.  In that correspondence, Plaintiff asked counsel for Defendant to provide available dates by July 11, 2024.  Counsel for Defendant did not respond.  On July

12, 2024, Plaintiff served an Amended Notice of Deposition of Defendant William Francis, setting Defendant's deposition for July 26, 2024. That same day, at approximately 5:45 p.m. CST, Defendant requested to meet and confer regarding Defendant's motion for a protective order regarding the deposition notice and advised Plaintiff that he intended to file a motion for protective order within five business days to comply with ¶ 4 of the Amended Scheduling Order, by which such a deposition is automatically stayed. Plaintiff did not respond to that request for a conference, until July 15, at 1:04 p.m. CST, after Defendant again requested a conference earlier that morning. Defendant's email on the morning of July 15 also explained each basis for staying the deposition as set forth in arguments below. The parties conferred on July 15, 2024.

During the call, counsel for Defendant advised, as he had in emails sent the prior week and earlier in the day, that he intended to file the Motion no later than the close of business on July 19, to comply with ¶4 of the Amended Scheduling Order; and, provided the basis for the Motion as set forth in arguments below. Plaintiff reiterated that, although willing to reschedule the deposition to a date and time convenient for Defendant and his counsel, Plaintiff was not willing to stay the deposition pending Defendant's Motion to Stay. Counsel for Plaintiff advised that they were unaware of any authority permitting Defendant to stay party discovery based on the reasons articulated by counsel, and asked counsel for Defendant to provide authorities supporting his position. Defendant responded by providing his portion of the Joint Report, approximately one hour after the call concluded. Again to comply with this Court's order as well as ¶ 4 of the Amended Scheduling Order, Defendant requested that Plaintiff provide his portion of the Joint Report by the close of business on Wednesday to allow a timely filing on Thursday, July 18, 2024.

During the call, counsel for Defendant also said that, upon receiving Plaintiff's portion of the Joint Report, they intended to draft and include a separate "Reply" prior to the filing of this joint report. Counsel for Plaintiff disagreed that the Court's Order Regarding Non-Dispositive Motions (Dkt. 75) contemplated such a structure and indicated that requiring time for a separate "Reply" would not afford Plaintiff an opportunity evaluate and respond to Defendant's arguments, authorities, and evidence as provided by the Court's Order.

Plaintiff provided his portion of the Joint Report at 11:53 a.m. CST on Thursday July 18, 2024.

The arguments and authorities on which both parties rely for the motion and opposition are set out for fully below.

## I.   DEFENDANT'S SUMMARY AND BACKGROUND

1.      This is a defamation case in which Defendant contends the statements at issue—

which assert that Plaintiff created, controls, and served as Phoenix Capital Holdings Group,

LLC's ("Phoenix") de facto CEO, and is a felon—are true.[2]  The truth of statements regarding Plaintiff's role with Phoenix is revealed by, among other things, emails sent by or to Ferrari, or referencing Ferrari's role at Phoenix, evidencing the control he has exercised but which he denies, or evidencing other Phoenix officers' deference to Ferrari and his control or decisions.[3]

2.      Good cause exists to issue this protective order because Defendant cannot adequately prepare for his deposition due to (1) Plaintiff's failure to produce documents in response to nearly all of Defendant's discovery requests, (2) the failure of third parties associated with Plaintiff and represented by Plaintiff's counsel to produce any documents in response to Defendant's subpoenas (except for 78 documents produced by Phoenix in advance of mediation, which are facially incomplete), and (3) Plaintiff's improper use of an "Attorney's Eyes Only" ("AEO") designation for nearly all documents Plaintiff received pursuant to his own subpoena, and documents produced by DocuSign in response to Defendant's subpoena,  such that counsel cannot even discuss the majority of documents produced to date, with Mr. Francis in advance of his deposition.

3.      More specifically, in early January 2024, shortly before a court-ordered mediation, the parties agreed to stay discovery except for limited responses to certain requests, including Ferrari and Phoenix's respective responses to five Requests for Production.[4]  For instance, although Phoenix agreed to produce "[a]ll documents that evidence *any* contractual relationship between You and First International Bank and Trust," and Phoenix's pleadings reference an October 2020 loan from FIBT and alleged "FIBT was intimately familiar with Phoenix's business,

---

[2] Plaintiff denies making two of the four statements at issue.  *See* Dkt. 34.

[3] *See* Dkt. 82-1, 82-2, App. 128, 145–46, 151, and 156.  As discussed in Defendant's required motion to seal, Dkt. 82, all of those documents (and virtually all others in which Mr. Ferrari is included) are designated AEO.

[4] *See* Dkt. 49 ("Joint Motion for Limited Stay"), and Declaration of Charlene C. Koonce ("Koonce Dec."), submitted concurrently with this Motion, ¶ 5, and Exhibits A-1 and A-2 (APP0001-0008; APP0009-0012; APP0013-0016).

its principals, and its owners," Phoenix failed (and to date has refused) to produce documents related to or evidencing the earlier loan transaction.[5]

4.      Similarly, although Phoenix and Ferrari agreed, in advance of mediation, to produce all documents related to the "formation and governing documents" for Phoenix, and LJC, including operating agreements and amendments, it produced only the Certificate of Formation for LJC, the Offering Circular and a related public filing for Phoenix (that it knew Francis already possessed) and four other publicly available documents related to Phoenix's LLC agreement.[6] Of the 78 documents produced (including the Certificate of Formation and other formation documents), all were initially designated AEO.  In the reproduction set, Plaintiff changed the designation to "Confidential" for approximately six of those documents and either imposed the AEO designation on the reproduction set or omitted some of the original documents from the reproduction set.[7] Further, as has been discussed in multiple briefs and as agreed in the parties' Joint Motion for Limited Stay, [Dkt. 49], in January, Plaintiff produced approximately 48,600 documents he had obtained from Phoenix's broker-dealer, the Dalmore Group (the "Dalmore Production") pursuant to a "discovery only" proceeding filed in Illinois.[8]  He designated all AEO.[9] Despite repeated and constant requests to de-designate the Dalmore Production, and Plaintiff's progression from "we'll evaluate and get back to you," to "they aren't relevant" to "we'll produce some," to "we'll produce them all [but very slowly]" to "we're working on it," all of which were intended to delay and then forestall a motion to compel, and despite agreement on May 10, 2024

---

[5] Koonce Dec. ¶ 5, and Exhibit A-2 (APP0003; APP0015).

[6] *See* Dkt. 49; Koonce Dec., ¶ 6 and Exhibit A-2 (APP0004; APP0015).

[7] Koonce Dec. ¶ 6 (APP0004).

[8] *See* Dkt. 49, ¶ 1. e.

[9] Koonce Dec. ¶ 7 (APP0004); *see also* Dkt. 82, pp. 4–5.

to reproduce the Dalmore Production with appropriate designations, on July 8, 2024, Plaintiff unequivocally refused to de-designate 43,254 of those documents by claiming the remainder were not relevant and that redaction efforts he deemed necessary were too burdensome.[10]  For instance, the Dalmore Production included at least 1,219 emails sent to or by Ferrari, all of which were originally designated AEO.  In the limited reproduction Ferrari designated 230 of those emails AEO and refused to reproduce and de-designate 901 of these Ferrari emails.  Thus, of 1,219 emails on which Ferrari is included, 1,131, or more than 92% are still designated AEO.  These AEO documents, like much of the remainder of the Dalmore Production, include documents that are directly relevant to Defendant's affirmative defense of truth, as well as Ferrari's lack of credibility, and should be available for use in preparing Defendant for his deposition.

5.     A similar circumstance exists regarding documents responsive to Defendant's subpoena served on DocuSign.  Through his late objection to that subpoena and subsequent insistence on receiving responsive documents to review and redact before allowing Defendant access to any of the documents, Plaintiff withheld responsive documents (to a subpoena served in January) until May 24, 2024.[11]  When produced, every single document was designated AEO and most include unnecessary and improper redactions, for instance deleting the subject matter of the document.[12]  Defendant objected to that designation and the parties have participated in two lengthy phone calls and exchanged multiple lengthy emails and letters regarding the

---

[10] Koonce Dec. ¶ 7 (APP0004-0005).  By July 8, 2024, Plaintiff had reproduced only 5,346 of the Dalmore Production, although Defendant has requested reproduction with the improper designation removed, consistently, repeatedly and persistently, since the end of January.  Of the reproduced set, 3,456 or nearly 65% are still designated AEO.  Many of the documents are wholly redacted *and* designated AEO.  *See* Koonce Dec.  Including the remaining 43,254 documents originally included in the Dalmore Production, Plaintiff's production of just the Dalmore Production is still 96% AEO. *Id.* ¶ 8-9 (APP0005).

[11] Koonce Dec. ¶ 10 (APP0005).

[12] *Id.*

production, including efforts to narrow responsive documents.[13] To date, however, despite Defendant's agreement that certain categories of documents need not be de-designated or unredacted, Plaintiff has refused to remove the redactions for *any* DocuSign documents or de-designate any of them.  The conference regarding these documents is ongoing.[14]

6.      In several sets of requests, Defendant has served 67 Requests for Production on Plaintiff, 51 Requests for Production on Phoenix, 15 Requests for Production on Lion of Judah Capital, LLC ("LJC"),  9 Requests for Production of Alpha & Omega Capital, LLC ("A & O").[15] In total, collectively, Plaintiff and these entities and persons have served extensive objections and produced 76 documents, as an incomplete response to the five requests Plaintiff had agreed to respond to in advance of mediation.[16] Beginning in February and continuing in March, April, May and June, Defendant served deficiency letters regarding the improper and unsupportable objections received, but his efforts to resolve the objections and obtain documents, to date, have been met with delay, silence, or further meritless objections.[17] A protective order is necessary so that Defendant may adequately prepare and to prevent Plaintiff from improperly gaining a tactical advantage by withholding information and documents relevant to the claims and defenses in this litigation.

7.      Good cause further exists to issue a protective order because of the preclusive effect of an impending final judgment in the State Case—which Plaintiff has sought to evade by filing

---

[13] *See* Koonce Dec. ¶ 10-11 (APP0005-0006), and Exhibit A-3 (APP0017-0024).

[14] Koonce Dec., ¶ 10-12 (APP0005-0006).

[15] Koonce Dec. ¶ 14 (APP0006-0007). According to public filings, LJC has the power to select the manager of Phoenix and is the entity through which Ferrari capitalized Phoenix. Similarly, A & O is owned in part by an officer of Phoenix whose family member provided capital to Phoenix. *See* Dkt. 82-1 for a further explanation as to Ferrari's use of LJC and A & O, and thus the relevance of their documents to Defendant's defense.

[16] Koonce Dec. ¶ 15 (APP0007); *see also,* Exhibits A-4 through A-10 (APP0025-0148).

[17] Koonce Dec.¶ 16 (APP0007), and Exhibits A-11 through A-15 (APP0149-0173).

the instant litigation in federal court.[18]   Phoenix filed the State Case against Defendant and Defendant's company (Incline Energy Partners, LP ("Incline")) based on the same operative facts as this litigation.  Following review by the Dallas Court of Appeals and denial of review by the Texas Supreme Court, only Phoenix's defamation per se claim, premised on a similar statement to those at issue in this case, remains in the State Case.  The intermediate appellate court remanded that claim for evaluation of an affirmative defense in the context of Defendants' "TCPA" motion to dismiss.[19]  Discovery in the State Case has been and will continue to be stayed pending resolution of Defendants' TCPA Motion. Accordingly, a protective order is necessary to prevent Plaintiff from unfairly benefiting from vexatious litigation and forum shopping.

## II.   PLAINTIFF'S SUMMARY AND BACKGROUND

Defendant's bad faith attempts to avoid a properly served Notice of Deposition of Defendant William Francis ("Mr. Francis" or "Defendant") flaunts this Court's authority by arguing that Mr. Francis should not have to submit to valid discovery because he has not received the disputed discovery he wants—a direct contradiction of this Court's order stating that "[a] party cannot refuse to comply with another party's discovery requests because the responding party believes that another party has not complied with the discovery requests that have been served on them." Dkt. 75 at 11.  Indeed, Mr. Francis fails to make any real connection between his demands for the irrelevant and unduly burdensome discovery detailed in his position statement, and the deposition at issue here.  He argues that he needs all of the discovery he has requested in order to prepare for his deposition, but none of the documents Defendant seeks from DocuSign, Dalmore, Alpha & Omega, Lion of Judah Capital, Phoenix Capital Group, Adam Ferrari, and the long list

---

[18] *See* Dkt. 106.

[19] *See* TEX. CIV. PRAC. & REM. CODE § 27.003 (the Texas Citizen's Participation Act or "TCPA"); *see also* Dkt. 106.

of third parties he has subpoenaed involve Mr. Francis as a sender, recipient, or other party to the communication. Mr. Francis fails to articulate why he needs to obtain and review documents he has never seen before to testify about his knowledge of the facts at issue. His arguments are baseless and seemingly designed to drive up costs on Plaintiff and delay questioning regarding Mr. Francis's misconduct and false discovery responses.

Mr. Francis's filing of a Motion to Dismiss or Stay, Dkt. 106,[20] and his subsequent request for a protective order to prevent his deposition, is consistent with his *modus operandi* throughout this litigation: refuse to produce documents, provide false and misleading discovery responses, move to block third-parties from producing evidence, serially file Joint Reports repeating the same false and inflammatory statements that caused Mr. Ferrari to file this lawsuit in the first place, and broadly oppose *all* of Mr. Ferrari's requests to seal personal and competitively sensitive business information. While vigorously opposing Mr. Ferrari's right to obtain the discovery and relief to which he is entitled at every turn—including by unsuccessfully attempting to dismiss and then stay this action at the outset, Dkts. 9, 32, 36—Mr. Francis simultaneously pursued aggressive discovery from Mr. Ferrari and other third parties, including by (i) taking the ***only*** deposition in this case thus far; (ii) propounding 67 document requests, 48 requests for admission, and 8 interrogatories and (iii) serving at least 13 third-party subpoenas.

But despite Mr. Francis's best efforts, Mr. Ferrari has uncovered damning evidence revealing the true nature and scope of Mr. Francis's years' long vendetta to publicly disparage Mr. Ferrari's personal and professional character, including discovery demonstrating that Mr. Francis's discovery responses in this litigation are false. For example, documents produced by FindIt, Inc. ("FindIt") establish that Defendant personally directed thousands of dollars to FindIt and its owner,

---

[20] Mr. Ferrari intends to file a timely brief opposing Mr. Francis's pending Motion to Dismiss or Stay in full, and by participating in the joint report process does not waive any arguments.

notorious convicted securities fraudster Peter Tosto, in connection with the development of an "Online Campaign" including creation of two websites, manipulation of search engine results, and writing of various blog posts dedicated to disparaging Mr. Ferrari.[21]  *See* Dkt. 83 at 4-6; *see also* Dkt. 84 at APP0020-0027 (Mr. Francis's correspondence with Mr. Tosto regarding "2 Sites built out Featuring Content regarding Subject," "Blogs posted highlighting background and current names of entities," and "getting the content posted, SEOd, and indexing in search").  This evidence demonstrates that Mr. Francis's discovery responses that (i) denied making any payment for the creation of these two websites[22] and (ii) denied his involvement in creating the websites[23] were categorically false.[24]  *Id.*

But this example is just the tip of the iceberg.  And now that Mr. Ferrari has uncovered the truth and intends to depose Mr. Francis regarding the details of his misconduct, Mr. Francis has unilaterally decided that it would be "inappropriate" to sit for a deposition.  *See* APP0178.  But as explained below, Mr. Francis does not (and cannot) articulate any basis for granting his motion for a protective order or staying this deposition any longer than it has already been delayed.

*First*, as a matter of law, Mr. Francis's assertions regarding various unrelated discovery disputes is not "good cause" justifying a protective order.  To the contrary, it is well-settled that Mr. Francis may not "refuse to comply with [Mr. Ferrari's] discovery requests 'simply because he

---

[21] The Court ruled directly on the relevance on the FindIt subpoena at the December 20, 2023 hearing, which was reflected in the Parties' Joint motion for Entry of Limited Stay.  Dkt. 49 at 1.

[22] *Compare* Dkt. 84 at APP0043 (denying Mr. Francis's paid for the creation of *adamferrarioilandgaslawsuits.com* website), *with id.* at APP0020-27 (showing Mr. Francis directing such payment), *and id.* at APP0031 (showing Mr. Francis's $7,500 payment).

[23] *Compare id.* at APP0047 (identifying only Mr. Tosto and claiming to have learned of his involvement only through "discovery served by Ferrari and received by Franics [sic]"), *with id.* at APP0020-27 (Mr. Francis's June 2021 correspondence with Mr. Tosto regarding the "Online AF Campaign" and creation of "2 Sites built out Featuring Content regarding Subject, Blogs posted highlighting background and current names of entities")

[24] *Compare id.* at APP0042 (denying knowledge of Mr. Tosto's affiliation with FindIt prior to the receipt of discovery from Mr. Ferrari), *with id.* at APP0020-27 (Mr. Francis's June 2021 correspondence with Mr. Tosto at "peter@findit.com" with large FindIt logo in signature block).

believes that [Mr. Ferrari] ha[s] not fully complied with his discovery requests." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018) (collecting cases). Indeed, this Court has explicitly ordered adherence to this rule. Dkt. 75 at 11. Moreover, Defendant's contention that a request for his deposition is "premature" is meritless—"methods of discovery may be used in any sequence." Fed. R. Civ. P. 26(d)(3).

Mr. Ferrari will not respond to each of Mr. Francis's inaccurate contentions about the issues arising out of the exhaustive efforts reach a compromise on the discovery disputes alluded to in paragraphs 2-6 of Mr. Francis's Summary and Background, *supra* Sec. I, because they are irrelevant to the issues at hand. Given the false accusations, however, Mr. Ferrari feels compelled to provide a brief response regarding the status of these issues. Suffice to say that Mr. Ferrari has made significant effort to reach a reasonable compromise in response to the countless letters counsel for Mr. Francis has sent on these topics, but Mr. Francis continues to assert an entitlement to tens of thousands of irrelevant documents, including by asserting that he is entitled to see the names and contact information for Mr. Ferrari's and his wife's doctors, and that he is entitled to know the counterparties of each of Phoenix's agreements even if Mr. Ferrari has no involvement with the document. *See* APP0184-0186. The documents Defendant seeks have no relevance to the case and Defendant's discovery requests seem designed only to run up costs or gather information that Mr. Francis could use in his "Online Campaign" to undermine Mr. Ferrari. *See supra* nn. 22-24. Having already filed no less than four discovery motions with this Court, Mr. Francis has demonstrated that he will seek court intervention when he believes that there is an entitlement to receive documents, but has declined to do so in the weeks since the parties reached impasse on the issues he raises here.

*Second*, Mr. Francis may not wield his pending, and meritless, Motion to Dismiss or Stay as a tool to unilaterally stay *all* discovery in this action until the Court renders its decision. Mr. Francis misapprehends the standard for a protective order, which requires him to affirmatively demonstrate that "going forward with discovery would be oppressive, unduly burdensome, or expensive." *AIG Specialty Ins. Co. v. Agee*, 2023 WL 5565063, at *2 (E.D. La. Aug. 29, 2023). Defendant's conclusory assertions that "because [he] will prevail on [his] pending motion[], the discovery is unnecessary" does not meet this high burden. *Id.* At bottom, permitting Mr. Francis to hide behind his meritless Motion to Dismiss or Stay, particularly when the Motion to Dismiss or Stay will not be fully briefed until mid-August, would be inequitable and significantly prejudice Mr. Ferrari's ability to litigate this action.

*Third*, the timing of Mr. Francis's Motion to Dismiss or Stay and his decision to renege on his offer to identify available dates for the deposition betrays his true intent: to avoid providing Mr. Ferrari with the discovery he is entitled by any means necessary. A background of Mr. Ferrari's attempts to take Mr. Francis's deposition provides the necessary context:

- On June 14, 2024, Mr. Ferrari properly served his first Notice of Deposition of Defendant William Francis. APP0181.

- On June 17, 2024, counsel for Mr. Francis asked Mr. Ferrari to "pull down your notice and let us know alternative dates that would work for your side" because "Mr. Francis is out-of-town on July 12 and unavailable." *Id.* Notwithstanding the scheduling conflict, Mr. Francis acknowledged "**it is your prerogative to take Mr. Francis's deposition at any point (schedules permitting) during the discovery period.**" *Id.*

- That same day, Mr. Ferrari "agree[d] [] to reset Mr. Francis's deposition" subject to Mr. Francis's agreement that Mr. Ferrari would "provide [] several alternate dates and [Mr. Francis] will let you know what works on our side." *See* APP0180-0181.

- On June 21, 2024, Mr. Ferrari informed counsel for Mr. Francis that "we can be available any [day] during the week of July 22 for the deposition of Will Francis," and asked "which date that week will work." *See* APP0179. Defendant failed to respond.

- On July 2, 2024, Mr. Ferrari again followed up with counsel for Mr. Francis "regarding a date for Mr. Francis's deposition" and asked for "dates of availability within the requested week as soon as possible." *Id.*

- On July 3, 2024, Mr. Francis filed his Motion to Dismiss or Stay. *See* Dkt. 106. Within minutes of filing his Motion to Dismiss or Stay, Mr. Francis informed Mr. Ferrari that he was refusing to provide alternative dates and now believed "it is inappropriate for Mr. Francis to sit for a deposition" given (i) Mr. Francis's "motion to stay, just filed, is pending" and (ii) "the parties are still conferring regarding the many, many, documents that are improperly designated AEO." *See* APP0178.

- On July 9, 2024, Mr. Ferrari once again informed Mr. Francis of his willingness "to schedule the deposition on a date convenient for counsel and Mr. Francis," but reiterated that it was unacceptable to "postpone indefinitely." Mr. Ferrari invited Mr. Francis to provide "available dates in July by Thursday, July 11," otherwise Mr. Ferrari would "schedule the deposition on a date that works for us, and pursue appropriate remedies if Mr. Francis does not appear." *Id.* Mr. Francis did not respond.

- On July 12, 2024, Mr. Ferrari properly served an Amended Notice of Deposition of Defendant William Francis, setting Defendant's deposition for July 26, 2024. *See* APP0195-0196. Less than ten minutes later, counsel for Defendant requested Mr. Ferrari's "availability for a Jt Conference on Defendant's motion for protective order regarding this notice." APP0196.

- The parties conferred on Monday, July 15, 2024. During the conferral, Mr. Francis informed Mr. Ferrari that, unless Mr. Ferrari agrees to voluntarily withdraw the deposition notice, he (i) would demand that Mr. Ferrari provide his "responsive content [for the Joint Report] by end of the day on Wednesday," a mere two days after the parties' conferral and (ii) "draft [a] reply section" after receiving Mr. Ferrari's portion and file the Joint Report on Thursday. APP0195-0196. Counsel for Mr. Ferrari disputed that Defendant has any right to include a reply and demanded the opportunity to evaluate an respond to any material prepared by Defendant. Dkt. 75 at 15 (each party is permitted to "evaluate and respond to the other party's or parties' arguments, authorities, and evidence"), 16 ("The joint report and joint appendix requirements are intended to be a substitute for the usual, separate motion-response-reply briefing sequence[.]").

- Immediately after the conferral, counsel for Mr. Francis sent Mr. Ferrari his "draft motion for protective order"—*i.e.,* his already drafted portion of the Joint Report—reserving the right to implement "some other revisions" and including a placeholder for Mr. Francis's forthcoming "Reply" to Mr. Ferrari's arguments. *See* APP0195.

The record is clear that Mr. Francis desperately desires to avoid sitting for a deposition. That Mr. Francis waited to raise his arguments regarding the deposition notice until ***after*** he filed the Motion to Dismiss or Stay—and ***after*** having initially agreed to cooperatively schedule a date for his

deposition—suggests that Mr. Francis manufactured these issues in a last-ditch effort to delay. The Court should not reward Mr. Francis's blatant gamesmanship.

*Finally*, Defendant has improperly submitted a nine-page "Reply" section of the Joint Report while affording Mr. Ferrari less than three hours to review, analyze, and respond to his new contentions and arguments. The Court should not consider this portion of the Joint Report as Defendant did not afford Mr. Ferrari an opportunity "evaluate and respond to [Defendant's] arguments, authorities, and evidence" as required by the Court's Standing Order. Dkt. 75 at 16. But in any event, even in this improper Reply, Defendant does nothing more than double down on his meritless arguments and relies on discovery disputes that are not subject to any proper motion and have nothing to do with the issue presently before the Court: whether Mr. Ferrari is entitled to take Defendant's deposition.

For these reasons, the Court should deny Mr. Francis's efforts to block his own deposition and allow Mr. Ferrari to proceed with discovery. Given the blatant disregard of the Court's clear order that "[a] party cannot refuse to comply with another party's discovery requests because the responding party believes that another party has not complied with the discovery requests that have been served on them," Dkt. 75 at 11, Mr. Ferrari asks the Court to order sanctions pursuant to Federal Rule of Civil Procedure 37(d)(1)(A).

## III.   DEFENDANT'S MOTION AND ARGUMENT

### A.   LEGAL STANDARD

The Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1); *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990), *opinion modified on denial of reh'g* (Apr. 27, 1990); *see also Murillo Modular Group, Ltd. v. Sullivan*, No. 3:13-CV-3020-M, 2016 WL 6139096, at *8 (N.D. Tex. Oct. 20, 2016). "A protective order is warranted in those

instances in which the party seeking it demonstrates good cause and a specific need for protection." *Murillo*, 2016 WL 613906, at *8. "The Court has broad discretion in determining whether to grant a motion for a protective order," and "is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Id.*

**B.   DISCUSSION**

A protective order is warranted pending adequate production of documents responsive to Defendant's discovery requests. Good cause exists to issue a protective order because Defendant cannot adequately prepare for his deposition due to (1) Plaintiff's failure to produce any documents in response to nearly all of Defendant's discovery requests, (2) the failure of third parties associated with Plaintiff and represented by Plaintiff's counsel to produce any documents in response to Defendant's subpoenas, except for 78 documents by Phoenix, and those documents are woefully incomplete, and (3) Plaintiff's improper use of the "Attorney's Eyes Only" designation for nearly all documents that Plaintiff has received pursuant to subpoenas. A protective order is thus necessary to prohibit Plaintiff's deposition of Defendant pending proper document productions, so that Defendant may adequately prepare and to prevent Plaintiff from improperly gaining a tactical advantage by withholding information relevant to the claims and defenses in this litigation.

**1.   Failure to produce documents by Plaintiff and the third parties he controls.**

As discussed above, to date, Plaintiff and Phoenix have produced 78 documents in response to only five of Defendant's 118 document requests.[25] Even that slight production was incomplete.[26] Rather than producing responsive documents, Plaintiff and his entities have raised

---

[25] Koonce Dec. ¶¶ 5-6 (APP0003-0004).

[26] *Id.*

various meritless and improper objections—many in boilerplate or conclusory fashion.[27] Similarly, with the exception of the 78 documents produced by Phoenix or Ferrari, the third parties associated with Plaintiff and represented by Plaintiff's counsel, Phoenix, LJC, A & O, have also failed to produce a single document in response to Defendant's subpoenas.[28] At the same time, Plaintiff and these third parties have delayed and resisted efforts to move the meet and confer process forward to resolve their baseless objections.[29] Plaintiff should not be entitled to depose Defendant while withholding virtually every responsive document Defendant would otherwise use to prepare for his deposition.   Indeed, given Defendant's pending objections to Plaintiff's document requests—regarding which Plaintiff has not yet conferred—and his production to date of only the documents he agreed to produce in advance of mediation and documents produced in response to his subpoenas, Plaintiff's premature effort to depose Defendant appears geared towards potentially obtaining a second deposition after meaningful document production has occurred. Plaintiff's attempt to depose Defendant while depriving Defendant of an adequate opportunity to prepare because of Plaintiff's tactical decision to delay document production subjects Defendant to "annoyance," "oppression," and "undue burden" and necessitates a protective order pending Plaintiff's proper production of documents responsive to Defendant's requests. *See Kleppinger v. Tex. Dep't of Transp.*, 283 F.R.D. 330, 336 (S.D. Tex. 2012) (stating that "the purpose of Rule 26(b)(2) is to guard against redundant or disproportionate discovery"; granting in part the plaintiff's motion for protective order seeking to delay deposition until after production of

---

[27] Koonce Dec. ¶ 5-6, 14 (APP0003-0004, APP0006-0007), Exhibits A-1, A-2 and A-4 through A-6 (APP0009-0012, APP0013-0016, APP0025-0083).

[28] Koonce Dec. ¶ 14 (APP0006-0007), and A-7 through A-10 (APP0084-0148).

[29] Koonce Dec. ¶ 16 (APP0007) and Exhibits A-11 through A-15 (APP0149-0173).

documents; and ordering the defendants to "wait to notice Plaintiff for his deposition until after they have complied with their discovery obligations") (internal quotation marks omitted).

### 2. Plaintiff's improper AEO designation of nearly all third-party productions.

Similarly, Plaintiff's improper use of an AEO designation and blatant refusal to de-designate the Dalmore Production such that documents relevant to Defendant's defense of truth can be shared and discussed with him, violates basic tenants of fairness and the purpose of meaningful discovery.[30]  The documents at issue, for instance, Ferrari's communications with Dalmore regarding high level decisions and operational issues, are directly relevant to the defense of truth as well as Ferrari's lack of credibility and Defendant is entitled to review these materials in advance of his deposition. Examples of some of these documents are included in prior filings, for instance, in exhibits that support Defendant's Response to Plaintiff's Motion for Protective Order regarding Defendant's Subpoena served on FIBT, and by necessity, were filed under seal.[31] Likewise, the DocuSign documents reveal similar information, as well as the IP address from which documents were signed at the same location, within seconds of another signature, but purportedly signed by different people who live and work in different locations.  Every DocuSign document, is however, designated AEO.[32]

Despite Defendant's persistent and continuing efforts to obtain copies of documents without the improper AEO designation, to date, Plaintiff has failed and refused to comply while generally stalling any motion to compel by contending, (at least until after serving a deposition notice for Defendant without first conferring about the date), that Plaintiff would either consider

---

[30] Koonce Dec., ¶ 8-9 (APP0005).

[31] *See* Dkt. 82-2, App. pp. 128, 145-148, 156; Dkt. 9, App. pp. 20; 24; 28.

[32] Koonce Dec. ¶ 11 (APP0006).

removing the designation or was in the process of doing so.[33]   Further, the AEO designation on

the reproduced set is still inappropriate. For instance, Ferrari has designated documents AEO that

reflect his role in how Phoenix's broker cleared Phoenix's investors, complaints and key decisions

about Phoenix's communications with and manner of soliciting investors, key marketing decisions,

communications with an alternate broker that Phoenix apparently contemplated hiring.[34] He has

also designated documents AEO that are completely redacted so that no content is visible![35] None

of these documents include any information that could fall within the appropriate scope of an AEO

designation. *See United States v. Planned Parenthood Fed'n of Am., Inc.*, 2022 WL 19006362, at

\*4 (N.D. Tex. Oct. 11, 2022) ("A Confidential or AEO designation is a drastic remedy . . .  [and]

such designations are meant to be a rarity, reserved for only the most sensitive information, that

properly worthy of segregation in the midst of the normal free flow of relevant discovery.")

(internal quotation marks omitted); *see also Healthtrio, LLC v. Aetna, Inc.*, No. 12-CV-03229-

REB-MJW, 2014 WL 6886923, at \*3 (D. Colo. Dec. 5, 2014) (stating that the risks from

competitor/opposing party having access to trade secret documents related to patents "must be

balanced against the harm to Plaintiff in forcing its attorneys to try the case without the assistance

of their client").   Indeed, the practice of designating a high percentage of documents AEO is on its

face, improper.  *Planned Parenthood Fed'n of Am., Inc.*, 2022 WL 19006362, at \*7 ("95% highly

confidential, AEO designation rate is problematic and questionable (or 'absurd') on its face");

*PPD Enterprises, LLC v. Stryker Corp.*, No. CV H-16-0507, 2017 WL 3264001, at \*1 (S.D. Tex. June 13,

2017), *clarified on denial of reconsideration*, No. CV H-16-0507, 2017 WL 3263469 (S.D. Tex. June 27,

---

[33] Koonce Dec. ¶¶ 7, 10, and 11 (APP0004-0006), and Exhibits A-3, and A-11 through A-14 (APP0017-0024, APP0149-0173).

[34] Koonce Dec. ¶¶ 8-9 (APP0005).

[35] Koonce Dec. ¶ 8 (APP0005).

2017) (striking all confidentiality designations because "a blanket confidentiality designation is, by itself, *prima facie* evidence of bad faith"). Moreover, many documents are heavily and inappropriately redacted.

Again, Plaintiff should not be entitled to designate the vast majority of documents that have been produced to date—by third parties no less, instead of Plaintiff—AEO, refuse to remove the designation, while forcing Defendant's deposition. *See Planned Parenthood Fed'n of Am., Inc.*, 2022 WL 19006362, at *4 ("Restrictions on a litigant's access to information that may constitute or lead to evidence and arguments may severely hamper the litigant's participation."); *see also Xiamen Baby Pretty Products Co. Ltd. v. Talbots Pharm. Family Products, LLC*, No. 3:21-CV-00409, 2022 WL 18142532, at *6 (W.D. La. Dec. 16, 2022) (Rejecting argument by party that improperly designated nearly entire production AEO, that non-producing party had failed to explain why de-designation was important; non-producing party had explained overuse of AEO designation barred it "from discussing almost all discovery materials with its client and prejudiced its ability to prepare for depositions; mediation; dispositive motion briefing; and trial.").

### 3. A protective order is warranted pending resolution of related state litigation.

As discussed in Defendant's Motion to Stay, this case should be stayed or dismissed pending resolution of the related State Case. [36] For the same reason, Defendant's deposition should be stayed, at least until the Court has an opportunity to rule on the Motion to Stay. *See Landry*, 901 F.2d at 436 (affirming protective order suspending discovery during pendency of motion for summary judgment, which might preclude the need for further discovery, since continuing discovery while the motion was pending was unnecessarily burdensome).

---

[36] Dkt. 106. Defendant incorporates his arguments regarding such a stay, including a stay based on *Colorado River* abstention, herein.

IV.     **PLAINTIFF'S RESPONSE AND ARGUMENT**

A.     **LEGAL STANDARD**

"A party may, by oral questions, depose any person, including a party, ***without leave of court*** except as provided in Rule 30(a)(2)."  Fed. R. Civ. P. 30(a)(1) (emphasis added).  "A party cannot refuse to comply with another party's discovery requests because the responding party believes that another party has not complied with discovery requests that have been served on them."  Dkt. 75 at 11; *see also Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018) ("Neither may a party refuse to comply with an opposing party's discovery requests 'simply because he believes that the opposing parties ha[ve] not fully complied with his discovery requests to them.") (collecting cases); *Turner v. Nationstar Mortg. LLC*, 2015 WL 12765513, at *2 (N.D. Tex. May 14, 2015) (overruling a party's "objections to giving his oral deposition" and denying motion for protective order because "he cannot refuse to comply with [] proper discovery requests simply because he believes that the opposing parties has not fully complied with his discovery requests to them"); *Smith v. Kansa Tech., LLC*, No. CV 16-16597, 2017 WL 6407984, at *2 (E.D. La. Aug. 3, 2017) ("Federal Rule of Civil Procedure 26(d)(3) provides that discovery may be pursued in any sequence and that discovery by one party does not require delaying discovery by any other party.").

"Nor is a stay of discovery permitted merely because [D]efendant believes it will prevail on its motion to dismiss," particularly since "a stay while dispositive motions are pending is the exception rather than the rule."  *AIG Specialty Ins. Co. v. Agee*, 2023 WL 5565063, at *2 (E.D. La. Aug. 29, 2023) (collecting cases); *see also Escareno ex rel. A.E. v. Lundbeck, LLC*, 2014 WL 1976867, at *2 (N.D. Tex. May 15, 2014) ("Defendants are seeking to invoke a rule that a pending motion to dismiss stays discovery—but no such rule applies in these circumstances."); *Glazer's Wholesale Drug Co. v. Klein Foods, Inc.,* 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008)

("The court declines to stay discovery merely because defendant believes it will prevail on its motion to dismiss . . . For defendant to now suggest that there will be no delay or prejudice if all discovery is stayed for several months while the court considers its Rule 12(b)(6) motion is, at the very least, disingenuous.").

Defendant, as the "party resisting discovery," bears the burden of "show[ing] how each discovery request is not relevant or otherwise objectionable." *Murillo Modular Grp., Ltd. v. Sullivan*, 2016 WL 6139096, at *3 (N.D. Tex. Oct. 20, 2016). In order to meet this burden, Defendant must show "that the discovery fails the proportionality calculation mandated by Federal Rule of Civil Procedure 26(b) by coming forward with specific information to address [] the importance of the issues at stake in the action, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* at *4. "Because a party seeking to prevent a deposition carries a heavy burden to show why it should be denied, it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *Dai v. Le*, 2023 WL 6276317, at *2 (W.D. La. Mar. 3, 2023) (cleaned up) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. Apr. 4, 2012)). Defendant cannot carry this burden.

### B.    ARGUMENT

#### 1.    As a Matter of Well-Settled Law, Mr. Ferrari's Purported Discovery Deficiencies Cannot Provide The Requisite "Good Cause" Justifying a Protective Order

Instead of articulating an argument under the relevant Federal Rule, Fed. R. Civ. P. 26(c)(1), Defendant dedicates the majority of his argument to airing irrelevant grievances regarding unrelated discovery disputes. Specifically, Defendant asserts a right to stay discovery based on his belief that the documents produced by Mr. Ferrari and third parties are incomplete or

improperly designated as Attorneys' Eyes Only ("AEO").  *Supra* Sec. III.B.1, 2.  According to Defendant, "good cause exists to issue a protective order" pending "proper document productions, so that Defendant may adequately prepare and to prevent Plaintiff from improperly gaining a tactical advantage by withholding information." *Supra* Sec. III.B.  But this meritless argument is contrary to both law and logic, and is nothing more than a transparent attempt to avoid disclosing the details of his misconduct to Mr. Ferrari under oath.

*First*, it is well-settled that "[a] party cannot refuse to comply with another party's discovery requests because the responding party believes that another party has not complied with the discovery requests that have been served on them."  Dkt. 75 at 11.  For this reason alone, the Court should not entertain Defendant's attempts to complicate the issues and misdirect the Court's attention away from the narrow issue at hand—whether Mr. Ferrari is entitled to question Defendant regarding the breadth and depth of his unlawful actions and misconduct—and deny Defendant's request.  *Turner*, 2015 WL 12765513, at *2-3 (ordering plaintiff "to appear for an oral deposition" because "he cannot refuse to comply with defendants' proper discovery requests simply because he believes that the opposing parties has not fully complied with his discovery requests to them"); *Scott Env't Servs., Inc. v. Newfield Expl. Co.*, 2019 WL 13149925, at *1 (E.D. Tex. Dec. 17, 2019) (rejecting the argument that plaintiff "is not in a position to proceed with oral depositions" until "full disclosure, as required by the rules, and more specifically by this Court's local rules, has been made by Defendants").

Stymied with this body of case law—and the Court's own Standing Order, Dkt. 75 at 11, directly contradicting his position—Defendant half-heartedly argues that "Plaintiff's premature effort to depose Defendant appears geared towards potentially obtaining a second deposition after meaningful document production has occurred." *Supra* Sec. III.B.1.  Incredibly, Defendant

premises this argument on ***his own*** "pending objections to Plaintiff's document requests" and failure to produce any substantive documents in this case. *Id.* Setting aside the impropriety of allowing Defendant to avoid his deposition by simply refusing to produce any documents, Defendant has no right to dictate the timing in which Mr. Ferrari serves his discovery requests. Rule 26 of the Federal Rules of Civil Procedure—which Defendant relies on as the basis for his motion—specifically provides that "methods of discovery ***may be used in any sequence***," and "discovery by one party ***does not require any other party to delay its discovery***." Fed. R. Civ. P. 26(d)(3) (emphasis added). If new information comes to light and if Mr. Ferrari elects to bring a Rule 30(a)(2) motion requesting leave to depose Defendant a second time, Defendant will have ample opportunity to oppose that request. Fed. R. Civ. P. 30(a)(2).[37] Put simply, Defendant's failure to produce any substantive documents and pure speculation about Mr. Ferrari's future discovery requests does not relieve him of his obligation to comply with a valid Rule 30(a)(1) deposition notice, or permit him to dictate the timing in which Mr. Ferrari conducts discovery. *Smith v. Kansa Tech., LLC*, 2017 WL 6407984, at *2 (E.D. La. Aug. 3, 2017) (granting motion to compel deposition of plaintiff and "award[ing] reasonable expenses" because "Plaintiff's objections as to the sequence of discovery are unavailing" and did not provide a "substantial justification for failing to respond").

*Second*, Defendant "has not persuasively shown why the information that has not been provided by [Mr. Ferrari] is so essential to the testimony of the witnesses who have been noticed for depositions that those depositions should be delayed." *Scott Env't Servs., Inc.*, 2019 WL 13149925, at *1 (denying a party's motion to quash deposition subpoena). Nor can he, as Defendant seeks documents related to his so-called "truth defense," but has already represented to

---

[37] Ironically, to-date ***Defendant*** is the only party that has sought leave to circumvent the Federal Rules of Civil Procedure by asking to prematurely file two motions for summary judgment. Dkt. 97.

this Court that "[n]o additional discovery or delay need occur before the Court can rule on the truth of statements related to Ferrari's status as a felon." Dkt. 97 at 3 (¶ 2), 7; *supra* Sec. I at ¶ 4.  In any event, Defendant's assertion that he needs Mr. Ferrari and third parties to produce documents in order to "prepare [] for his deposition" makes little sense as Defendant does not claim the specific documents he seeks involve ***Defendant*** in any way.  Any documents that do involve Defendant and could prepare him with respect to his own knowledge related to the facts at issue are entirely within his possession, custody, and control.

Moreover, the Court should not allow Defendant to proffer discovery disputes that he has not yet placed before the Court as establishing the requisite good cause justifying a protective order.   Indeed, Defendant grossly mischaracterizes the status of the parties' conferrals regarding the irrelevant discovery disputes he raises in this motion.  After months of trying to reach a compromise on the issues Defendant raises in his motion, (i) counsel for Plaintiff informed Defendant that Phoenix is unwilling to accede to Defendant's improper request to unredact personal and medical information from the Docusign production, APP0184 ("I think we can just agree to disagree and you can pursue your motion to compel."); (ii) counsel for Plaintiff informed Defendant that it will "not reproduce the entire Dalmore set" because "such undertaking would impose significant burden and expense," but would only produce "those documents from the data set that are relevant," APP0198-0199 (expressing the view "this [is] a reasonable approach to resolving the matter," and inviting Defendant to "meet and confer if [he has] further questions"); and (iii) Alpha and Omega Capital, LLC, Lion of Judah Capital, LLC, and Phoenix responded to Defendant's meritless letters identifying purported deficiencies in their responses and objections, APP0170-0173.  Defendant has not responded on these issues, requested additional conferrals, or requested a conference to initiate the joint report process on any of these issues.  The Court should

not allow Defendant to sit on his hands regarding the alleged discovery deficiencies identified in his motion, and then permit him to invoke those same purported deficiencies as the basis for opposing Mr. Ferrari's own discovery efforts.

Tellingly, Defendant only cites a single case, *Kleppinger v. Tex. Dep't of Transp.*, supporting his assertion that Mr. Ferrari's alleged "decision to delay document production" warrants a protective order.  But his reliance on *Kleppinger* is entirely misplaced, as there a party moved for a protective order "preventing the ***reopening*** of [a] deposition" that had already taken place.  283 F.R.D. 330, 336 (S.D. Tex. 2012).  In ***denying*** the motion for a protective order, the court explained "the burden or expense of taking Plaintiff's ***second*** deposition [does not] outweigh[] its likely benefits," but, in light of "the Court's forthcoming orders" regarding several pending discovery disputes,  found "nothing unreasonable with Plaintiff's request that his ***second*** deposition occur after Defendants have complied with their discovery obligations." *Id.*  In contrast, here Defendant (i) is taking the remarkable position that he should not be required to sit for a deposition ***at all*** and (ii) has failed to initiate the joint report process or otherwise move on ***any*** of the purported discovery deficiencies Defendant claims necessitates staying his deposition.

Defendant's improper nine-page "Reply" brief doubles down on these meritless assertions and inaccurate characterizations, but still does nothing more than air grievances about discovery disputes that he has not presented for review by this Court failed to pursue or put before the Court. Plaintiff welcomes the opportunity to respond to Defendant's asserted issues with AEO designations if and when those are properly presented to the Court.  For purposes of a motion seeking to avoid a deposition of Mr. Francis, the arguments about these productions and designations completely misses the mark because counsel for Mr. Ferrari does not plan to ask Defendant about documents that are not the subject of his personal knowledge during his

deposition—and there is no need to prepare for such topics.  Indeed, any attempt to revise Defendant's testimony based on documents that were previously unknown to Defendant would be improper.  Documents produced *during this litigation* have no bearing on questioning Defendant's personal knowledge and pattern of misconduct and Defendant's manufactured argument to avoid deposition should be rejected.

### 2.    Defendant's Pending Motion to Dismiss or Abstain, Alternative Renewed Motion to Stay Does Not Justify A Protective Order

Next, Defendant argues that a protective order is necessary because "Defendant's deposition should be stayed, at least until the Court has an opportunity to rule on the Motion to Stay."  *Supra* Sec. III.B.3 ("[T]his case should be stayed or dismissed . . .[f]or the same reason, Defendant's deposition should be stayed.").[38]  Essentially, Defendant asks the Court to impose a rule that allows him to unilaterally stay **all** discovery until the Court rules on his pending motion. That is not the law, and Defendant cites no authorities supporting this position.  To the contrary, "a stay while dispositive motions are pending is the exception rather than the rule." *AIG Specialty Ins. Co.*, 2023 WL 5565063, at *2 (holding that a pending motion does not relieve a party of the duty to appear).  Indeed, the narrow issue before the Court is whether Defendant should be required to provide testimony in an action where he is the only named defendant.  Defendant's conclusory assertion that "because it will prevail on its pending motion[], the discovery is unnecessary," fails to establish the requisite good cause.  *Id.* (conclusory assertions that a party will prevail on its pending motion to dismiss insufficient to stay discovery); *see also Glazer's*, 2008 WL 2930482, at *1 ("The court declines to stay discovery merely because defendant believes it will prevail on its motion to dismiss.").

---

[38] Mr. Ferrari intends to file a timely brief opposing Defendant's pending Motion to Stay in full, and by participating in the joint report process does not waive any arguments.

Defendant's only cited authority on this issue is wholly inapposite.  In *Landry v. Air Line Pilots Ass'n Int'l AFL*-CI, "at no time [] did the [plaintiffs] seek discovery" prior to defendants' filing motions to dismiss or, in the alternative, motions for summary judgment.  901 F.2d 404, 435 (5th Cir. 1990).  "After the motions were set for argument, the [plaintiffs] requested and received a 'courtesy' continuance" and, "[o]nce they had the continuance," immediately noticed several party depositions.  *Id.*  The court emphasized that defendants "met their burden of showing, *prima facie*, why a protective order was warranted" since (i) "no discovery was needed to resolve the motions to dismiss under Fed. R. Civ. P. 12(b)(6), (ii) "the timing of the depositions—coming as they did after the grant of a courtesy continuance to respond to the motions—was evidence of bad faith," (iii) entitlement to discovery "may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by [the party] to withstand a Rule 56(e) motion for summary judgment," and (iv) plaintiffs actually **conceded** "they had sufficient evidence to defeat the summary judgment motions" without additional discovery.  *Id.* at 435-36.  None of these facts are present here.

Defendant's reliance on *Von Drake v. Nat'l Broad Co., Inc.* in his so-called "Reply," *infra* Sec. V.E, is equally misplaced, as there Judge Kaplan only granted the stay because "a cursory review of the motion reveals that defendants have substantial arguments for dismissal" against a **pro se** litigant who, "having filed more than *26 lawsuits in the past five years*," had been recently "chastised for 'attempting to make a mockery of the federal system.'"  2004 WL 1144142, at *1, n.2 (N.D. Tex. May 20, 2004).  Additionally, Judge Kaplan recognized that "many of the interrogatories and document requests served on defendants are overly broad or harassing."  *Id.* at *2.  Again, none of these facts are present here.  To the contrary, this court has already found that Mr. Ferrari has pleaded valid claims against Defendant, and his opposition to Defendant's

meritless Motion to Dismiss or Stay has not yet been filed.  Essentially, Defendant is asking the

Court to rule on the merits of his Motion to Dismiss or Stay before Mr. Ferrari has even had an

opportunity to respond.   Moreover, as Defendant himself has acknowledged, Mr. Ferrari's

deposition notice is a valid and acceptable form of discovery.  APP0181 (acknowledging Mr.

Ferrari's "prerogative to take Mr. Francis's deposition at any point").

### 3.   Defendant's Manipulation of the Discovery Process Should Not Allow Him to Unilaterally Delay a Deposition

Mr. Ferrari's Notice of Deposition was served on June 14, 2024, and Defendant did not

object or otherwise move to prevent the deposition.  Rather, Defendant acknowledged that "it is

your prerogative to take Mr. Francis's deposition at any point (schedules permitting) during the

discovery period" and asked if the deposition could be rescheduled for a different date.  *See*

APP0181.   Mr. Ferrari agreed to move the deposition to a date convenient for everyone, and on

June 18, 2024, offered any date during the week of July 22—providing more than a month of

advanced notice to accommodate scheduling.  APP0179-0180.

Defendant did not assert any objection to taking the deposition on a date convenient for

everyone or Mr. Ferrari's offer to reschedule for a date during the week of July 22.  Indeed,

Defendant did not respond for more than two weeks, only to assert on July 3, 2022, that Defendant

believed taking his deposition would be "inappropriate."  APP0178.  When Mr. Ferrari informed

Defendant that Mr. Ferrari would nonetheless move forward with Mr. Francis's deposition,

Defendant again did not assert any objection to the deposition.  Instead, Defendant refused to

respond, forcing Plaintiff to serve an Amended Notice of Deposition, setting the deposition on July

26, 2024.  APP0196-0197.  Only then did Defendant request to confer about a motion for protective

order raising arguments unrelated to the amended date.  *Id.*  The Scheduling Order details that

depositions are not stayed unless a motion or objection challenging the deposition is filed within

five days, Dkt. 71, ¶4, and Defendant should not be permitted to use the delay of his own creation to circumvent the Court's rules, claiming Mr. Ferrari's purported discovery deficiencies somehow excuse his own discovery obligations.  *See supra* Secs. II, IV.B.1.

The whole process is nothing more than the latest in a long string of obstructionist tactics and desperate efforts to avoid providing discovery to Mr. Ferrari.  Defendant has already filed a motion to dismiss and two motions to stay, each seeking to prevent any discovery from Mr. Francis.  Though Mr. Ferrari has been forced to rely on third-party productions, Mr. Ferrari has already uncovered evidence that Mr. Francis lied in discovery responses, hired a convicted securities fraudster to launch an "Online Campaign" against Mr. Ferrari, and made false statements that led the leading online marketplace for oil, gas, and mineral transactions to state: "After hearing some of [Defendant's] stories, it does sound like Adam Ferrari is a bad guy."  *Supra* nn. 22-24; *see also* Dkt. 83 at 4-6.  It is time for the Court to stop Defendant's endless efforts to avoid discovery and allow Plaintiff to understand the full scope of Defendant's misconduct.[39]

For all of the above reasons, the Court should reject Defendant's improper efforts to preclude Mr. Ferrari from obtaining the discovery to which he is entitled.  Additionally, given Defendant's blatant disregard of the Court's clear order that "[a] party cannot refuse to comply with another party's discovery requests because the responding party believes that another party has not complied with the discovery requests that have been served on them," Dkt. 75 at 11, Mr. Ferrari asks the Court to order sanctions pursuant to Federal Rule of Civil Procedure 37(d)(1)(A).

---

[39] To be sure, to-date Defendant has (i) taken the ***only*** deposition in this case thus far; (ii) propounded 67 document requests, 48 requests for admission, 8 interrogatories; and (iii) served at least 13 third-party subpoenas.  His own aggressive discovery efforts stand in stark contrast to his willingness to participate in discovery and serve as a further reason that this motion for protective order must be summarily denied.

## V.    DEFENDANT'S REPLY[40]

### A.    Plaintiff's "Discovery Deficiencies" Are Unique Because of His Designation of More than 95% of Documents Produced as AEO

Unlike any case cited by Plaintiff, Defendant does not rely solely on Plaintiff's failure to comply with his own discovery obligations in seeking to stay the deposition.  *Compare Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018); *Turner v. Nationstar Mortg. LLC*, 2015 WL 12765513, at *2 (N.D. Tex. May 14, 2015).  Defendant relies on Plaintiff's *bad faith* use of an AEO designation and his continued promises to remove it, a promise Plaintiff did not rescind until June 28, 2024.[41]  Remarkably, Plaintiff's argument *ignores entirely* his improper use of the AEO designation on virtually all documents produced to date, referencing that conduct as "irrelevant."[42]

"The rules governing discovery are intended to prevent 'trial by ambush.'"  *Willis v. USAA Cas. Ins. Co.*, No. 2:22-CV-02762, 2024 WL 1996211, at *2 (W.D. La. May 6, 2024) (quoting *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978)).  So too with depositions set to ambush a party while withholding virtually all discovery materials requested or, even worse, designating virtually all documents, *without justification,* AEO such that they cannot even be discussed with the witness.  While it is true that "discovery by one party does not require any other

---

[40] Plaintiff complains of Defendant's "improper nine-page "Reply" brief.  However, the condensed conference and drafting process is the result the Scheduling Order's five-business-day window for filing a motion for protective order.  *See* ¶ 4.  Plaintiff served Defendant with the Francis deposition notice on Friday, July 12, 2024, at 5:36 p.m. CST.  Approximately ten minutes later, Defendant requested a conference to comply with this Court's Standing Order on Joint Reports.  The parties conferred on the afternoon of Monday, July 15, and Defendant provided his portion of the Joint Report shortly thereafter.  Plaintiff provided his portion of the Joint Report at 11:53 a.m CST on Thursday, July 18.  Defendant hurriedly drafted this Reply and sent to Plaintiff at 5:22 pm CST.  Plaintiff then provided its paragraphs addressing Defendant's Reply at 7:48 p.m. CST.  Defendant did everything in his power to provide his portion of the joint report and to address the arguments raised in Plaintiff's portions in a timely manner.  The Reply contained herein is not improper but is instead the creature of a condensed meet-and-confer schedule necessitated by this Court's standing order on discovery disputes overlayed with the deadline specified by the Scheduling Order.

[41] Koonce Dec. ¶ 8 (APP0005).

[42] *Supra*, Argument, B. 1. Defendant informed Plaintiff of the improper use of the AEO designation for this motion in the first conference App. pp. 178.

party to delay its discovery," FED. R. CIV. P. 26(3)(B), it is equally true that a court may order discovery may occur in a particular sequence "in the interests of justice."  *Id.* at 26(d)(2). Defendant has demonstrated the interests of justice warrant the protective order requested herein.

*First,* Plaintiff was obligated to impose the AEO designation *only* in good faith and only on appropriate documents. *See Paradigm All., Inc. v. Celeritas Techs., LLC*, 248 F.R.D. 598, 605 (D. Kan. 2008) ("The duty of good faith in the protective order is a duty to review the documents in good faith ***before*** designating them as AEO.") (emphasis original).  Defendant should not bear the burden of sifting through tens of thousands of documents to identify specific documents for de-designation. *See  United States ex rel. Univ. Loft Co. v. AGS Enters., Inc.*, No. SA-14-CA-528-OLG, 2016 WL 9461752, at *3 (W.D. Tex. Aug. 4, 2016) (citing *Procaps S.A. v. Patheon, Inc.*, No. 12-24356-civ, 2015 WL 4430955, at *7 (S.D. Fla. July 20, 2015) (producing party's indiscriminate designation of documents as highly confidential should not lead to the result of improperly shifting the cost of review of confidentiality to the receiving party)); *In re ULLICO Inc. Litig.*, 237 F.R.D. 314, 317 (D.D.C. July 11, 2006) (shifting burden of confidentiality review to receiving party would encourage the designating party to overuse the "confidential" label in the first place and provide a strategic advantage in the form of unwarranted and unfair designation).

Plaintiff should not be permitted to use a blanket AEO designation and prohibit counsel from even discussing most documents produced to date with Mr. Francis to prepare for his deposition and assist with trial strategy, discovery, or otherwise, while also withholding all documents requested of Plaintiff and virtually every third party from whom Defendant has sought documents.   Counsel's inability to even discuss Mr. Ferrari's communications—by which he

controlled Phoenix and disproves his own pleaded assertions[43]—with Mr. Francis, as well as basic fairness, demonstrate good cause for the requested protective order.

*Second*, given that entire pages are redacted while also designated AEO, counsel cannot even attempt to identify whether some documents are even *potentially* helpful in preparing Mr. Francis for his deposition.[44]

*Third,* Plaintiff's initial agreement to de-designate the Dalmore Production, followed by delay, delay, delay and then flat refusal after reproducing a sliver of the document at issue and those largely, again designated AEO,[45] and the same process that has occurred to date with respect to the DocuSign Production,[46] further differentiates the interests of justice at work here as compared with any other instance in which one party seeks to delay a deposition based on an incomplete production from the other side.   And despite repeated, constant, and persistent requests that Plaintiff de-designate these documents, he continued promising to do so, until June 28, 2024, when for the first time, he unequivocally refused to de-designate the remaining 43,254 documents in the Dalmore Production (and after he had also re-imposed the AEO designation, without justification, on at least 92% of emails on which Adam Ferrari was included).   Importantly, Plaintiff did not flatly refuse to correct his improper use of the AEO designation until *after* he had served a deposition notice and *after* he had requested alternate dates for the deposition that he had failed to confer about.[47]

---

[43] *See for example,* Dkt. 82-2, App. pp. 128, 145-148; 152; 155-156.

[44] *See* Koonce Dec. ¶ 8 (APP0005).

[45] *See* Koonce Dec., ¶ 7-8 (APP00004-00005).

[46] Koonce Dec., Exhibit A-3 (APP0017-0024).

[47] *See* infra, Plaintiff's factual recitation and chronology.

*Fourth,* Plaintiff's bad faith conduct with respect to the AEO designation on the DocuSign production is perhaps worse than his conduct with respect to the Dalmore Production. There, as described in painful detail in correspondence, Plaintiff stalled that production, then designated it entirely AEO (just like the Dalmore Production).[48]   In two lengthy calls (to date) followed by lengthy emails (and preceded by many, many more), Defendant offered concessions regarding certain documents, but Plaintiff still refused to agree to produce any unredacted documents or justify his AEO imposition. Nonetheless, as required by this Court, Defendant offered further efforts to resolve at least some aspects of that dispute before filing *another* motion.[49]  Thus, despite the unreasonableness of Plaintiff's AEO designation and his insistence on redactions, the conference on those documents continues.

### B.     Justice Also Requires That this Court Not Condone Plaintiff's Gamesmanship

Discovery is not a one-way street in which one party can withhold all discovery, designate materials produced by third parties AEO to cripple the other side's defense and force a deposition. *See Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 183 (N.D. Iowa 2017) ("Rule 26(b)(1) does not give any party 'the unilateral ability to dictate the scope of discovery . . .,' because '[l]itgation in general and discovery in particular ... are not one sided.'") (quoting *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014)).

---

[48] Koonce Dec., Exhibit A-3 (APP0017-0024); App. 78, 184-185 ("Defendant has offered to exclude several categories and modifiers, but Plaintiff's position in that regard remains unclear, except perhaps that Plaintiff is unwilling to produce any unredacted documents unless agreement is reached as to all issues regarding the documents. Does Plaintiff contend that any document that doesn't include Adam Ferrari in any role is not relevant? Any document that only includes Adam Ferrari as the originator is not relevant? Any document that reflects Daniel Ferrari's participation but not Adam's is not relevant? Defendant believes that these issues and several others should be the subject of a further call. In that regard, please let me know your availability for a call next week to continue our conference on these issues.")

[49] App. pp. 184-192.

Ferrari's argument regarding his discovery abuses as an insufficient basis for the requested protective order is essentially that the Court should condone service of baseless objections, withholding of all documents requested of him (and from virtually every third-party), ignoring meet and confer letters regarding his deficiencies, promising to remove improper AEO designations (after repeated requests to do so and extensive delays) and then a flip flop on that representation *after* serving a deposition notice. Plaintiff's conduct and his arguments wreak of gamesmanship.[50]

The gamesmanship at hand is further evidenced by Plaintiff's selective agreement and proposed redactions for documents that have no AEO content, when Defendant has been forced to confer about filing such materials.[51]   Similarly, Plaintiff's assertion during the parties' Joint Conference that the documents he has designated as AEO are not relevant or necessary to prepare Mr. Francis for his deposition because "Plaintiff does not intend to interrogate Mr. Francis about these documents," is almost as disingenuous as Plaintiff's offer to de-designate certain AEO documents, in advance of the deposition, if Defendant would identify the specific set of documents Defendant's counsel sought to use in preparing Mr. Francis.  That offer also begs for core work product.[52]

---

[50] Even with respect to the one deposition that has been taken so far—of a former Phoenix employee who testified that Ferrari was 100% in charge and that the conduct underlying Ferrari's guilty plea were a "death knell" to operating an oil and gas business—Ferrari evidenced dishonesty.  *See* Dkt.95, App. p. 11, 14-15. After Defendant conferred about a date to conduct that deposition, Ferrari served a cross notice and pressed Defendant's counsel to confirm adequate time would be reserved for Plaintiff to depose the witness.  When the deposition commenced, Ferrari's counsel however stated that he "had no pending deposition subpoena" but insisted on using his reserved time.  Notably, Plaintiff designated the entire transcript of that deposition "Confidential," again preventing filing any of it with the Court absent a motion to seal.  *See* Dkt. 94, Dkt. 95.

[51] *See* Dkt. 98, App. pp. 10-13 (conferring about removing AEO designation); Dkt. 82, ¶ 15 (Ferrari agreed to de-designate certain exhibits based on conference for joint motion to seal); *see also,* Dkt. 82, App. pp. 108-129; 144-156 (examples of key documents designated AEO, which Plaintiff either re-designated AEO, or refused to even re-produce and thus left the initial improper AEO designation intact).

[52] Even Plaintiff's inquiry during the joint conference as to whether he could de-designate some documents—again if Defendant identified certain documents for de-designation—suggests a further effort to delay this motion rather than a genuine attempt to resolve Plaintiff's failure to use the AEO designation only in good faith.

**C.      Documents that Ferrari is Withholding and Withholding on Behalf of His Affiliates Are Necessary for Preparing Mr. Francis for His Deposition**

The importance of the documents at issue are highlighted through just a few examples.  For instance, Plaintiff contends the contents of certain websites (one of which Francis had nothing to do with) but which address litigation filed against Ferrari or his entities as well as his criminal history, contain "false and misleading information," and also contends that Mr. Francis's discovery responses regarding these websites are inaccurate.[53]  Surely, Defendant is entitled to receive documents from Plaintiff, regarding the "contents of websites," discussing Ferrari's own rebuttal websites,[54] and Ferrari's communications with a "reputation consulting firm" about these websites and their content[55] before being deposed, since Plaintiff's communications are likely to reveal the truth of the statements on these websites.

Of similar importance to the deposition are the documents requested and withheld, to date, by Ferrari and Phoenix that include key subjects, such as:

- Communications between Ferrari and Phoenix regarding naming him as CEO, his ownership or control in Phoenix or its affiliates, and any response or inquiry from FINRA or the SEC;[56]
- Copies of Drilling Title Opinions, Title Reports, Division Order Title Opinions, and similar intellectual property, by which Ferrari indirectly capitalized Phoenix;[57]
- Communications related to Ferrari's receipt and discovery of the "4GRLZ statement," which Francis also denies making;[58]

---

[53] Dkt. 83, p. 6.

[54] Koonce Dec., Exhibit A-4, (RFP 24) (APP0043-0044).

[55] Koonce Dec., Exhibit A-4 (RFP [unnumbered after 27] (APP0045-0046).

[56] Koonce Dec, Exhibit A-4, (RFP 6) (APP0033). Notably, Ferrari alleges Francis made defamatory statements to FINRA.  Dkt. 7.  Francis denies having communicated with FINRA about Ferrari.  Dkt. 34.

[57] Koonce Dec., Exhibit A-5, (RFP 51) (APP0067). The importance of Francis's ability to review these materials, whenever they are produced, is crucial to understanding these materials, and, similarly, directly relevant to Ferrari's contention that Francis defamed him through statements regarding Ferrari's concealed control, concealed capitalization, and "fraudulent business practices."  *See* Dkt. 83, p. 1, 6 (websites contain false information about Mr. Ferrari and his business practices).

[58] Koonce Dec, Exhibit A-6, (RFP 62) (APP0079).

- Documents signed by Ferrari on behalf of Phoenix, including documents signed for another person through DocuSign;[59]
- Documents evidencing a request for retraction as provided in the Defamation Mitigation Act (RFP 20);[60]
- All communications between Ferrari and FIBT regarding credit solicited on behalf of Phoenix[61];
- Emails sent by Ferrari using his father's Phoenix email address.[62]

In response to repeated requests about deficiencies in his production, Plaintiff stalled, delayed, and equivocated. In response to a detailed meet and confer deficiency letter, Plaintiff *has not responded.*[63] Documents responsive to these requests, regardless of whether Defendant was specifically aware of the facts revealed at the time of any alleged statement, speak to the truth of Defendant's statements and alleged statements, which is the primary defense at issue here. Documents that inform truth as well as Plaintiff's lack of credibility are thus crucial to preparing a witness who will be examined about whether statements he made were false.

And as the Court is aware, *many, many* documents filed under seal with the Court, (and many more that are still designated AEO) reflect the truth of Ferrari's control, capitalization, and activities demonstrating that he served as Phoenix's CEO. But counsel cannot even *discuss* those documents with Ferrari at this juncture, based on a bad faith imposition of an improper AEO designation.

---

[59] Koonce Dec, Exhibit A-4, (RFP 9) (APP0035).  In several instances, Plaintiff objected that documents were requested from one of the Affiliates and refused to produce responsive documents.  (RFP 17) (APP0040).  The Affiliate then objected to the Request on the grounds that the documents were available from Ferrari, and that the Affiliate would not produce them.

[60] Koonce Dec, Exhibit A-4, (RFP 20) (APP0041-0042).  Documents responsive to this request in particular are important for deposition preparation since any purported retraction should have been provided to Mr. Francis, who denies receiving any such communication.  Moreover, Plaintiff agreed to search for and produce responsive documents, but yet, has not produced any.

[61] Koonce Dec, Exhibit A-5, (RFP 36) (APP0056).

[62] Koonce Dec, Exhibit A-5, (RFP 55) (APP0069).

[63] Koonce Dec ¶ 16 (APP0007).

**D.      Defendant Has Not Manipulated the Discovery Process and Does not Seek to Unduly Delay a Deposition**

Contrary to Plaintiff's assertion, Defendant objected to the notice when it was first served, (based on Plaintiff's failure to confer about the date) and asked whether a motion to quash would be necessary.  Even at that time, Defendant stated that since neither party had produced their documents and the discovery cut off was well in the future, he believed both parties depositions should be taken after discovery had been completed.[64]

After initially conferring about alternate dates, however, on June 21, 2024, the Texas Supreme Court changed the lay of the land by denying Phoenix's petition for review.[65]   As Defendant had indicated previously,[66] res judicata based on a final judgment in the State Case will bar this one.  Notably, discovery in the State Case has been stayed for over two years in light of Francis's successful TCPA motion to dismiss and appeal.

Indeed, even the specific relief requested above refutes Plaintiff's characterization of this motion as an effort to unduly delay or preclude the deposition entirely unless the Court denies the motion to stay or abstain. Instead, Defendant seeks to stay his deposition pending "(1) the adequate production of documents responsive to Defendant's discovery requests served on Plaintiff and on third parties associated with Plaintiff and represented by Plaintiff's counsel, and/or (2) disposition of Defendant's Motion to Dismiss or Abstain, etc."

Finally, no matter how many times Plaintiff refers, generically and vaguely, to "defamatory" "false" or anti-competitive statements by Mr. Francis, he can never convert true statements about Mr. Ferrari's role in creating, capitalizing, controlling, and running Phoenix, and

---

[64] App. 192-193.

[65] *See* Dkt. 106.

[66] *See* Dkt.36; Dkt. 97, ¶ 6, p. 4.

his role as a confessed felon, into false ones.  This lawsuit and the other two filed by Ferrari and Phoenix, are meritless.

### E.    Defendant Does Not Seek a Stay "Merely" Because Of a Pending Motion to Dismiss

Plaintiff argues a stay of discovery is not permitted "merely" because "Defendant believes it [sic] will prevail on its motion to dismiss."[67] The factual basis for Defendant's motion to dismiss, however—Plaintiff's bad faith forum shopping, race to res judicata, and vexatious, reactive litigation—wholly differentiates that dispositive motion as a basis for the Court to grant the requested motion for protective order from any case cited by Plaintiff for his argument.  *Compare AIG Specialty*, 2023 WL 5565063, at *2 (denying motion for protective order seeking to stay discovery where movant waited seven months to file 12(b)(6) motion and delayed further to request the stay); *Escareno ex rel. A.E. v. Lundbeck, LLC*, No. 3:14-CV-257-B, 2014 WL 1976867, at *3 (N.D. Tex. May 15, 2014) (denying motion to stall Rule 26(f) conferenced premised on 12(b)(6) motion); *Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc.*, No. 3-08-CV-0774-L, 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008) (same).

Indeed, as Judge Kaplan concluded, "[a] stay of discovery may be appropriate where the disposition of a motion to dismiss "might preclude the need for the discovery altogether thus saving time and expense." *Von Drake v. Nat'l Broad. Co., Inc.*, No. 3-04-CV-0652R, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004) (quoting *Landry v. Air Line Pilots Ass'n International AFL-CIO*, 901 F.2d 404, 436 (5th Cir.), *cert. denied,* 111 S.Ct. 244 (1990)).

Defendant's pending motion to stay and the likelihood of res judicata based on the State Case provide ample reason for this Court to exercise its discretion and grant the requested motion

---

[67] *See supra,* Section IV. A, quoting *AIG Specialty Ins. Co. v. Agee*, 2023 WL 5565063, at *2 (E.D. La. Aug. 29, 2023).

for protection *and to stay discovery entirely,* if so inclined.  Plaintiff's indiscriminate and bad faith use of the AEO designation to cripple Defendant's ability to prepare for a deposition and for trial, as well as his efforts to withhold virtually any document requested of him, further supports that result.

## VI.     PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant requests that the Court issue a Protective Order, staying his deposition until the (1) the Court rules on his pending Motion to Stay; or, if that motion is denied, (2) until Plaintiff removes improper AEO designations on documents produced and (3) Plaintiff and the third parties he controls, produce a meaningful and substantial number of documents in Response to Defendant's requests for Production and subpoenas.

Plaintiff requests that the Court deny Defendant's request for a Protective Order and sanction Defendant for failure to appear at a properly noticed deposition.  Fed. R. Civ. P. 37(d)(1)(A).

Respectfully submitted,

By: */s/ Charlene C. Koonce*
Cortney C. Thomas
  Texas Bar No. 24075153
  cort@brownfoxlaw.com
Charlene C. Koonce
  Texas Bar No. 11672850
  charlene@brownfoxlaw.com
Andrew C. Debter
  Texas Bar No. 24133954
  andrew@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorneys for Defendant William Francis*
*and Nonparty Incline Energy Partners, LLP*

*/s/ Andrew R. Gray*
John T. Ryan *(pro hac vice)*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
jake.ryan@lw.com

Andrew R. Gray *(pro hac vice)*
LATHAM &WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
andrew.gray@lw.com

Garrett S. Long *(pro hac vice)*
LATHAM &WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
garrett.long@lw.com

James O. Crewse
Texas Bar No. 24045722
CREWSE LAW FIRM PLLC
5919 Vanderbilt Ave
Dallas, TX 75206
Telephone: (214) 394-2856
jcrewse@crewselawfirm.com

*Attorneys for Plaintiff Adam Ferrari*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.

*/s/ Charlene C. Koonce*
Charlene C. Koonce
