## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ADAM FERRARI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:23-cv-00455-S |
| | § | |
| WILLIAM FRANCIS, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT WILLIAM FRANCIS' MOTION TO DISMISS OR ABSTAIN, ALTERNATIVE RENEWED MOTION TO STAY

John T. Ryan *(pro hac vice)*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
jake.ryan@lw.com

Andrew R. Gray *(pro hac vice)*
LATHAM &WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
andrew.gray@lw.com

Garrett S. Long *(pro hac vice)*
LATHAM &WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
garrett.long@lw.com

James O. Crewse
Texas Bar No. 24045722
CREWSE LAW FIRM PLLC
5919 Vanderbilt Ave
Dallas, TX 75206
Telephone: (214) 394-2856
jcrewse@crewselawfirm.com

*Attorneys for Plaintiff Adam Ferrari*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................................3

        A.      Mr. Ferrari Brought This Action to Recover His Personal Damages for the Reputational Harm and Mental Anguish Caused by Certain Defamatory Statements About Him Published by Defendant ........................................................3

        B.      Discovery Has Revealed Damning Details Of Defendant's Unlawful Conduct Toward Mr. Ferrari, Despite Defendant's Refusal to Disclose Evidence and Other Discovery Gamesmanship .....................................................4

        C.      There is No Final Judgment in the State Case, Which Involves a Different Plaintiff Seeking Different Damages, an Additional Defendant, and Only a Subset of the Defamatory Statements at Issue Here .................................................6

III.    ARGUMENT .................................................................................................................8

        A.      Defendant Improperly Attempts to Invoke *Landis* to Bypass the Rigorous *Colorado River* Test that Exclusively Governs Defendant's Request ...................8

        B.      Defendant's Request to Stay or Dismiss Under *Colorado River* is Meritless and Should be Denied ..........................................................................11

                1.      Abstention is Very Rarely Warranted and Requires the Movant to Clear the High Bar of Proving Exceptional Circumstances .....................11

                2.      This Action and the State Case are Not Parallel .......................................11

                3.      No Exceptional Circumstances Exist Here to Justify Abstention .............13

        C.      *Landis* Does Not Apply and, Even if it Did, Defendant's Requested Stay Should be Denied ................................................................................................18

IV.    CONCLUSION ...........................................................................................................21

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*African Methodist Episcopal Church v. Lucien,*
  756 F.3d 788 (5th Cir. 2014) ................................................... 15

*Akin v. Santa Clara Land Co.,*
  34 S.W.3d 334 (Tex. App. 2000) .............................................. 13

*Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.,*
  408 F.3d 248 (5th Cir. 2005) ................................................... 11

*Antero Res. Corp. v. C&R Downhole Drilling,*
  No. 4:16-CV-668-Y, 2020 WL 13430020 (N.D. Tex. Feb. 6, 2020) ...................... 9

*Aptim Corp. v. McCall,*
  888 F.3d 129 (5th Cir. 2018) ........................................... 11, 13, 14, 17

*Black Sea Inv., Ltd. v. United Heritage Corp.,*
  204 F.3d 647 (5th Cir. 2000) ................................................. 15, 17

*Boone Funeral Home, Inc. v. Lakeview Gardens, Inc.,*
  No. 4:16cv180-DMB-RP, 2017 WL 11309548 (N.D. Miss. Feb. 21, 2017) ................ 19

*Cardenas v. Amato,*
  No. 1:19-CV-177, 2020 WL 12573065 (S.D. Tex. Jan. 14, 2020) ...................... 15

*Carlson v. Trans Union, LLC.,*
  No. Civ. 3:02-CV-2654-H, 2003 WL 21750706 (N.D. Tex. July 22, 2003) ............. 13

*Carter v. H2R Rest. Holdings, LLC,*
  No. 3:16-cv-1554-N-BN, 2016 WL 5373487 (N.D. Tex. Sept. 2, 2016) ............ 12, 13

*Chevallier v. Our Lady of the Lake Hosp., Inc.,*
  No. 18-0997-BAJ-DEW, 2019 WL 3381766 (M.D. La. July 26, 2019) ................... 20

*Colorado River Water Conservation Dist. v. United States,*
  424 U.S. 800 (1976) ........................................................ 8, 11

*Cottrell v. Duke,*
  737 F.3d 1238 (8th Cir. 2013) .................................................. 9

*DePuy Synthes Sales, Inc. v. OrthoLA, Inc.,*
  953 F.3d 469 (7th Cir. 2020) ................................................... 15

*DOH Oil Co. v. QEP Res., Inc.*,
    No. MO:18-CV-00152-DC, 2019 WL 11541279 (W.D. Tex. Sept. 9, 2019) ........................10

*Evanston Ins. Co. v. Jimco, Inc.*,
    844 F.2d 1185 (5th Cir. 1988) ...............................................................................16

*Fishman Jackson PLLC v. Israely*,
    180 F. Supp. 3d 476 (N.D. Tex. 2016) ...........................................................8, 9, 21

*Hyde v. Hibernia Nat'l Bank*,
    861 F.2d 446 (5th Cir. 1988) ...............................................................................13

*Kennedy v. Pioneer Nat. Res. Co.*,
    No. 20:CV-86-DC-RCG, 2021 WL 2840467 (W.D. Tex. Apr. 1, 2021) ..............................20

*Landis v. North American Co.*,
    299 U.S. 248 (1936).............................................................................................8

*Martin v. Minuteman Press Int'l, Inc.*,
    No. 3:16-cv-00833-KJM-CMK, 2016 WL 4524885 (E.D. Cal. Aug. 30, 2016)....................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..........................................................................11, 12, 14, 16

*Murphy v. Uncle Ben's, Inc.*,
    168 F.3d 734 (5th Cir. 1999) ...............................................................................16

*RepublicBank Dallas Nat'l. Ass'n v. McIntosh*,
    828 F.2d 1120 (5th Cir. 1987) ........................................................................11, 12

*Robert B. James, DDS, Inc. v. Elkins*,
    553 S.W.3d 596 (Tex. App. 2018)........................................................................13

*Roi Grp., Inc. v. Stull*,
    No. 3:15-CV-2670-G, 2016 WL 2866791 (N.D. Tex. May 17, 2016)..................................10

*Rowley v. Wilson*,
    200 F. App'x 274 (5th Cir. 2006) ......................................................................11, 12

*Saucier v. Aviva Life & Annuity Co.*,
    701 F.3d 458 (5th Cir. 2012) ..........................................................................14, 16

*Sports Supply Group, Inc. v. Savage*,
    No. 3:10-CV-913-O, 2010 WL 11565940 (N.D. Tex. Oct. 28, 2010) ..............................12, 13

*Stewart v. W. Heritage Ins. Co.*,
    438 F.3d 488 (5th Cir. 2006) .....................................................................14, 15, 16, 17

*SuperMedia Inc. v. Bell*,
    No. 3:12-CV-2034-G, 2012 WL 5389683 (N.D. Tex. Nov. 2, 2012) ....................................20

*Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*,
    No. H-17-1068, 2017 WL 1437299 (S.D. Tex. Apr. 24, 2017)....................................8, 11, 12

*Wedgeworth v. Fibreboard Corp.*,
    706 F.2d 541 (5th Cir. 1983) ................................................................................20

*Welding Techs. v. James Mach. Works, LLC*,
    No. 3:12-CV-336, 2013 WL 1123852 (S.D. Tex. Mar. 18, 2013) ...............................8, 16, 17

**OTHER AUTHORITIES**

Josue Caballero, Note, Colorado River *Abstention Doctrine in the Fifth Circuit:*
    *The Exceptional Circumstances of a Likely Reversal*, 64 Baylor L. Rev. 277
    (2012)........................................................................................................................8

## I.    INTRODUCTION

For years, Defendant has attempted to hide—from Mr. Ferrari and the public—the details and extent of his unlawful actions aimed at ruining Mr. Ferrari's personal and professional reputation.  Outside of litigation, he has hidden behind pseudonyms (e.g., "Concerned Bakken Mineral Owner"), anonymous websites created by hired guns and registered through private proxies, and surreptitious communications sent across the spectrum of participants in his and Mr. Ferrari's shared industry.  His evasive gamesmanship has continued in the litigation context.  In this action, he has refused to produce documents, provided false and misleading discovery responses, moved to block third-parties from producing evidence, refused to sit for deposition, and repeatedly—albeit unsuccessfully—asked the Court to dismiss or stay this action before Mr. Ferrari obtains the discovery and relief to which he is entitled.

Despite all of these obstructionist tactics, Mr. Ferrari has obtained evidence through third-party discovery that has started to reveal the true breadth and depth of Defendant's misconduct.  That discovery has revealed that Defendant paid a convicted fraudster to carry out Defendant's "Online AF [i.e., Adam Ferrari] Campaign" to attack and defame Mr. Ferrari.  That discovery has further revealed the indisputable harm that Defendant's conduct has caused Mr. Ferrari's reputation, with one industry investor succinctly admitting:  "After hearing some of [Defendant's] stories, it does sound like Adam Ferrari is a bad guy."  And that discovery has further shown that *even Defendant's own investors* understand—and have frankly admitted to other industry participants—that Defendant has been spreading such stories because "he wants to make it difficult for [Mr.] Ferrari to continue doing business."

To be clear, Mr. Ferrari has not been alone in pursuing discovery and litigating this action.  Indeed, while Defendant has aggressively sought to prevent *Mr. Ferrari* from obtaining evidence, Defendant himself has been busy taking advantage of every avenue that litigating

1

before this Court affords to pursue discovery of his own.  He has propounded 67 document requests, 48 requests for admission, and 8 interrogatories, served at least 13 third-party subpoenas, and taken the only deposition in the case thus far.  However, despite his active participation in affirmative discovery, he is now asking this Court to abstain from exercising its jurisdiction and stay or dismiss this case.  Tellingly, Defendant makes this request on the heels of Mr. Ferrari serving a notice requiring Defendant to appear for deposition.  The timing and lack of substantive merit in Defendant's request, coupled with the incongruity between the requested stay and Defendant's months of active participation in this litigation, betray what this Motion really is:  Defendant's latest gambit in a long line of desperate attempts to avoid disclosing the details of his misconduct to Mr. Ferrari.

Defendant ostensibly premises his request for stay or dismissal on a non-dispositive development in a separate state court litigation brought by a different plaintiff, seeking different relief for different injuries, and involving different defamatory statements.  More specifically, Defendant requests stay or dismissal of this action—more than eight months into active discovery—based on a purely theoretical possibility that the state court action,[1] which has not progressed past the pleading stage, could reach a final judgment at some indeterminate time in the future that could potentially resolve or narrow some of the issues in this action.  Defendant's extraordinary request that this Court relinquish its jurisdiction in deference to a pending state court proceeding fails under the straightforward application of the *Colorado River* doctrine, which exclusively governs in these circumstances.  Further, Defendant's attempt to bypass the

---

[1] *Phoenix Capital Group Holdings, LLC v. Francis et al.*, No. DC-22-06350 is pending in the 116th District Court, in Dallas County, Texas, and is referred to herein as the "State Case."

rigorous *Colorado River* test by invoking the Court's inherent power to control its docket is contrary to the law and must be rejected.  Defendant's Motion should be denied in its entirety.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      <u>Mr. Ferrari Brought This Action to Recover His Personal Damages for the Reputational Harm and Mental Anguish Caused by Certain Defamatory Statements About Him Published by Defendant</u>

Defendant has harassed Mr. Ferrari since at least as early as March 2017, engaging in a wide range of underhanded and unlawful tactics aimed at destroying Mr. Ferrari's reputation, mental health, and livelihood.  *See generally* Dkt. 7 (First Amended Complaint or "<u>FAC</u>"); *see also* Dkt. 83 (Plaintiff's Memorandum in Response to Notice of Deficiency on Subject Matter Jurisdiction) at 3-10.  While Mr. Ferrari could definitively identify Defendant as the source of certain harassing activities, Defendant's frequent attempts to avoid detection and operate in the shadows left Mr. Ferrari in the dark as to many aspects of Defendant's conduct.  *See generally* FAC.

By early 2023, Mr. Ferrari could no longer ignore Defendant's harassment and the devastating effects that defamatory conduct was having on Mr. Ferrari personally, including by causing him massive levels of stress and anxiety, depriving him of sleep, necessitating counseling, ruining friendships, and harming his reputation.  *See* Dkt. 83 at 8-10.  Accordingly, to recover damages for the harm he was personally suffering and to stop Defendant from continuing to harass and defame him unchecked, Mr. Ferrari filed this action on February 28, 2023.  *See* Dkt. 1.

As detailed in the FAC—filed more than fifteen months ago in April 2023—the specific defamatory statements known to Mr. Ferrari at the time of filing, for which he seeks reputational and mental anguish damages in this action, include (but are not limited to) statements made in late 2022 and early 2023—months after the State Case was filed—to an oil and gas investment

3

company (FAC ¶¶ 28-31, 38), and the regulatory agency FINRA (*id.* ¶¶ 32, 39).  The FAC further alleged that "with the benefit of discovery, Mr. Ferrari expects to find additional publications by Mr. Francis following his pattern of defamation and bad acts" for which he would seek to recover his personal damages.  *Id.* ¶ 35.  As expected, discovery has in fact uncovered additional statements and misconduct that is not at issue in the State Action, discussed in more detail below.

> **B.**      **<u>Discovery Has Revealed Damning Details Of Defendant's Unlawful Conduct Toward Mr. Ferrari, Despite Defendant's Refusal to Disclose Evidence and Other Discovery Gamesmanship</u>**

Defendant's first attempt to avoid all discovery came in the form of a motion to dismiss the FAC, filed on April 27, 2023.  *See* Dkt. 9.  Defendant failed, with the Court denying the motion on October 31, 2023.  *See* Dkt. 32.  Shortly thereafter, Mr. Ferrari served his first sets of written discovery on Defendant, on November 8, 2023.  Declaration of John T. Ryan ("<u>Ryan Decl.</u>"), ¶ 3 (APP0003); *see also id.* Ex. 1 (APP0006-25).  Defendant responded with his second attempt to evade discovery in this action, moving to stay this case pending the resolution of a separate action brought in Texas state court by Phoenix Capital Holdings Group, LLC ("<u>Phoenix</u>") against Incline Energy Partners, LP ("<u>Incline</u>") and Defendant, based on business damages suffered by Phoenix as a result of conduct by Incline and Defendant.  *See* Dkt. 36 (the "<u>First Motion to Stay</u>"); *see also infra* Section II(C).

Indicative of Defendant's (still readily apparent) desire to have it both ways, after asking the Court to stay this action he nevertheless began aggressively pursuing discovery from Mr. Ferrari and others.  On December 22, 2023, Defendant propounded on Mr. Ferrari 32 document requests, 26 requests for admission, and 5 interrogatories.  Ryan Decl., Ex. 2 (APP0026-40).

Less than a week later, Defendant served a subpoena on third-party Phoenix demanding *46* different categories of documents.  *Id.*, Ex. 3 (APP0041-51).

Following a brief, agreed-upon pause for an ultimately unsuccessful mediation, and a dismissal without prejudice of the First Motion to Stay, the parties went full speed ahead with their respective affirmative discovery efforts.  For his part, Defendant has now (a) served document subpoenas on at least 13 third-parties, (b) taken the deposition of a third-party individual in Chicago, Illinois, (c) propounded on Mr. Ferrari a total of 67 document requests, 48 requests for admission, and 8 interrogatories.  Ryan Decl., ¶ 7 (APP0003); *id.,* Ex. 4 (APP0052-61).  Despite enthusiastically engaging in affirmative discovery, Defendant has sought to obstruct and otherwise prevent Mr. Ferrari from uncovering the full extent of Defendant's misconduct.  Specifically, he has not produced a single substantive document, he served false and misleading discovery responses, filed motions to prevent two third-parties from producing documents in response to duly-issued subpoenas, and refused to appear for his duly-noticed deposition.  *See id.* ¶ 9 (APP0003); *id.,* Exs. 5-6 (APP0062-72); Dkts. 104, 109.  Notwithstanding Defendant's aversion to forthright discovery and his attempts to prevent third-party productions, Mr. Ferrari has uncovered many damning details of Defendant's unlawful conduct through third-party subpoenas.

***First***, documents produced by FindIt, Inc. ("FindIt") establish that Defendant engaged FindIt, and paid them thousands of dollars, to work on an "Online AF [i.e., Adam Ferrari] Campaign."  *See* Ryan Decl., Exs. 7-9 (APP0073-91).  The campaign included creating two websites and various blog posts dedicated to disparaging Mr. Ferrari, and employing manipulative search engine optimization tactics to drive traffic to the disparaging websites.  Ryan Decl., Ex. 8 (APP0077-84) ("2 Sites built out Featuring Content regarding Subject"); *id.*

("Blogs posted highlighting background and current names of entities" and "Lists of possible violations").  To carry out this online attack against Mr. Ferrari, Defendant worked directly with a FindIt principal named Peter Tosto, a disgraced former broker who had already been convicted in two separate securities fraud cases, leading the SEC to describe him as a "securities-fraud addict."  *See id.; see also id.*, Ex. 10 (APP0092-94) (2001 Wall Street Journal article regarding Mr. Tosto, entitled "Two-Time Stock Manipulator Sentenced to 87 Months in Jail").

**Second**, documents produced by EnergyNet—the leading online marketplace for oil, gas, and mineral transactions—show that Defendant sent them defamatory materials falsely claiming that Mr. Ferrari was, among other things, a "convicted criminal" and asking EnergyNet to stop listing assets of any company affiliated with Mr. Ferrari.  *See* Ryan Decl., Ex. 11 (APP0099-101).  EnergyNet's production also confirmed the very real harm to Mr. Ferrari's reputation caused by Defendant's communications, with one industry investor stating to another:  "After hearing some of [Defendant's] stories, it does sound like Adam Ferrari is a bad guy."  *Id.* at APP0098-99.  The EnergyNet documents further revealed that one of Defendant's own investors understood that Defendant was harassing and defaming Mr. Ferrari for the purpose of "mak[ing] it difficult for [Mr.] Ferrari to continue doing business."  *Id.*

In short, this Action has been actively litigated for many months, with extensive discovery revealing the merits of Mr. Ferrari's claims and the fact that he has suffered damages.

**C.**    **There is No Final Judgment in the State Case, Which Involves a Different Plaintiff Seeking Different Damages, an Additional Defendant, and Only a Subset of the Defamatory Statements at Issue Here**

On June 15, 2022, Phoenix filed the State Case against Francis and Incline in the 116th District Court for Dallas County, Texas, asserting six separate causes of action for a variety of business torts, including but not limited to defamation.  *See Phoenix Capital Group Holdings,*

*LLC v. Francis et al.*, No. DC-22-06350.  Phoenix's defamation claim asserted in the State Case includes a defamatory statement *not* at issue in Mr. Ferrari's defamation claim asserted in this Action, and excludes certain statements that *are* at issue in this Action.  Specifically, the defamatory statements at issue in the State Case include a June 17, 2021 email that Mr. Francis sent to Ms. Crystal Taylor, who was in the process of closing a real estate transaction with Phoenix (the "<u>Taylor Email</u>").  Ryan Decl., Ex. 12 ¶¶ 31-32 (APP0110).  The Taylor Email does not form the basis of any of the defamation claims asserted by Mr. Francis in the present action.  Moreover, Phoenix's defamation claim in the State Case does not include the statements made to 4 GRLZ Investments, LLC (*see* FAC ¶¶ 28-31) or to FINRA, both of which were not even published until after the State Case was filed.

On August 16, 2022, Francis and Incline moved to dismiss all claims in the State Case under the Texas Citizen's Participation Act ("<u>TCPA</u>").  On November 9, 2022, the trial court dismissed Phoenix's tortious interference with existing contract cause of action, but denied the motion with respect to the remaining five claims.  *See* Ryan Decl., Ex. 13 (APP0125-26).  Francis and Incline filed an interlocutory appeal, and on August 29, 2023, the Court of the Appeals for the Fifth District of Texas dismissed all causes of action except for defamation per se based on the Taylor Email.  *See id.*, Ex. 14 at APP0148.  Phoenix appealed to the Texas Supreme Court, which declined to review the Court of Appeals decision.  The case has not yet been remanded to the trial court for further proceedings.  There has been no final judgment entered in the State Case, with respect to Phoenix's defamation claim, or otherwise.

III.     **ARGUMENT**

   A.      **Defendant Improperly Attempts to Invoke *Landis* to Bypass the Rigorous
           *Colorado River* Test that Exclusively Governs Defendant's Request**

   Regardless of whether Defendant's request is couched as seeking a stay (Mtn. (Dkt. 106)

at III(A)) or outright dismissal (*id.* at III(B)), what Defendant is really asking this Court to do is

the same:  to relinquish its jurisdiction and clear authority to decide this action in deference to

the State Case.  It is no small thing to set aside the "virtually unflagging obligation of the federal

courts to exercise the jurisdiction given them" in deference to a state court.  *Colorado River*

*Water Conservation Dist. V. United States*, 424 U.S. 800, 817-18 (1976).  Accordingly, the

United States Supreme Court requires movants to prove "exceptional circumstances" under the

stringent *Colorado River* test before a federal court may properly stay or dismiss an action on the

basis of a pending state court action that may arguably have preclusive effect on issues or claims

in the federal case.  *Id.* at 813-14.[2]

   In his Motion, Defendant discusses *Colorado River* as merely providing alternative

grounds for a stay, arguing primarily that this Court should grant a discretionary stay under the

inherent powers recognized in *Landis v. North American Co.*, 299 U.S. 248 (1936).  But contrary

to Defendant's suggestion, "the two doctrines [of *Colorado River* and *Landis*] are not

interchangeable."  *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 482 (N.D. Tex.

---

[2] It is exceedingly rare—particularly in the Fifth Circuit—for *Colorado River* to justify a federal
court abstaining from exercising its jurisdiction.  Indeed, as district courts in this Circuit have
recognized, historically "the Fifth Circuit has reversed nearly nine out of ten appealed district
court decisions to abstain under *Colorado River*, but has never [in the first 35 years after
*Colorado River*] reversed a district court's decision not to abstain."  *Welding Techs. v. James
Mach. Works, LLC*, No. 3:12-CV-336, 2013 WL 1123852, at *2 (S.D. Tex. Mar. 18, 2013)
(citing Josue Caballero, Note, Colorado River *Abstention Doctrine in the Fifth Circuit:  The
Exceptional Circumstances of a Likely Reversal*, 64 Baylor L. Rev. 277, 299-300 (2012)); *see
also Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, No. H-17-1068, 2017 WL 1437299, at
*4 n.2 (S.D. Tex. Apr. 24, 2017) (same).

2016).  And, as made clear by Supreme Court and Fifth Circuit precedent, it would be error to apply *Landis* to the facts of the present case—rather, the more stringent *Colorado River* test exclusively applies to Defendant's request.

In *Fishman*, the district court engaged in a thorough and careful examination of the case law applying *Colorado River* and *Landis*—in the Fifth Circuit and elsewhere—to determine which doctrine(s) applied to requests to stay a federal case in deference to a co-pending state court decision. 180 F. Supp. 3d at 481-87.  That decision acknowledged that some federal courts erroneously concluded—as Defendant argues here—that "a district court has discretion to apply either the *Colorado River* or the *Landis* case in considering whether to grant a stay in deference to a parallel or related state proceeding." *Id.* at 484-85 (collecting cases).  In reality, this view is "precluded by Supreme Court and Fifth Circuit precedent." *Id.* at 485.  The *Fishman* court collects cases, including the plain language of *Colorado River* itself, dictating that

> the *Colorado River* standard—and not a standard derived from *Landis*—applies when a court is considering a motion to stay in favor or a state court proceeding when the state court proceeding will have a preclusive effect on any of the issues being considered by the federal court.[3]

*Id.* at 486.  After all, "[t]o permit a district court to rely solely on its inherent power to control its docket, when the effect of the district court's order is to accomplish the same result contemplated by *Colorado River*, would allow a court to bypass the rigorous test set out by the Supreme Court." *Id.* (quoting *Cottrell v. Duke*, 737 F.3d 1238, 1249 (8th Cir. 2013)); *see also Antero Res.*

---

[3] While Mr. Ferrari disagrees as to the potential preclusive effect that the ultimate resolution of the State Case may have on any of the issues in this action, the gravamen of Defendant's Motion is his claim that the State Case will have preclusive effect on at least some of the issues in this action. *See, e.g.,* Mtn. at 11-16.  As the moving party who bears the burden of proving the propriety of the requested stay, Defendant's arguments regarding the purported preclusive effect of the State Case foreclose any reliance on *Landis* and require him to meet the exacting *Colorado River* standard.  He does not, and cannot, meet that standard. *See infra* Section III(B).

*Corp. v. C&R Downhole Drilling*, No. 4:16-CV-668-Y, 2020 WL 13430020, at *4 (N.D. Tex. Feb. 6, 2020) (refusing to stay claims under *Landis* because "the appropriate standard for determining whether to stay [a] federal proceeding [when there is parallel or related state action] is the one enunciated in *Colorado River*"); *DOH Oil Co. v. QEP Res., Inc.*, No. MO:18-CV-00152-DC, 2019 WL 11541279, at *2, *6 (W.D. Tex. Sept. 9, 2019) (finding "no clear justification for granting a stay" because "district courts are required to apply *Colorado River*" when lawsuits are parallel or related); *Roi Grp., Inc. v. Stull*, No. 3:15-CV-2670-G, 2016 WL 2866791, at *2 (N.D. Tex. May 17, 2016) ("The [*Colorado River*] standard applies when a court is considering a motion to stay . . . in favor of a state court proceeding when the state court preceding will have a preclusive effect on any of the issues being considered by the federal court."); *Martin v. Minuteman Press Int'l, Inc.*, No. 3:16-cv-00833-KJM-CMK, 2016 WL 4524885, at *2 (E.D. Cal. Aug. 30, 2016) (rejecting defendant's motion to "stay proceedings under the *Landis* doctrine" because "the language from *Colorado River* strongly supports the conclusion" that *Colorado River* exclusively "applies when a federal court is considering a motion to stay in favor of a state court proceeding") (internal quotation marks and alterations omitted).

In short, Defendant cannot bypass *Colorado River* by invoking *Landis*. To obtain the extraordinary relief that Defendant requests in his Motion, he must satisfy the "rigorous" *Colorado River* test and prove the existence of "exceptional circumstances" justifying this Court's relinquishment of jurisdiction in favor of a stay or dismissal. Defendant has not—and cannot—satisfy that heavy burden.

**B.** **Defendant's Request to Stay or Dismiss Under *Colorado River* is Meritless and Should be Denied**

> 1. Abstention is Very Rarely Warranted and Requires the Movant to Clear the High Bar of Proving Exceptional Circumstances

Under *Colorado River*, a federal court may, only in rare circumstances, abstain from exercising jurisdiction in favor of a parallel state court proceeding.  But even when parallel proceedings exist, abstention "is the exception, not the rule," since federal courts have "a virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Colorado River*, 424 U.S. at 813-14, 817-18.  Accordingly, a "*Colorado River* abstention analysis begins with a heavy thumb on the scale in favor of exercising federal jurisdiction, and that presumption is overcome only by 'exceptional circumstances.'"  *Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018).

The party seeking a stay or dismissal bears the burden of establishing both that (1) the cases are parallel; and (2) exceptional circumstances exist to justify abstention.  *Colorado River*, 424 U.S. at 817-18; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 19 (1983).  Here, as discussed in turn below, Defendant has not met—and cannot meet—his burden with respect to either requirement.

> 2. This Action and the State Case are Not Parallel

To be parallel, the cases must "involve the same parties and the same issues."  *Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005); *see also Tempur-Pedic*, 2017 WL 1437299, at *3-4 (denying *Colorado River* motion where federal case included additional parties and "[t]hough the issues in the two suits are certainly related, . . . they are not the same issues as required for parallel litigation"); *Rowley v. Wilson*, 200 F. App'x 274, 275 (5th Cir. 2006) (holding suits not parallel where federal suit had additional parties and claims vis-à-vis state suit); *RepublicBank Dallas Nat'l. Ass'n v. McIntosh*, 828 F.2d 1120, 1121

11

(5th Cir. 1987) (same).  The state case must be "an adequate vehicle for the complete and prompt resolution of the issues between the parties," such that "the federal court will have ***nothing further to do in resolving any substantive part of the case***."  *Moses H. Cone*, 460 U.S. at 28 (emphasis added).  Here, the cases do not meet the criteria for "parallel proceedings" under *Colorado River*.

      ***First***, the cases do not have the same parties.  Mr. Ferrari is a party to this action, but not the State Case.  Incline is a party to the State Case but not this case.  Courts routinely find cases do not meet the "parallel" requirement where, as here, the federal case includes additional parties.  *See, e.g., Tempur-Pedic*, 2017 WL 1437299, at *3-4; *Rowley*, 200 F. App'x at 275; *RepublicBank Dallas*, 828 F.2d at 1121; *see also Carter v. H2R Rest. Holdings, LLC*, No. 3:16-cv-1554-N-BN, 2016 WL 5373487, at *5 (N.D. Tex. Sept. 2, 2016) ("Because the state and federal actions do not involve the same parties, they are not parallel."); *Sports Supply Group, Inc. v. Savage*, No. 3:10-CV-913-O, 2010 WL 11565940, at *4 (N.D. Tex. Oct. 28, 2010) ("Although many of the same parties are involved in both cases, the parties are not the same.") (internal quotation marks and citation omitted).

      ***Second***, the cases do not involve the same issues, for purposes of the *Colorado River* analysis, because substantive claims would remain for this Court to resolve even following complete resolution of the State Case.  In this action, there are defamatory statements alleged in the FAC that are not at issue in—and, in fact, post-date the filing of—the State Case.  *See* FAC ¶¶ 28-32, 38-39 (defamatory statements published to 4 GRLZ and FINRA).  This action also involves additional defamatory statements and publications that were uncovered during discovery, which are not alleged in the State Case.  *See supra* Section II(B); *see also* FAC ¶ 35.  Each of these statements constitute independently actionable defamation claims that are not at

12

issue in the State Case.  *See, e.g., Carlson v. Trans Union, LLC.*, No. Civ. 3:02-CV-2654-H,

2003 WL 21750706, at *2 (N.D. Tex. July 22, 2003) ("Under the general rule of defamation in

Texas, each separate publication of a defamatory statement gives rise to a separate cause of

action for defamation.") (citing *Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446, 450 (5th Cir. 1988));

*see also Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 607 (Tex. App. 2018) (treating

each defamatory statement as a separate cause of action); *Akin v. Santa Clara Land Co.*, 34

S.W.3d 334, 340 (Tex. App. 2000) (each publication of defamatory statement inflicts

independent injury from which an independent defamation claim may arise).

Moreover, the cases involve separate and distinct damages claims and theories, seeking

redress for distinct injuries suffered by the respective plaintiffs.  *Compare* FAC ¶¶ 41-42

(seeking damages for Mr. Ferrari's reputational harm and mental anguish), *with* Ryan Decl., Ex.

12 ¶¶ 25, 44-45 (APP0109, APP0111), (seeking damages for Phoenix's "business and

reputation").  It is not enough, as Defendant suggests, that the cases involve overlapping or

related facts.  *See* Mtn. at 13-14.  "Merely arising from the same nucleus of fact is insufficient to

establish two actions as parallel when they seek to redress independent, even if interrelated,

wrongs." *Sports Supply*, 2010 WL 11565940, at *4; *see also Carter*, 2016 WL 5373487, at *4

(denying *Colorado River* motion where the cases sought different damages).

In short, this action and the State Case are not parallel under *Colorado River*, because

they do not involve the same parties and same issues.  Defendant's request for abstention should

be denied on this basis alone.

    3.  <u>No Exceptional Circumstances Exist Here to Justify Abstention</u>

Even if these cases were parallel, abstention under *Colorado River* would still only be

proper if Defendant could prove "exceptional circumstances" exist that warrant a stay or

dismissal.  *Aptim*, 888 F.3d at 135.  Courts consider six factors to determine whether

"exceptional circumstances" exist, "with the balance heavily weighted in favor of the exercise of jurisdiction."  *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16).  The factors are:

> (1) assumption by either court of jurisdiction over a res, (2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Aptim*, 888 F.3d at 135-36.

### a.   Factor 1:  Weighs *Against* Abstention Because No Res is at Issue

"An absence of property is not a merely neutral item, of no weight on the scales" but rather such an absence "supports exercising federal jurisdiction."  *Id.* (citations and quotation marks omitted).  Here, there is no res at issue in either action.  Accordingly, and as Defendant necessarily concedes, this factor "weighs *against* abstention since no res is at issue."  Mtn. at 21 (emphasis added).

### b.   Factor 2:  Weighs *Against* Abstention Because the Cases are Pending in Same Geographic Location

"When courts are in the same geographic location, the inconvenience factor weighs *against* abstention."  *Saucier v. Aviva Life & Annuity Co.*, 701 F.3d 458, 463 (5th Cir. 2012) (emphasis in original; quotation marks, alteration and citation omitted).  Here, both actions are pending in the same geographic location (Dallas) and, thus, this factor weighs *against* abstention.[4]

---

[4] Defendant's characterization of this factor is at least incomplete if not outright misleading. Defendant merely states that this factor "does not weigh in favor of abstention."  Mtn. at 21.  But that suggests the factor may be merely neutral.  Not so.  As *Saucier* makes clear, "*this factor is not neutral*" when courts are in the same geographic location.  701 F.3d at 463 (emphasis added).  Rather, in that situation it "weighs *against* abstention."  *Id.* (emphasis in original); *see also Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir. 2006) (same).

14

c.    **Factor 3:  Weighs *Against* Abstention Because There is No Risk of Inconsistent Rulings Regarding Property**

*First*, it has long been recognized by the Fifth Circuit that this factor is concerned only with "piecemeal litigation, and the concomitant danger of inconsistent rulings ***with respect to a piece of property***."  *Stewart*, 438 F.3d at 492 (emphasis altered); *see also Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650-51 (5th Cir. 2000) ("The real concern at the heart of the third *Colorado River* factor is the avoidance of piecemeal litigation, and the concomitant danger of inconsistent rulings ***with respect to a piece of property***.") (emphasis added).[5]  Indeed, this very principle is highlighted in the *African Methodist* case that Defendant purports to rely on (though misquotes) in his Motion.[6]  In *African Methodist*, the parallel cases both involved a property dispute, and the Fifth Circuit found this factor to favor abstention because "[i]f the federal action should continue unabated, the district court and the state court would each determine the same issues with respect to ***the same property***" creating a risk of inconsistent rulings.  756 F.3d at 800 (emphasis added).  Here, there is no property in dispute, as Defendant expressly conceded in the context of the first factor.  Mtn. at 21.  Accordingly, under *Black Sea*, *Stewart*, and their progeny, this factor weighs ***against*** abstention.  *See, e.g., Cardenas v. Amato*, No. 1:19-CV-177, 2020 WL 12573065, at *5 (S.D. Tex. Jan. 14, 2020) ("Because the lawsuits at issue do not concern property, this factor [i.e., avoidance of piecemeal litigation] weighs against abstention.").

---

[5] The Fifth Circuit's limitation of this factor to property cases explains why Defendant's only case finding this factor to favor abstention "where no property was in issue" was from another Circuit and, thus, is inapposite.  *See* Mtn. at 22 (citing *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 478 (7th Cir. 2020)).

[6] At page 22 of his Motion, Defendant purports to quote from *African Methodist*, though the quoted language appears nowhere in the decision.  *Compare* Mtn. at 22, *with African Methodist Episcopal Church v. Lucien*, 756 F.3d 788 (5th Cir. 2014).

15

***Second***, even if this factor did have application outside of property disputes, Defendant has still failed to show that it would favor abstention.  Defendant's arguments under this factor center on his (incorrect and premature) contention that "the State Case will fully resolve this case" because the subject matter in the two cases are purportedly duplicative.  *See* Mtn. at 22-23.  But "[t]he prevention of duplicative litigation is not a factor to be considered in an abstention determination."  *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988); *see also Stewart*, 438 F.3d at 492 ("The pendency of an action in state court does not bar a federal court from considering the same matter.").  Thus, Defendant's arguments under this factor based on allegedly duplicative cases misses the point and does not weigh in favor of abstention.[7]

### d.    Factor 4:  Weighs *Against* Abstention Because This Action Has Advanced Well Past the Pleadings, With Defendant's Active Participation

While this factor may take into account the order in which the actions were filed, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  *Moses H. Cone*, 460 U.S. at 21; *Saucier*, 701 F.3d at 464 (same).  In the Fifth Circuit, this factor typically "only favors abstention when the federal case has not proceeded past the filing of the complaint."  *Stewart*, 438 F.3d at 492-93 (citing *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999)).

Here, the federal action has proceeded well past the filing of the complaint.  Indeed, as described above, the parties (including Defendant) have actively and extensively engaged in affirmative discovery for more than eight months and counting.  *See supra* Section II(B)

---

[7] Where, as here, the party seeking abstention has argued that the cases are duplicative, while the party opposing abstention points out dissimilarities in the cases (e.g., different claims or issues that distinguish the cases), at least one court has found that this factor is "neutral, at most, and weighs against abstention."  *See, e.g., Welding*, 2013 WL 1123852, at *3.

(cataloging Defendant's aggressive participation in all aspects of affirmative discovery in this action).  The State Case, by contrast, has ***not*** proceeded past the pleading stage, with the parties set to continue litigating the scope of the operative complaint (and any possible amendments) when the trial court eventually receives the case on remand with (yet-to-be-determined) instructions from the appellate court.  In these circumstances, this factor weights against abstention.  *See, e.g., Stewart*, 438 F.3d at 492-93 (finding this factor weighed against abstention where the federal lawsuit had "progressed through an entire case management order" whereas "little, if any, discovery ha[d] taken place" in the state proceeding).

e.      **Factor 5:  *Neutral* Because There are No Issues of Federal Law**

"This factor generally can only be neutral, when there are no federal issues . . . .  [T]he absence of federal issues 'does not counsel in favor of abstention.'"  *Welding*, 2013 WL 1123852, at *4 (quoting *Black Sea*, 204 F.3d at 651).  Defendant agrees that this factor is ***neutral***.  Mtn. at 23.

f.      **Factor 6:  Weighs *Against* Abstention Because State Case Will Not Adequately Protect Mr. Ferrari, Who is Not a Party**

This factor "can only be neutral or weigh against abstention."  *Aptim*, 888 F.3d at 139.  In this case, this factor weighs ***against*** abstention because the State Case will not adequately protect Mr. Ferrari's rights, as that case involves a different plaintiff seeking to recover different damages based on different instances of defamation.  And even if the Court found that the State Case *could* somehow adequately protect Mr. Ferrari's rights, this factor would only be neutral.  *Id.*

***

In sum, five of the six factors comprising the exceptional circumstances test under *Colorado River* weigh ***against*** abstention.  The remaining factor—whether the case involves

17

issues of federal law—is neutral.  Abstention under *Colorado River* is unwarranted and

Defendant's request should be denied.

**C.** **_Landis_ Does Not Apply and, Even if it Did, Defendant's Requested Stay Should be Denied**

Because Defendant's request does not satisfy the *Colorado River* standard, it must be

denied, period.  His arguments for a stay under *Landis* (Mtn. at 9-16) or based on the alleged

"vexatious" nature of this action (*id.* at 24-25) are unavailing red herrings that cannot ground a

stay where no "exceptional circumstances" exist.  *See supra* Section III(A).  And, even if the

Court's discretionary powers under *Landis* were relevant to the analysis, Defendant's request

should still be denied.

Defendant's request for a stay has all the indicia of an improper attempt to avoid

providing discovery to Mr. Ferrari.  Defendant has not yet produced any substantive documents

in this case, despite being in receipt of Mr. Ferrari's requests for more than eight months.  Ryan

Decl., ¶ 9 (APP0003); *id.,* Ex. 1 (APP0006-25) (document requests dated November 8, 2023).

He has been evasive and untruthful in written discovery, with his responses to interrogatories and

requests for admission having now been proven false by third-party productions.  *Id.*, Ex. 5

(APP0062-69).  And, most recently, he has refused to appear for deposition.  *Id.*, Ex. 6

(APP0070-72); *see also* Dkt. 109.  All this notwithstanding the fact that he himself has happily

utilized the avenues provided by this Court to pursue wide-ranging discovery from Mr. Ferrari

and third-parties.  *See supra* Section II(B) (detailing Defendant's affirmative discovery activities,

including 13 subpoenas, one deposition, 67 document requests, 48 requests for admission, and 8

interrogatories).  Moreover, it has been more than ***six months*** since the Court denied without

prejudice Defendant's First Motion to Stay.  *See* Dkt. 53.

This all begs the question:  why move to stay now?  It appears that Defendant decided to sit on his renewed stay request while he obtained as much intrusive affirmative discovery as he could, only to sandbag Mr. Ferrari and the Court with a request for a stay after it became clear that (a) third-party discovery was revealing details of his misconduct that he wanted to remain hidden; and (b) he would have to sit for deposition under oath and produce documents in the immediate future.  The ostensible trigger for his Motion—the Texas Supreme Court declining to review the appellate decision in the State Case—has changed little, if any, of the relevant state of play in the State Case.  There still has been no final judgment, nor is one imminent.  *See supra* Section II(C).  And it is still unclear precisely what the appellate court's eventual mandate to the trial court will say, how the trial court will implement it, whether Phoenix will be granted leave to amend its petition to cure any purported pleading deficiencies with respect to Phoenix's defamation damages or otherwise, or how or when the State Case will ultimately be decided.  *See supra* Section II(C)*.*  What is clear, however, is that when the trial court receives the case back from the appellate court, the defamation *per se* claim will still be live, with its future and eventual resolution still far from certain.  *See supra* Section II(C).

Thus, in full context, Defendant's request to stay this action in favor of the State Case smacks of gamesmanship and a desperate attempt to avoid his deposition and document productions.  Courts throughout this Circuit routinely deny requests to stay cases where the circumstances indicate the movant is attempting to avoid discovery.  *See, e.g., Boone Funeral Home, Inc. v. Lakeview Gardens, Inc.*, No. 4:16cv180-DMB-RP, 2017 WL 11309548, at *1 (N.D. Miss. Feb. 21, 2017) (recognizing that "courts should . . . be cautious before staying discovery" and denying motion to stay based on defendants' "efforts of record to avoid participating in discovery"); *Chevallier v. Our Lady of the Lake Hosp., Inc.*, No. 18-0997-BAJ-

DEW, 2019 WL 3381766, at *2 (M.D. La. July 26, 2019) (denying motion to stay because the "stay would further delay discovery in this case and possibly deprive Plaintiff the opportunity to obtain evidence to prosecute her claims"); *see also Kennedy v. Pioneer Nat. Res. Co.*, No. 20:CV-86-DC-RCG, 2021 WL 2840467, at *1 (W.D. Tex. Apr. 1, 2021) (denying stay after "Defendant [sought] to avoid discovery").

Allowing Defendant to evade discovery would (in addition running afoul of *Colorado River*) not only award his gamesmanship, it would also unfairly damage Mr. Ferrari and preclude him from obtaining the discovery and pursuing the remedies to which he is entitled as a result of the very significant reputational harm and mental anguish that Defendant's harassing and defamatory actions have caused him. *See supra* Section II(A).  Defendant will suffer no cognizable countervailing hardship or inequity by this Court denying the stay and continuing to move this case toward trial.  These considerations provide further grounds for denying Defendant's request for a stay. *See, e.g., SuperMedia Inc. v. Bell*, No. 3:12-CV-2034-G, 2012 WL 5389683, at *1 (N.D. Tex. Nov. 2, 2012) (denying stay and holding that when stay may work damage to the non-movant, the movant "must make out a clear case of hardship or inequity in being required to go forward") (quoting *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983)).

Finally, it bears repeating that Defendant is arguing for a discretionary stay under *Landis* on the grounds that the eventual final determination of the State Case may have preclusive effects on some aspects of Mr. Ferrari's defamation claim in this action.  *See* Mtn. at 11-16. Again, rather than supporting a stay under *Landis*, Defendant's res judicata argument forecloses it.  *See supra* note 3 and accompanying text.  "[T]he *Colorado River* standard—and not a standard derived from *Landis*—applies when a court is considering a motion to stay in favor of a

state court proceeding when the state court proceeding will have a preclusive effect on any of the issues being considered by the federal court." *Fishman*, 180 F. Supp. 3d at 486.  Thus, while it is premature to litigate the merits of Defendant's res judicata arguments (after all, there is no final judgment), what matters for present purposes is simply that the potential eventual preclusive effect of the State Case claimed by Defendant prevents him from obtaining a stay without satisfying the *Colorado River* standard.  As shown above, he cannot meet that standard.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to stay or dismiss this action should be denied in its entirety.


Dated: July 24, 2024                             Respectfully submitted,

*/s/ John T. Ryan*
John T. Ryan *(pro hac vice)*
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
jake.ryan@lw.com

Andrew R. Gray (*pro hac vice*)
LATHAM &WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
andrew.gray@lw.com

Garrett S. Long (*pro hac vice*)
LATHAM &WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
garrett.long@lw.com

James O. Crewse
Texas Bar No. 24045722
CREWSE LAW FIRM PLLC

21

5919 Vanderbilt Ave
Dallas, TX 75206
Telephone: (214) 394-2856
jcrewse@crewselawfirm.com

*Attorneys for Plaintiff Adam Ferrari*

22

### CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing has been served on counsel of record for

Defendant via the Court's electronic filing system, on this the 24th day of July 2024.

*/s/ John T. Ryan*_____

John T. Ryan
